## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OSCAR RODRIGUEZ, JR.**,<br>2617 Rembrandt Place<br>Modesto, CA 95356; and<br><br>**CHARLES ROBERSON**,<br>2484 Sacramento Drive<br>Redding, CA 96001,<br><br>      Plaintiffs,<br><br>  v.<br><br>**UNITED STATES DEPARTMENT OF THE AIR FORCE**,<br>1690 Air Force Pentagon<br>Washington, DC 20330;<br><br>**MICHAEL SOVITSKY, an officer of the United States Air Force**,<br>446th Airlift Wing<br>Joint Base Lewis-McChord, WA 98433; and<br><br>**JOE BRUNO**, **ANTONIO CORDES, AL HALL, and DENNIS THORPE, officers of the United States Air Force**,<br>749th Aircraft Maintenance Squadron<br>Travis Air Force Base, CA 94535,<br><br>      Defendants. | Case No. 18-744<br><br>**COMPLAINT FOR DECLARATORY RELIEF, PERMANENT INJUNCTIVE RELIEF, AND DAMAGES**<br><br>**JURY TRIAL REQUESTED** |

Plaintiffs, retired Air Force Senior Master Sergeant Oscar Rodriguez, Jr. and retired Air Force Master Sergeant Charles Roberson, by and through their undersigned counsel, bring this complaint for declaratory relief, permanent injunctive relief, and damages against Defendants the United States Department of the Air Force ("the Air Force" or "USAF"), Colonel Michael Sovitsky, Senior Master Sergeant Joe Bruno, Chief Master Sergeant Antonio Cordes, Technical

Sergeant Al Hall, and Chief Master Sergeant Dennis Thorpe, and in support of their complaint allege as follows:

## INTRODUCTION

1.      This case raises important issues under the Administrative Procedure Act ("APA"), 5 U.S.C. §500 *et seq.*, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb *et seq.*, and the First, Fourth, and Fifth Amendments of the United States Constitution. In violation of these provisions, Defendants seized and forcibly removed Rodriguez, a civilian and invited guest, from Roberson's retirement ceremony to prevent Rodriguez from delivering his flag-folding speech, which Roberson had invited Rodriguez to perform at the ceremony.  The Court should hold Defendants responsible for their statutory and constitutional violations, committed by the Air Force and individual Defendants acting under color of federal law, and grant Plaintiffs declaratory relief, permanent injunctive relief, and damages.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction pursuant to 28 U.S.C. §1331, as this case presents substantial federal questions concerning violations of the APA and RFRA, and the deprivation of constitutional rights, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

3.      Venue is proper here pursuant to 28 U.S.C. §1391(e), as the United States Department of the Air Force is an agency of the United States that resides in the District of Columbia.  Each of the individual Defendants is an Air Force officer or employee who, at all times relevant to the allegations set forth herein, acted in his official capacity or under color of legal authority.

## PARTIES

4.      Plaintiff retired Senior Master Sergeant Oscar Rodriguez, Jr. is an Air Force veteran who enlisted as a reservist in 1980, when he was nineteen years old, and retired from the

Air Force in 2013.  Rodriguez spent the vast majority of his 33-year military tenure at Travis Air Force Base ("Travis AFB") in Fairfield, California, where he received numerous military accolades.  In 2001, Rodriguez was selected to serve as a member of the Travis AFB Honor Guard.  In 2002, after he was called to active duty to serve in Operation Iraqi Freedom (and sacrificed his personal, civilian business to do so), Rodriguez was recognized as the 349th Maintenance Group Senior Noncommissioned Officer of the Year.  Senator Mary Landrieu (D-LA) spoke of Rodriguez from the Senate floor in support of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §3901 *et seq.*, enacted in December 2003 to revise and expand the Soldiers' and Sailors' Civil Relief Act of 1940.  Landrieu used Rodriguez's story as an example of the high price some veterans pay to serve our nation.  *See* 108 Cong. Rec. S14514-15 (daily ed. Nov. 12, 2003) (statement of Sen. Landrieu).  In 2006, Rodriguez was awarded the 349th Air Mobility Wing Honor Guardsman of the Year, becoming the first airman in the history of Travis AFB to obtain awards for both Senior Noncommissioned Officer of the Year and Honor Guardsman of the Year.  In 2006, Rodriguez also received the 349th James Ernest Award for Base Honor Guardsman of the Year, becoming the only non-Honor Guard Instructor/Trainer to receive the award.

5.      Plaintiff retired Master Sergeant Charles Roberson is an Air Force veteran who enlisted as a reservist in 1989, when he was eighteen years old, and retired in 2016.  Roberson spent the vast majority of his 27-year military tenure at Travis AFB, where he received numerous military accolades.  In the early 1990s, shortly after he had completed his training, Roberson was activated in support of Operation Desert Storm, Operation Desert Shield, and Operation Provide Comfort.  During these operations, Roberson helped provide firefighting equipment and personnel to Kuwait to extinguish oil-well fires set by Iraqi forces as they evacuated the country,

and helped provide aerial protection and relief supplies to Kurdish refugees who had fled their homes in northern Iraq to the Turkish border after Iraqi forces threatened to exterminate them. On one particularly high-profile mission, Roberson's unit was tasked with helping to pick up then-Afghan President Hamid Karzai and his entourage from Malaysia and escort them to Andrews Air Force Base to meet with President George W. Bush.  In another mission, on a deployment to southwest Asia in early 2015, Roberson helped extinguish a KC-10 Extender's #3 engine tail pipe exhaust fire, potentially saving the lives of four crew members on board.  During his time with the 749th Aircraft Maintenance Squadron at Travis AFB, Roberson attained the level of "ACE," or Head Crew Chief, in the flying program and was highly sought after by many pilots and aircrew.

6.      Defendant United States Department of the Air Force is a government agency within the United States Department of Defense that includes all elements and units of the United States Air Force.  USAF resides in the District of Columbia and conducts a significant amount of its official operations in the District of Columbia.

7.      Defendant Colonel Michael Sovitsky is currently Vice Commander of the 446th Airlift Wing at Joint Base Lewis-McChord near Tacoma, Washington.  From June 2007 through April 2017, Sovitsky was stationed at Travis AFB and, as a Lieutenant Colonel, he served as Commander of the 749th Aircraft Maintenance Squadron from February 2010 through April 2010, Commander of the 349th Aircraft Maintenance Squadron from April 2010 through April 2014, and Commander of the 749th Aircraft Maintenance Squadron from April 2014 through April 2016 (including on April 3, 2016).  With respect to all of Sovitsky's actions as alleged in this complaint, Sovitsky acted in his official capacity and therefore acted under color of law as an officer of the United States Air Force.

8.      In April 2016, Defendant Senior Master Sergeant Joe Bruno was stationed at Travis AFB.  With respect to all of Bruno's actions as alleged in this complaint, Bruno acted in his official capacity and therefore acted under color of law as an officer of the United States Air Force.

9.      In April 2016, Defendant Chief Master Sergeant Antonio Cordes was stationed at Travis AFB.  With respect to all of Cordes's actions as alleged in this complaint, Cordes acted in his official capacity and therefore acted under color of law as an officer of the United States Air Force.

10.     In April 2016, Defendant Technical Sergeant Al Hall was stationed at Travis AFB.  With respect to all of Hall's actions as alleged in this complaint, Hall acted in his official capacity and therefore acted under color of law as an officer of the United States Air Force.

11.     In April 2016, Defendant Chief Master Sergeant Dennis Thorpe was stationed at Travis AFB.  With respect to all of Thorpe's actions as alleged in this complaint, Thorpe acted in his official capacity and therefore acted under color of law as an officer of the United States Air Force.

## FACTUAL ALLEGATIONS

### A.      Background on USAF Flag-Folding Ceremonies

12.     Flag-folding ceremonies are traditional within the Air Force community.  Some flag-folding ceremonies are silent, while others include music, words, or other auditory accompaniments.  Flag-folding ceremonies are traditionally performed at a variety of military and civic events, including funerals and retirement ceremonies.  Retirement ceremonies are not mandatory Air Force events, and are held only if the retiree decides that he or she would like to have one.  With certain limited exceptions not applicable here, each retirement ceremony is a private function that is personalized to the retiree.

13.     Before 2005, the Air Force did not provide any particular "script" for use in flag-folding ceremonies.  Many different scripts were used at different civic and military events, and many of these scripts ascribed meaning to the individual folds put into the flag.

14.     One of the more well-known of these flag-folding scripts, known as the "13-fold" flag recitation, is commonly attributed to an anonymous chaplain at the United States Air Force Academy in Colorado Springs.  It provides:

> The first fold of our Flag is a symbol of life.
>
> The second fold is a symbol of our belief in eternal life.
>
> The third fold is made in honor and remembrance of the veterans departing our ranks who gave a portion of their lives for the defense of our country to attain peace throughout the world.
>
> The fourth fold represents our weaker nature, for as American citizens trusting, it is to Him we turn in times of peace as well as in times of war for His divine guidance.
>
> The fifth fold is a tribute to our country, for in the words of Stephen Decatur, "Our Country, in dealing with other countries may she always be right; but it is still our country, right or wrong."
>
> The sixth fold is for where our hearts lie. It is with our heart that we pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all.
>
> The seventh fold is a tribute to our Armed Forces, for it is through the Armed Forces that we protect our country and our flag against all her enemies, whether they be found within or without the boundaries of our Republic.
>
> The eighth fold is a tribute to the one who entered into the valley of the shadow of death, that we might see the light of day, and to honor mother, for whom it flies on Mother's Day.
>
> The ninth fold is a tribute to womanhood; for it has been through their faith, their love, loyalty and devotion that the character of the men and women who have made this country great has been molded.

The tenth fold is a tribute to the father, for he, too, has given his sons and daughters for the defense of our country since they were first born.

The eleventh fold, in the eyes of a Hebrew citizen, represents the lower portion of the seal of King David and King Solomon and glorifies, in their eyes, the God of Abraham, Isaac, and Jacob.

The twelfth fold, in the eyes of a Christian citizen, represents an emblem of eternity and glorifies, in their eyes, God the Father, the Son, and Holy Spirit.

When the Flag is completely folded, the stars are uppermost reminding us of our Nation's motto, "In God We Trust."

After the Flag is completely folded and tucked in, it takes on the appearance of a cocked hat, ever reminding us of the soldiers who served under General George Washington, and the Sailors and Marines who served under Captain John Paul Jones, who were followed by their comrades and shipmates in the Armed Forces of the United States, preserving for us the rights, privileges, and freedoms we enjoy today.

15. In 2005, the Air Force promulgated Air Force Instruction 34-1201. Paragraph 2.15 of that instruction provides in full:

This paragraph discusses folding the flag of the United States at ceremonies other than military funerals. According to *Title 4 United States Code*, there is no specific meaning assigned to the folds of the flag. Although there are flag folding ceremony options offered by various national interest groups, these are not official Air Force ceremonies. The Air Force developed a script that provides a historical perspective on the flag. There are no ceremonies in the Air Force requiring a script to be read when the flag is folded. However, when a flag folding ceremony is desired and conducted by Air Force personnel at any location, on or off an installation, this script is the only one that may be used. This includes printing in programs and/or any handouts. See Attachment 4 for this script and a diagram depicting the proper method for folding the flag of the United States.

16. Attachment 4 to Air Force Instruction 34-1201, in turn, sets forth the flag-folding script prepared by Air Force services to provide Air Force recognized words that focus on flag history and the significance of the flag within the Air Force. It provides:

For more than 200 years, the American flag has been a symbol of our nation's unity, as well as a source of pride and inspiration for millions of citizens.

Born on June 14, 1777, the Second Continental Congress determined that the flag of the United States be thirteen stripes, alternating between seven red and six white; and that the union be thirteen stars, white in a blue field representing a new constellation.

Between 1777 and 1960, the shape and design of the flag evolved into the flag presented before you today.  The 13 horizontal stripes represent the original 13 colonies, while the stars represent the 50 states of the Union.  The colors of the flag are symbolic as well; red symbolizes hardiness and valor; white signifies purity and innocence; and blue represents vigilance, perseverance and justice.

Traditionally, a symbol of liberty, the American flag has carried the message of freedom, and inspired Americans, both at home and abroad.

In 1814, Francis Scott Key was so moved at seeing the Stars and Stripes waving after the British shelling of Baltimore's Fort McHenry that he wrote the words to "The Star Spangled Banner."

In 1892, the flag inspired Francis Bellamy to write the Pledge of Allegiance, our most famous flag salute and patriotic oath.

In July 1969, the American flag was flown in space when Neil Armstrong planted it on the surface of the moon.

Today, our flag flies on constellations of Air Force satellites that circle our globe, and on the fin flash of our aircraft in harms way in every corner of the world.  Indeed, it flies in the heart of every Airman who serves our great Nation.  The sun never sets on our U.S. Air Force, nor on the flag we so proudly cherish.

Since 1776, no generation of Americans has been spared the responsibility of defending freedom.  Today's Airmen remain committed to preserving the freedom that others won for us, for generations to come.

By displaying the flag, and giving it a distinctive fold, we show respect to the flag and express our gratitude to those individuals who fought, and continue to fight for freedom, at home and abroad.  Since the dawn of the 20th century, Airmen have proudly flown the flag in every major conflict on lands and skies around the world.  It is their responsibility and our responsibility to continue to protect and preserve the rights, privileges and freedoms that we, as Americans, enjoy today.

> The United States flag represents who we are.  It stands for the freedom
> we all share and the pride and patriotism we feel for our country.  We
> cherish its legacy, as a beacon of hope to one and all.  Long may it wave.

17.     In 2007, the United States Department of Veterans Affairs ("VA") clarified the

VA policy about recitations made during the flag folding at a veteran's gravesite.  Aimed to

ensure that burial services at the 125 national cemeteries operated by the VA reflect the wishes

of veterans and their families, the clarification (1) expressly authorizes volunteer Honor Guards

to read the so-called "13-fold" flag recitation, *see supra* ¶15, or any comparable script; (2)

explains that survivors of the deceased should provide material and request that it be read by the

volunteer Honor Guards; and (3) guarantees that volunteer Honor Guards will accept requests for

recitations that reflect any or no religious traditions on an equal basis.

18.     On or around June 23, 2016, in response to the incident involving Plaintiffs herein

underlying the allegations set forth in this complaint, the Air Force clarified its policy about

recitations made during the flag folding at retirement ceremonies.  In an official statement, the

Air Force explained that "Air Force personnel may use a flag folding ceremony script that is

religious for retirement ceremonies.  Since retirement ceremonies are personal in nature, the

script preference for a flag folding ceremony is at the discretion of the individual being honored

and represents the member's views, not those of the Air Force.  The Air Force places the highest

value of the rights of its personnel in matters of religion and facilitates the free exercise of

religion by its members."

19.     On or around September 9, 2016, the Air Force also amended the flag-folding

protocol set forth in Air Force Instruction 34-1201.  As amended, it provides in full:

> This paragraph discusses folding the flag of the United States at ceremonies
> other than military funerals.  According to *Title 4 United States Code*, there
> is no specific meaning assigned to the folds of the flag.  Although there are

flag folding ceremony options offered by various national interest groups, these are not official Air Force ceremonies.  See Attachment 4 depicting the proper method for folding the flag of the United States.

### B.    Rodriguez's Participation in Flag-Folding Ceremonies

20.    When Rodriguez was selected to serve as a member of the Travis AFB Honor Guard in 2001, he began participating in Air Force flag-folding ceremonies as a member of the Honor Guard.

21.    At this time, the Air Force did not provide any particular script for use in flag-folding ceremonies.  Many different "scripts" were used at Air Force events, including retirement ceremonies and funerals, and many of these scripts ascribed meaning to the individual folds put into the flag.  Many scripts ascribed religious meaning to the folds.

22.    In or around 2001, Rodriguez was inspired and began to develop his own flag-folding speech to capture his personal sentiments toward the flag.  Rodriguez's flag-folding speech provides:

> Our flag is known as the stars and stripes.  The union consists of white stars on a blue field, symbolic of a new constellation.  Each star represents one individual state and together they stand united indivisible.  The stripes represent the original 13 colonies that declared their independence from Great Britain in 1776.
>
> Though Unofficial,
>
> Red is symbolic for the blood of those who have given their lives to defend and protect our great nation from all of her enemies, both foreign and domestic.  White represents purity, innocence, and hope.  Blue is for vigilance, perseverance, and justice.
>
> But in our hearts our flag stands for many things, evident in the Declaration of Independence where all men are created equal with rights to life, liberty, and the pursuit of happiness; the right of the people to alter or abolish any form of government that becomes destructive.
>
> Our flag stands for the Constitution of the United States of America.  Freedom of religion, freedom of the press, freedom of speech.  It provides for security to all of her citizens, it also provides for a fair and swift trial.

It abolished slavery and it gives each and every individual of age the right to participate in our voting process—to have a say in his or her future.

Our flag is a beacon, recognized around the world to represent freedom during times of peace, or during times of war.  This is what we live for.  This is what we will fight for, and if necessary to touch the hand of God in her defense, the charge that we accept as Soldiers, Sailors, Airmen, and Marines is a noble one for there is no heart stronger than that of a volunteer.  Let us pray that God will reflect with admiration the willingness of one nation in her attempt to rid the world of tyranny, oppression, and misery.  It is this one nation under God that we call, with honor, the United States of America.

God Bless our flag.

God bless our troops.

God bless America.

23.     When Rodriguez first developed his unique flag-folding speech and shared it with the then-Superintendent of the Honor Guard at Travis AFB, Master Sergeant Jon Saunders, Saunders warned Rodriguez that the religious overtones and references to "God" may get him in trouble.  Because of its religious content, Rodriguez sometimes referred to his flag-folding speech as "the God speech."

24.     Rodriguez delivered his flag-folding speech at numerous civic and military events.  Many Air Force retirees requested that Rodriguez perform his flag-folding speech at their retirement ceremonies.  Due to the high demand of his performance, it was suggested that Rodriguez make a recording of himself reciting the speech and provide CD copies of the recording to retirees whose ceremonies he was unable to attend in person (but who still wanted Rodriguez's flag-folding speech to be part of their retirement ceremony).

25.     Between the development of his flag-folding speech in or around 2001 and the issuance of Air Force Instruction 34-1201 in 2005, Rodriguez delivered his flag-folding speech numerous times both (1) in his official capacity as a member of the Honor Guard, and (2) in his

individual capacity upon request.  The CD recordings of Rodriguez's flag-folding speech were also used to play the speech at countless retirement ceremonies.

26.     After Air Force Instruction 34-1201 issued in 2005, Rodriguez no longer delivered his flag-folding speech in his official capacity as a member of the Honor Guard, but continued to receive invitations and requests to perform his unique flag-folding speech at Air Force retirement ceremonies.  Upon request, Rodriguez continued to perform his speech in his individual capacity.

27.     Rodriguez understood that Air Force Instruction 34-1201 prescribed a wholly secular script for use in official Air Force flag-folding ceremonies (*e.g.*, those performed by uniformed Honor Guardsmen in an official capacity), but believed that his practice of delivering his unique flag-folding speech at certain retirement ceremonies, upon request of the retiree and in his individual capacity (*i.e.*, not as a uniformed Honor Guardsman) was not inconsistent with Air Force policy as set forth in Air Force Instruction 34-1201.  In demonstration of his good-faith effort to comply with the policy, Rodriguez routinely sought specific approval to perform his unique flag-folding speech (from, *e.g.*, the applicable Awards and Decorations department, superintendent, or chief), or asked the requesting retiree to seek such approval and certify to Rodriguez that they had done so prior to the ceremony.

28.     Rodriguez's personal performances of his unique flag-folding speech received uniformly positive feedback from the retirees, who continued to request that Rodriguez deliver the speech, and from other individuals who witnesses his performances.

29.     In April 2009, Rodriguez, in his official capacity as an Honor Guardsman and using the script provided in Air Force Instruction 34-1201, narrated the flag folding at a retirement ceremony for Chief Master Sergeant Christine A. Taylor, then-Command Chief of the

349th Air Mobility Wing at Travis AFB.  After the ceremony, Taylor sent Rodriguez a letter thanking him for his "efforts, care, and attention to detail," which made her "retirement ceremony and dinner celebration … phenomenal" and left Taylor and her family "with a great appreciation" and "unforgettable memories for a lifetime."  Taylor wrote that it had been her "distinct pleasure" to serve with, and for, Rodriguez during their year and a half together in the 349th.  A handwritten note at the bottom of the letter stated, "You Are Phenomenal!  You honored me and my family.  Thank You!"

30.    In November 2013, United States Representative John Garamendi (D-Fairfield, CA) sent a handwritten note to Rodriguez congratulating him on his 33 years of military service and recalling when Garamendi observed the emotional flag-folding ceremony that Rodriguez performed at the California State Fair.

31.    Despite this overwhelmingly positive feedback, Rodriguez began to hear that certain individuals higher up in the command structure were not fond of the speech.  Particularly, Rodriguez learned that certain USAF officials, including then-Lieutenant Colonel Sovitsky, who was Commander of the 749th Aircraft Maintenance Squadron at Travis AFB from April 2014 through April 2016 (including on April 3, 2016), did not appreciate Rodriguez's unique flag-folding speech and disapproved of the speech's religious overtones and multiple references to "God."

32.    Rodriguez never received any formal request or demand to cease performing his unique flag-folding speech at Air Force retirement ceremonies, and he was never reprimanded for his continued practice.

33.    After his own retirement in 2013, Rodriguez continued to perform his unique flag-folding speech at Air Force retirement ceremonies upon the request of the retiree.

13

### C.       Events Leading Up to Roberson's Retirement Ceremony

34.     Over the course of his lengthy military tenure, Roberson attended numerous retirement ceremonies and heard Rodriguez's voice (via CD recording) during dozens of those ceremonies.  Roberson long admired Rodriguez's unique flag-folding speech and the particular passion and inflection that Rodriguez gave when delivering the speech.

35.     On March 6, 2016, Rodriguez (upon invitation and request) performed his unique flag-folding speech as part of Master Sergeant Brian Rutherford's retirement ceremony at Travis AFB.

36.     Roberson attended Rutherford's retirement ceremony and witnessed Rodriguez's performance during the flag-folding portion of the ceremony.  After the event, Roberson approached Rodriguez and applauded his performance.  Roberson explained that he had heard recordings of Rodriguez's voice play during dozens of retirement ceremonies, and asked if Rodriguez would come back in one month's time to perform his unique flag-folding speech at Roberson's own retirement ceremony in the exact same manner as he had done for Rutherford. Rodriguez accepted and the two men exchanged contact information.

37.     On March 7, 2016, Roberson sent a text message to Rodriguez with the details of his upcoming retirement ceremony.  He thanked Rodriguez for agreeing to perform and explained that the passion and inflection Rodriguez gives the flag-folding ceremony was the main reason for the ceremony.  In that same text message on March 7, Roberson told Rodriguez that he imagined Sovitsky was not happy with Roberson for "having someone else do our retirements" because Roberson and Rutherford were both advised that they needed to complete a physical fitness test in order to receive their retirement Meritorious Service Medals, which was an unusual request.

38.     On or around March 8, 2016, Roberson's retirement coordinator, Technical Sergeant Trevor Newsom, advised Roberson that Rodriguez might not be able to attend Roberson's retirement ceremony.  Newsom indicated that he did not know all of the details and directed Roberson to contact Senior Master Sergeant Bruno.

39.     On March 8, 2016, Roberson called Bruno and left a voicemail.

40.     On March 15, 2016, when Bruno had failed to return his voicemail, Roberson decided to follow up with Bruno in person at Travis AFB.  At that time, Bruno advised Roberson that Rodriguez could not be part of Roberson's flag-folding at his retirement ceremony.  Bruno stated that he was just the messenger, but indicated that Rodriguez would be unable to attend Roberson's retirement ceremony because Sovitsky had banned Rodriguez from the building in which the retirement was to occur.

41.     Between March 15, 2016 and March 19, 2016, Roberson consulted with family, friends, and many other Airmen.  In particular, Roberson spoke with Chief Master Sergeant Dale Smelser, who indicated both that he would like Rodriguez to perform at his (*i.e.*, Smelser's own) retirement ceremony when the time came and noted that he did not believe Sovitsky had the authority to ban Rodriguez from a building auditorium shared by three squadrons.

42.     In a subsequent conversation on March 28, 2016, however, Smelser indicated that he thought Rodriguez had been banned from performing the flag-folding speech and recommended that Roberson exclude Rodriguez's performance from his retirement ceremony.  Smelser noted that Rodriguez could still attend the ceremony as an invited guest.

43.     On March 29, 2016, Roberson sent Rodriguez a text message warning him that Sovitsky was "trying to forbid" Rodriguez from performing the flag-folding speech at his upcoming retirement ceremony and otherwise advised Rodriguez that Roberson's superiors did

not want him to perform.  Roberson asked Rodriguez if he had been banned from the base or from doing the speech, and Rodriguez answered that he had not.  Roberson reiterated that despite the potential tension, he still wanted, and had always wanted, Rodriguez to perform his unique flag-folding speech at the retirement ceremony.  He considered not having a retirement ceremony at all if Rodriguez could not perform.  Roberson again emphasized that no one else could present the passion and feeling that Rodriguez gave to the flag-folding and that he wanted Rodriguez to share that passion of what our flag and country meant, in a way that only he could present, to make Roberson feel good that his family, friends, and coworkers would get to hear those words that always brought a tear to his eye.

44.     On April 2, 2016, Roberson met with Bruno and Senior Master Sergeant Keith Bennett, who told Roberson that it was his choice to invite Rodriguez to his retirement ceremony but asked him not to and stated that Rodriguez would not be doing the flag-folding ceremony.

45.     On the morning of April 3, 2016, Sovitksy approached Roberson and said that he was sorry but wanted to make sure that Rodriguez knew he (*i.e.*, Rodriguez) was not allowed to perform the flag-folding speech at Roberson's retirement ceremony.  Roberson told Sovitsky that Rodriguez was aware of what Sovitsky had said.

46.     On April 3, 2016, Roberson told Rodriguez that despite Sovitsky's wishes, he wanted Rodriguez to attend his retirement ceremony.  Roberson further told Rodriguez that if Rodriguez heard the music that normally accompanies his flag folding speech, he should perform the speech.

47.     At 2:12pm on April 3, 2016, approximately 48 minutes prior to the commencement of Roberson's retirement ceremony, Roberson told Rodriguez, "We are a go! Your music will play!!!"

**D.     Defendants Prevent Rodriguez from Performing His Flag-Folding Speech at Roberson's Retirement Ceremony and Forcibly Remove Rodriguez from the Ceremony**

48.     Two videos of Roberson's retirement ceremony, including a recording from a tripod mounted video camera operated by Technical Sergeant Thomas George and a second perspective recorded from the audience by retired Air Force Technical Sergeant John Huffington, another invited guest, capture the bulk of the relevant events.  The two videos are available at https://kirkland.wistia.com/medias/1npxe6487q and https://kirkland.wistia.com/medias/i0v8d8lo69, respectively.  Plaintiffs invite this Court to consider the video evidence in context with the allegations set forth herein.

49.     Rodriguez attended the retirement ceremony at Roberson's invitation to perform his flag-folding speech.  Rodriguez entered Travis AFB after displaying his ID.  Rodriguez's name appears on the Guest Seating Chart for the ceremony.

50.     Roberson's retirement ceremony was scheduled to begin at 3:00pm on April 3, 2016.  The ceremony was well-attended by many of Roberson's family members, friends, and coworkers.

51.     Soon after Rodriguez arrived and took his seat in the front row, Senior Master Sergeant Bruno approached Rodriguez and passed behind him in the second row, telling him "you need to leave, you're not welcome here."  Rodriguez remained seated.

52.     The beginning of the ceremony went smoothly and without incident.  Many friends and family spoke, and there was a slideshow presentation with photographs taken during the course of Roberson's career that Roberson had requested to be played.

53.     After the slideshow, two Airmen from Roberson's unit, who were neither Honor Guardsmen nor acting on behalf of the Honor Guard in any official capacity, began to unfurl the flag.

17

54.     Just as Roberson had told him, Rodriguez's music began to play and, on cue, Rodriguez stood up from where he was seated in the front row.  He stood to the side of the Airmen holding the flag and turned to face the audience.

55.     At this point, Technical Sergeant Hall stepped toward Rodriguez and advised Rodriguez to sit down.  Although he did not speak to Hall, Rodriguez declined to sit down and remained standing ready to deliver the flag-folding speech.  Bruno, from the second row, and Chief Master Sergeant Cordes, from his first-row seat, then stood up and both approached Rodriguez, joining Hall.  Then-Lieutenant Colonel Sovitsky also stood up from his chair and approached Rodriguez, but one of the Airmen gestured for Sovitsky to sit back down, which he did.  Just as Rodriguez began delivering his speech, the three uniformed Airmen (*i.e.*¸ Hall, Bruno, and Cordes) approached Rodriguez, grabbed him and forcibly removed him away from the stage, up the ramp toward the back door of the auditorium.  As they were forcibly moving Rodriguez toward the exit, Chief Master Sergeant Thorpe joined the group to assist.  Although not visible in the video recordings, once outside the room, two additional Airmen, whom neither Rodriguez nor Roberson was able to identify, joined in forcibly removing Rodriguez from the building through the rear emergency door exit.

56.     The individual Defendants, the four Sergeants and Lieutenant Colonel Sovitsky, all of whom were in uniform at the time, acted as they did with the purpose and intent to prevent Rodriguez from performing his flag-folding speech.

57.     Rodriguez's forcible removal occurred within Sovitsky's plain view, and Sovitsky did nothing to stop or prevent it.  The four non-commissioned officers would not have forcibly removed Rodriguez without Sovitsky's approval.

18

58.     Only after the individual Defendants forcibly removed Rodriguez from the auditorium did anyone ask Roberson to confirm whether Rodriguez was his invited guest or whether Roberson expected Rodriguez to perform during the flag-folding ceremony.

59.     As the video evidence reflects, Rodriguez neither resisted nor aided the four Sergeants as they grabbed, pushed, and shoved him away from the stage.  As he was forcibly dragged out of the auditorium and physically assaulted by the four non-commissioned officers, Rodriguez continued to try to deliver the introduction to his speech in order to honor Roberson and the unfurled American flag.

60.     Once Rodriguez was forcibly removed from the auditorium, a Travis AFB police officer confronted Rodriguez and ordered him to leave Travis AFB immediately, which he did.

**E.     Events Occurring After the Retirement Ceremony**

61.     The incident had a substantial effect on Roberson's social, emotional, and physical wellbeing.  Roberson felt humiliated, sad, angry, and disturbed.  Roberson felt that the flag itself was disgraced by the individual Defendants' separate and collective actions, and was embarrassed of what his many family members, friends, and coworkers observed.  Further, Roberson was shocked that the individual Defendants acted so violently toward a well-meaning, non-disruptive civilian (and retiree) at a private retirement ceremony; one whom he had personally invited.  In the aftermath of the ceremony, Roberson was so upset that he could not sleep well and had no appetite.

62.     Rodriguez likewise felt humiliated, sad, angry, and disturbed.  He was upset by the events and felt that Roberson's retirement had been ruined.  Rodriguez was so distraught that he called Military OneSource's 24/7 counseling hotline to seek psychological assistance.

63.     Upon information and belief, during a Travis AFB assembly just prior to sign-out for the day on April 3, 2016, Senior Master Sergeant Jeremy Johnson directed the entire

squadron to destroy all evidence (*i.e.*, to erase all pictures, videos, text messages, and other documentation) concerning the incident at Roberson's retirement ceremony.

64.     An internal USAF e-mail sent on April 5, 2016 indicates that USAF officials had at least some reason to suspect that "religion" may "come[] out as the root cause of the situation that took place at the flag folding ceremony" during Roberson's retirement ceremony.

65.     On May 6, 2016, Rodriguez retained First Liberty Institute ("First Liberty") to represent him.

66.     On May 20, 2016, Roberson filed a complaint with the Inspector General of the Air Force ("the IG") concerning the incident, in which Roberson alleged that the non-commissioned officers "unjustly removed" Rodriguez from his (*i.e.*, Roberson's) retirement ceremony on April 3, 2016, committing "assault" and violating the First Amendment.  Roberson indicated that he "would like the truth to be known and corrected by Travis P.R. office and results of investigation that started over 6 weeks ago produced and provided."

67.     An internal USAF e-mail sent on June 19, 2016 indicates that USAF officials, including officers within the United States Air Force Judge Advocate General's Corps ("JAG"), believed that "an assault charge" may be appropriate based on the individual Defendants "assault[]" of Rodriguez, "a retired reservist, on or about 3 April 2016, at Travis AFB, CA, by pushing and/or pulling [him] by the arms and/or chest in attempt to remove [him] from a retirement ceremony."

68.     First Liberty sent a demand letter dated June 20, 2016, to the Air Force.  The demand letter, and a subsequent demand by Senator John McCain (R-AZ) that the Air Force conduct a full investigation, prompted the then-Secretary of the Air Force, Deborah Lee James, to direct the IG to investigate the events occurring at Roberson's retirement ceremony.

69. The IG produced a Report of Inquiry dated July 2016. First Liberty obtained a redacted version of the Report of Inquiry through a FOIA request.

70. The IG's investigation focused on whether Rodriguez's First Amendment rights were violated at Roberson's retirement ceremony. First Liberty was informed that the IG investigation did not address non-First Amendment claims, and that those claims would be addressed by a separate investigation conducted by Travis AFB officials. Such an investigation, however, was never performed.

71. On November 21, 2017, after First Liberty sued the Air Force for violating the Freedom of Information Act ("FOIA") 5 U.S.C. §552, the Air Force acknowledged via a Joint Conference Report that Travis AFB officials had not conducted an investigation. Instead, Travis AFB officials merely provided an Incident Report following the April 3, 2016 incident.

72. On February 1, 2018, USAF Deputy General Counsel for Intelligence, International, and Military Affairs Craig Smith acknowledged First Liberty's request "that the command provide a written admission of wrongdoing and unlawful actions by the members involve" and that "a written apology be issued to Mr. Rodriguez." Smith confirmed that the Air Force would "decline to offer a written admission or apology."

**CLAIMS FOR RELIEF**

**COUNT ONE (BOTH PLAINTIFFS AGAINST THE UNITED STATES AIR FORCE) – ADMINISTRATIVE PROCEDURE ACT, FIRST AMENDMENT FREEDOM OF SPEECH**

73. Plaintiffs restate the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

74. The Declaratory Judgment Act provides, in part, that "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought."   28 U.S.C. §2201(a).

75.     The APA provides that a person suffering legal wrong because of agency action is entitled to judicial review thereof.   5 U.S.C. §702.   The APA empowers courts to (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to 5 U.S.C. §§556-57 or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.   5 U.S.C. §706.   Agency action reviewable under the APA includes the exercise of military authority so long as it is not exercised in the field in time of war or in occupied territory.   5 U.S.C. §701(b)(1)(G).

76.     Through USAF official and unofficial policies surrounding Roberson's retirement ceremony and as perpetrated through USAF officials as set forth herein, USAF acted contrary to Plaintiffs' constitutional rights as established under the Free Speech Clause of the First Amendment and otherwise acted in an arbitrary and capricious manner, abusing its discretion and acting not in accordance with law, in violation of the APA.

77.     As a direct and proximate result of Defendant's violation of the APA, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling Plaintiffs to declaratory relief and permanent injunctive relief.

**COUNT TWO (BOTH PLAINTIFFS AGAINST THE UNITED STATES AIR FORCE) –
ADMINISTRATIVE PROCEDURE ACT, FIRST AMENDMENT
FREE EXERCISE OF RELIGION**

78.     Plaintiffs restate the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

79.     Through USAF official and unofficial policies surrounding Roberson's retirement ceremony and as perpetrated through USAF officials as set forth herein, USAF acted contrary to Plaintiffs' constitutional rights as established under the Free Exercise Clause of the First Amendment and otherwise acted in an arbitrary and capricious manner, abusing its discretion and acting not in accordance with law, in violation of the APA.

80.     As a direct and proximate result of Defendant's violation of the APA, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling Plaintiffs to declaratory relief and permanent injunctive relief.

**COUNT THREE (PLAINTIFF RODRIGUEZ AGAINST THE UNITED STATES AIR
FORCE) – ADMINISTRATIVE PROCEDURE ACT, FOURTH AMENDMENT
UNREASONABLE SEIZURE**

81.     Rodriguez restates the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

82.     Through USAF official and unofficial policies surrounding Roberson's retirement ceremony and as perpetrated through USAF officials as set forth herein, USAF acted contrary to Rodriguez's constitutional rights as established under the Fourth Amendment's prohibition on unreasonable seizures and otherwise acted in an arbitrary and capricious manner, abusing its discretion and acting not in accordance with law, in violation of the APA.

83.     As a direct and proximate result of Defendant's violation of the APA, Rodriguez has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory relief.

**COUNT FOUR (PLAINTIFF RODRIGUEZ AGAINST THE UNITED STATES AIR FORCE) – ADMINISTRATIVE PROCEDURE ACT, FIFTH AMENDMENT DUE PROCESS**

84.      Rodriguez restates the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

85.      Through USAF official and unofficial policies surrounding Roberson's retirement ceremony and as perpetrated through USAF officials as set forth herein, USAF acted contrary to Rodriguez's constitutional rights as established under the Due Process Clause of the Fifth Amendment and otherwise acted in an arbitrary and capricious manner, abusing its discretion and acting not in accordance with law, in violation of the APA.

86.      As a direct and proximate result of Defendant's violation of the APA, Rodriguez has suffered irreparable harm, including the loss of his constitutional rights, entitling Rodriguez to declaratory relief.

**COUNT FIVE (BOTH PLAINTIFFS AGAINST ALL DEFENDANTS) – RELIGIOUS FREEDOM RESTORATION ACT**

87.      Plaintiffs restate the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

88.      RFRA prohibits the federal government and entities subject to its authority, including the Air Force and officers thereof, from "substantially burden[ing] a person's exercise of religion" unless it "demonstrates that application of the burden to the person is (1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. §2000bb-1(a), (b).

89.      Through their separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from exercising his religion at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly in attendance in his

personal capacity, who was known to hold certain religious beliefs and to incorporate those beliefs into his typical flag-folding narrative) when he began to speak during the ceremony, USAF and the individual Defendants violated Plaintiffs' rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb *et seq.*

90.     At all times relevant to the allegations set forth in this complaint, the individual Defendants acted under color of federal law as uniformed officials of the United States Air Force.  In addition to USAF, each individual Defendant acted under color of federal law as a uniformed official of the United States Air Force to substantially and unjustifiably burden Plaintiffs' free religious exercise.

91.     To the extent that Defendants rely on the version of Air Force Instruction 34-1201's flag-folding protocol enacted in 2005 to justify their actions as to substantially burden Plaintiffs' free religious exercise in connection with the flag folding at Roberson's retirement ceremony, such protocol does not even apply to Rodriguez, a civilian guest-invitee properly in attendance in his personal capacity who was invited by the retiree and honoree to perform a private, voluntary flag-folding ceremony with significant personal and religious meaning.

92.     To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, it is irrelevant whether such protocol imposes a rule of general applicability.

93.     To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such Air Force protocol and the individual Defendants' enforcement of such protocol as applied to Roberson's request for Rodriguez's performance of a unique flag-folding speech with religious overtones and multiple references to "God," places a substantial burden on Plaintiffs' free religious exercise.

94.     To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol substantially burdens Plaintiffs' free religious exercise by requiring Plaintiffs either recite a wholly secular speech or include no flag-folding speech whatsoever.  This Hobson's choice substantially burdens Plaintiffs' free religious exercise and furthers no compelling governmental interest.

95.     To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol effectively prohibits Plaintiffs' free religious exercise and instead mandates that Plaintiffs either recite a wholly secular speech or include no flag-folding speech whatsoever.   This Hobson's choice substantially burdens Plaintiffs' free religious exercise and is not narrowly tailored to advance any compelling governmental interest.

96.     As a direct and proximate result of Defendants' violation of RFRA, Plaintiffs have suffered irreparable harm, including the substantial burden of their free religious exercise guaranteed by the First Amendment, entitling Plaintiffs to declaratory relief and permanent injunctive relief.

## COUNT SIX (BOTH PLAINTIFFS AGAINST ALL INDIVIDUAL DEFENDANTS) – FIRST AMENDMENT FREEDOM OF SPEECH

97.     Plaintiffs restate the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

98.     The Free Speech Clause of the First Amendment protects both the right to engage in protected speech and the right to receive or listen to protected speech—*e.g.*, the right to deliver and receive information, influences, and ideas free from government interference or control.

99.     *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny establish a private right of action for individuals to recover monetary damages for violations of

constitutionally protected interests, including those secured by the First Amendment, by federal government officials.

100.    Through their separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from speaking at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly in attendance in his personal capacity) when he began to speak during the ceremony, the individual Defendants deprived Rodriguez of his right to engage in protected speech and deprived Roberson of his right to receive that protected speech, in violation of the Free Speech Clause of the First Amendment.

101.    At all times relevant to the allegations set forth in this complaint, the individual Defendants acted under color of federal law as uniformed officials of the United States Air Force.  Each individual Defendant acted under color of federal law as a uniformed official of the United States Air Force to restrict Plaintiffs' exercise of speech rights guaranteed by the First Amendment.

102.    The individual Defendants' separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from speaking at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly in attendance in his personal capacity) when he began to speak during the ceremony, created an unreasonable and disproportionate burden on the exercise of Plaintiffs' free speech rights without any legitimate justification.

103.    The individuals Defendants either (1) acted in a discriminatory, content-based, and viewpoint-based manner to restrict Plaintiffs' free speech rights based on the anticipated content of Rodriguez's unique flag-folding narrative based on his prior performances; or (2) employed an unjustified prior restraint and decided to prohibit and restrict Plaintiffs' free speech

rights before they even knew what Rodriguez was going to say. Either way, the individual Defendants' separate and collective actions unjustifiably violated Plaintiffs' free speech rights guaranteed under the First Amendment.

104.    To the extent that the individual Defendants' separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from speaking at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly in attendance in his personal capacity) when he began to speak during the ceremony, were based on the anticipated content of Rodriguez's unique flag-folding speech based on his prior performances of the speech set forth herein, such actions were content-based and viewpoint-based in violation of the Free Speech Clause of the First Amendment.

105.    To the extent that Defendants rely on the version of Air Force Instruction 34-1201's flag-folding protocol enacted in 2005 to justify their actions as to Plaintiffs' speech in connection with Roberson's retirement ceremony, such protocol does not even apply to Rodriguez, a civilian guest-invitee properly in attendance in his personal capacity who was invited by the retiree and honoree to narrate a private, voluntary flag-folding ceremony.

106.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol's plain text operates as a prior restraint on Plaintiffs' speech. To the extent that Defendants rely on such protocol to justify their actions as to Plaintiffs' speech in connection with Roberson's retirement ceremony, such protocol therefore comes before this Court bearing a heavy presumption against its constitutional validity.

107.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol violates the First Amendment by granting public officials

unbridled discretion such that the official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective grounds.

108.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol violates the First Amendment by granting providing no objective guide for distinguishing between permissible and impermissible speech in a non-arbitrary, viewpoint-neutral manner.

109.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, the discriminatory and arbitrary enforcement of such protocol violates the First Amendment by preventing Rodriguez from speaking at Roberson's retirement ceremony while permitting Rodriguez to deliver his flag-folding speech at other retirement ceremonies and permitting other civilian and non-civilian persons to deliver flag-folding speeches at other civic and military events.

110.    As a direct and proximate result of the individual Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling Plaintiffs to declaratory relief and damages.

**COUNT SEVEN (BOTH PLAINTIFFS AGAINST ALL INDIVIDUAL DEFENDANTS) – FIRST AMENDMENT FREE EXERCISE OF RELIGION**

111.    Plaintiffs restate the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

112.    The Free Exercise Clause of the First Amendment protects free religious exercise and mandates the equal treatment of all religious faiths and institutions, including secularism, without discrimination or preference.

113.    *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny establish a private right of action for individuals, including those secured by the First

Amendment, to recover monetary damages for violations of constitutionally protected interests by federal government officials.

114.    Through their separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from exercising his religion at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly in attendance in his personal capacity, who was known to hold certain religious beliefs and to incorporate those beliefs into his typical flag-folding narrative) when he began to speak during the ceremony, the individual Defendants deprived Plaintiffs of their rights to free religious exercise, in violation of the Free Exercise of the First Amendment.

115.    The internal USAF e-mail sent on April 5, 2016, which indicates that USAF officials had at least some reason to suspect that "religion" may "come[] out as the root cause of the situation that took place at the flag folding ceremony" during Roberson's retirement ceremony, reflects a suspicion that comports with Plaintiffs' understandings and beliefs that Rodriguez's flag-folding speech was targeted at least in part based on its religious overtones and multiple references to "God."

116.    At all times relevant to the allegations set forth in this complaint, the individual Defendants acted under color of federal law as uniformed officials of the United States Air Force.  Each individual Defendant acted under color of federal law as a uniformed official of the United States Air Force to restrict Plaintiffs' of free religious exercise guaranteed by the First Amendment.

117.    The individual Defendants' separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from exercising his religion at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly

in attendance in his personal capacity) when he began to speak during the ceremony, created an unreasonable and disproportionate burden on the exercise of Plaintiffs' free religious exercise without any legitimate justification.

118.    To the extent that Defendants rely on the version of Air Force Instruction 34-1201's flag-folding protocol enacted in 2005 to justify their actions as to Plaintiffs' free religious exercise in connection with the flag folding at Roberson's retirement ceremony, such protocol does not even apply to Rodriguez, a civilian guest-invitee properly in attendance in his personal capacity who was invited by the retiree and honoree to perform a private, voluntary flag-folding ceremony with significant personal and religious meaning.

119.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol facially violates the Free Exercise Clause of the First Amendment by disfavoring religious speech and discriminating against Plaintiffs' shared religious faith while endorsing a wholly secular script that establishes preferences for the absence of any religious faith in private, voluntary retirement ceremonies.

120.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol as applied to Roberson's request for Rodriguez's performance of a unique flag-folding speech with religious overtones and multiple references to "God," violates the Free Exercise Clause of the First Amendment by prohibiting Plaintiffs' free religious exercise and discriminating against Plaintiffs' shared religious faith.

121.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol effectively prohibits Plaintiffs' free religious exercise and instead mandates that Plaintiffs either recite a wholly secular speech or include no flag-folding speech whatsoever.  This Hobson's choice furthers no compelling governmental interest.

122.     To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol effectively prohibits Plaintiffs' free religious exercise and instead mandates that Plaintiffs either recite a wholly secular speech or include no flag-folding speech whatsoever.  This Hobson's choice is not narrowly tailored to advance any compelling governmental interest.

123.     As a direct and proximate result of the individual Defendants' violation of the Free Exercise Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling Plaintiffs to declaratory relief and damages.

**COUNT EIGHT (PLAINTIFF RODRIGUEZ AGAINST ALL INDIVIDUAL DEFENDANTS) – FOURTH AMENDMENT UNREASONABLE SEIZURE**

124.     Rodriguez restates the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

125.     The Fourth Amendment establishes the right of the people to be secure in their persons, houses, papers, and effects, and prohibits unreasonable searches and seizures.

126.     *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny establish a private right of action for individuals to recover monetary damages for violations of constitutionally protected interests, including those secured by the Fourth Amendment, by federal government officials.

127.     Through their separate and collective actions surrounding Roberson's retirement ceremony, the individual Defendants deprived Rodriguez of his right to be secure in his person and to be free from unreasonable seizures, in violation of the Fourth Amendment.

128.     At all times relevant to the allegations set forth in this complaint, the individual Defendants acted under color of federal law as uniformed officials of the United States Air

Force.  Each individual Defendant acted under color of federal law as a uniformed official of the United States Air Force to restrict Rodriguez's right to be free from unreasonable seizures under the Fourth Amendment.

129.    As demonstrated by clear video evidence, the individual Defendants, through their separate and collective actions, forcibly removed Rodriguez from Roberson's retirement ceremony, where he was a civilian guest-invitee properly in attendance in his personal capacity, by manhandling and assaulting him in order to eject him from the room.  This unwarranted physical seizure plainly violates the Fourth Amendment.

130.    The internal USAF e-mail sent on June 19, 2016, which indicates that USAF officials, including officers within the United States Air Force Judge Advocate General's Corps ("JAG"), believed that "an assault charge" may be appropriate based on the individual Defendants' "assault[]" of Rodriguez, "a retired reservist, on or about 3 April 2016, at Travis AFB, CA, by pushing and/or pulling [him] by the arms and/or chest in attempt to remove [him] from a retirement ceremony," reflects an understanding of the incident that comports with Rodriguez's understanding and belief that he was unjustifiably subject to an unreasonable seizure when he was attacked and forcibly removed from Roberson's retirement ceremony.

131.    As a direct and proximate result of the individual Defendants' violation of the Fourth Amendment, Rodriguez has suffered irreparable harm, including the loss of his constitutional rights, entitling Rodriguez to declaratory relief and damages.

### COUNT NINE (PLAINTIFF RODRIGUEZ AGAINST ALL INDIVIDUAL DEFENDANTS) – FIFTH AMENDMENT DUE PROCESS

132.    Rodriguez restates the allegations in all prior paragraphs of this Complaint as if fully set forth herein.

133.    The Due Process Clause of the Fifth Amendment prohibits Defendants from depriving Rodriguez of life, liberty, or property without due process of the law.  In this context, and for purposes of this complaint, "liberty" includes but is not confined to mere freedom from bodily restraint and extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective.

134.    *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and its progeny establish a private right of action for individuals to recover monetary damages for violations of constitutionally protected interests, including those secured by the Fifth Amendment,  by federal government officials.

135.    Through their separate and collective actions surrounding Roberson's retirement ceremony, the individual Defendants deprived Rodriguez of his right to be free from deprivations of life, liberty, or property without due process of law, in violation of the Due Process Clause of the Fifth Amendment.

136.    At all times relevant to the allegations set forth in this complaint, the individual Defendants acted under color of federal law as uniformed officials of the United States Air Force.  Each individual Defendant acted under color of federal law as a uniformed official of the United States Air Force to restrict Rodriguez's rights to be secure from deprivations of life, liberty, or property without due process of law, in violation of the Due Process Clause of the Fifth Amendment.

137.    The individual Defendants' separate and collective actions surrounding Roberson's retirement ceremony, including purporting to "ban" Rodriguez from speaking at the ceremony and then forcibly removing Rodriguez (a civilian guest-invitee properly in attendance

in his personal capacity) when he began to speak during the ceremony, arbitrarily denied Rodriguez of his fundamental liberties outside the sanction of law.

138.    Instead of undertaking formal procedures concerning the conflict surrounding Rodriguez's unique flag-folding speech and his invitation to perform at Roberson's retirement ceremony, the individual Defendants' separate and collective actions both in the time leading up to the ceremony and during the ceremony itself operated outside the sanction of law to deprive Rodriguez of his fundamental liberties without due process of law.

139.    To the extent that Defendants rely on the version of Air Force Instruction 34-1201's flag-folding protocol enacted in 2005 to justify their actions as to restricting Rodriguez's liberties in connection with Roberson's retirement ceremony, such protocol does not even apply to Rodriguez, a civilian guest-invitee properly in attendance in his personal capacity who was invited by the retiree and honoree to narrate a private, voluntary flag-folding ceremony.

140.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol's plain text is impermissibly vague.  To the extent that Defendants rely on such protocol to justify their actions as to restricting Rodriguez's liberties in connection with Roberson's retirement ceremony, such protocol therefore violates the Due Process Clause of the Fifth Amendment.

141.    To the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applies, such protocol as applied to restricting Rodriguez's liberties in connection with Roberson's retirement ceremony is impermissibly vague and violates the Due Process Clause of the Fifth Amendment.

142.    As a direct and proximate result of the individual Defendants' violation of the Due Process Clause of the Fifth Amendment, Rodriguez has suffered irreparable harm, including the loss of his constitutional rights, entitling Rodriguez to declaratory relief and damages.

## JURY TRIAL REQUESTED

143.    Plaintiffs hereby request a trial by jury of all issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE Plaintiffs Oscar Rodriguez, Jr. and Charles Roberson respectfully request that this Court:

1.    Enter an order and judgment declaring that (A) USAF violated the APA with respect to Plaintiffs' First Amendment free speech rights and First Amendment free religious exercise rights, (B) USAF violated the APA with respect to Rodriguez's Fourth Amendment rights and Fifth Amendment due process rights, (C) USAF and the individual Defendants violated Plaintiffs' rights under RFRA, (D) the individual Defendants violated Plaintiffs' constitutional rights guaranteed by the Free Speech Clause of the First Amendment and the Free Exercise Clause of the First Amendment, and (E) the individual Defendants violated Rodriguez's constitutional rights guaranteed by the Fourth Amendment and the Due Process Clause of the Fifth Amendment;

2.    Enter a permanent injunction requiring USAF to follow its policy, as clarified in the official statement provided on or around June 23, 2016 and set forth in revised Air Force Instruction 34-1201, and allow Rodriguez to perform his unique flag-folding speech in his individual capacity at retirement ceremonies and other events when invited to do so;

3.    Award damages as a remedy for (A) the individual Defendants' violation of Plaintiffs' constitutional rights guaranteed by the Free Speech Clause of the First Amendment and the Free Exercise Clause of the First Amendment, and (B) the individual Defendants'

violation of Rodriguez's constitutional rights guaranteed by the Fourth Amendment and the Due

Process Clause of the Fifth Amendment;

4.      Award attorney's fees and costs to Plaintiffs under 42 U.S.C. §1988 and 42

U.S.C. §2000bb-1, 28 U.S.C. §2412, and any other applicable statute or authority; and

5.      Award such other relief as the Court may deem just and proper.

Dated:  April 2, 2018                          Respectfully submitted,


By:   /s/ H. Christopher Bartolomucci

H. Christopher Bartolomucci
  (D.C. Bar No. 453423)
Lauren N. Beebe
  (D.C. Bar No. 1047288; application for
  admission to U.S. District Court
  pending)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
cbartolomucci@kirkland.com
lauren.beebe@kirkland.com


Michael Berry
  (*pro hac vice* application to be filed)
Benjamin W. Bull
  (D.C. Bar No. 388206)
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
(972) 941-4444
mberry@firstliberty.com
bbull@firstliberty.com


*Counsel for Plaintiffs Oscar Rodriguez,
Jr. and Charles Roberson*