## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————

OSCAR RODRIGUEZ, JR., et al.,     )
)
          Plaintiffs,     )
)
v.                   )     Civil Action No. 18-744-TNM
)
UNITED STATES DEPARTMENT    )
OF THE AIR FORCE, et al.,     )
)
          Defendants.    )
—————————————————————)

## DEFENDANTS MICHAEL SOVITSKY, JOE BRUNO, ANTONIO CORDES, AL HALL AND DENNIS THORPE'S MOTION TO DISMISS ALL INDIVIDUAL-CAPACITY CLAIMS

Pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (6), Defendants Michael Sovitsky, Joe Bruno, Antonio Cordes, Al Hall, and Dennis Thorpe, as sued in their individual capacities ("individual defendants"), respectfully move this court to dismiss the claims asserted against them in Plaintiffs Oscar Rodriguez, Jr. and Charles Roberson's Complaint.[1] These claims should be dismissed because this court lacks personal jurisdiction over the individual defendants and venue in this district is not proper under 28 U.S.C. § 1391(b). Additionally, for those claims which seek damages directly under the Constitution (Counts Six through Nine), all should be dismissed because plaintiffs have failed to state a claim upon which relief may be granted. Specifically, special factors counsel hesitation in implying the damages remedy that plaintiffs seek and defendants are entitled to qualified immunity. Finally, plaintiffs cannot obtain equitable

---

[1] The United States Air Force and official-capacity defendants will separately respond to the claims asserted against them in the Complaint. *See* ECF No. 19.

relief from the defendants in their individual capacities. The grounds for this motion are set forth

in the accompanying memorandum of points and authorities. A proposed order is attached.

Dated: September 28, 2018                    Respectfully submitted,

                                             JOSEPH H. HUNT
                                             Assistant Attorney General
                                             Civil Division

                                             C. SALVATORE D'ALESSIO, JR.
                                             Acting Director, Torts Branch

                                             ANDREA W. MCCARTHY
                                             Senior Trial Counsel, Torts Branch

                                             */s/ Sarah E. Whitman*
                                             SARAH E. WHITMAN
                                             MA Bar 657726, under LCvR 83.2(e)
                                             Trial Attorney, Torts Branch, Civil Division
                                             United States Department of Justice
                                             175 N Street, NE
                                             Washington, DC 20002
                                             Telephone: (202) 616-0089
                                             Fax: (202) 616-4314
                                             Email: Sarah.Whitman@usdoj.gov

                                             *Counsel for Defendants Michael Sovitsky, Joe
                                             Bruno, Antonio Cordes, Al Hall, and Dennis
                                             Thorpe, as sued in their individual capacities*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR RODRIGUEZ, JR., et al., )<br><br>          Plaintiffs, )<br><br>v. )<br><br>UNITED STATES DEPARTMENT )<br>OF THE AIR FORCE, et al., )<br><br>          Defendants. ) | Civil Action No. 18-cv-744-TNM |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MICHAEL SOVITSKY, JOE BRUNO, ANTONIO CORDES, AL HALL AND DENNIS THORPE'S MOTION TO DISMISS ALL INDIVIDUAL-CAPACITY CLAIMS

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

ANDREA W. MCCARTHY
Senior Trial Counsel, Torts Branch

*/s/ Sarah E. Whitman*
SARAH E. WHITMAN
MA Bar 657726, under LCvR 83.2(e)
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice
175 N Street, NE
Washington, DC 20002
Telephone: (202) 616-0089
Fax: (202) 616-4314
Email: Sarah.Whitman@usdoj.gov

*Counsel for Defendants Michael Sovitsky, Joe Bruno, Antonio Cordes, Al Hall, and Dennis Thorpe, as sued in their individual capacities*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

LEGAL STANDARD ................................................................................................. 7

ARGUMENT ........................................................................................................... 8

I.    This Court Lacks Personal Jurisdiction Over the Individual Defendants. .................... 8

II.   This District is Not a Proper Venue for Plaintiffs' Individual-Capacity Claims ......... 10

III.  Plaintiffs Cannot Obtain Equitable Relief From Defendants in Their
Individual Capacities .................................................................................. 12

IV.  This Court Should Decline to Recognize a *Bivens* Remedy for Plaintiffs'
Claims. ................................................................................................... 14

    A.   Extending *Bivens* to New Contexts is Disfavored. ................................. 14

    B.   Plaintiffs Seek to Extend *Bivens* Liability Into a New Context. ............................. 17

    C.   Plaintiffs' Claims Directly Implicate Numerous Special Factors That
Counsel Against Authorizing a *Bivens* Remedy in This Context. ......................... 19

        1.   Alternative, Existing Processes Preclude Plaintiffs' Claims. .............................. 20

        2.   Other Special Factors Counsel Against Devising A *Bivens* Remedy. ................. 25

            a.   Plaintiffs' Claims Raise Fundamental Separation-of-Powers Concerns. .... 26

            b.   Creating a Damages Remedy Would Be Inconsistent With
Congress' Activity in the Field. .................................................... 30

            c.   A *Bivens* Claim is Not an Appropriate Vehicle to Challenge Policy. ......... 32

            d.   Practical Concerns Weigh Against Implying a *Bivens* Remedy
in This Context. .................................................................... 34

V.   Qualified Immunity Bars Plaintiffs' Individual-Capacity Claims. ........................... 36

    A.   The Framework for the Qualified Immunity Defense. ............................. 37

    B.   Plaintiffs Fail to Allege a Violation of Any Clearly Established First
Amendment Right (Counts Six and Seven). .......................................... 38

    C.   Rodriguez Fails to Allege a Violation of Any Clearly Established Fourth
Amendment Right (Count Eight). ................................................... 40

    D.   Rodriguez Fails to Allege a Violation of Any Clearly Established Fifth
Amendment Right (Count Nine). ..................................................... 42

CONCLUSION ........................................................................................................ 44

# TABLE OF AUTHORITIES

## Cases

*Abdelfattah v. U.S.D.H.S.*,
  787 F.3d 524 (D.C. Cir. 2015) ............................................................. 44

*Albright v. Oliver*,
  510 U.S. 266 (1994) .......................................................................... 44

*Arar v. Ashcroft*,
  585 F.3d 559 (2d Cir. 2009) ............................................................... 33

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ............................................................... 37, 38, 43

\* *Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................. passim

*Atherton v. D.C. Office of Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) ...................................................... 42, 43

*Baez v. Connelly*,
  734 F. Supp. 2d 54 (D.D.C. 2010) ........................................................ 10

*Ballard v. Holinka*,
  601 F. Supp. 2d 110 (D.D.C. 2009) ...................................................... 10

*Bame v. Dillard*,
  637 F.3d 380 (D.C. Cir. 2011) ...................................................... 37, 38

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971) ............................................................. 1, 14, 24

*Brown v. Glines*,
  444 U.S. 348 (1980) ................................................................. 38, 39

\* *Cameron v. Thornburgh*,
  983 F.2d 253 (D.C. Cir. 1993) ....................................................... 1, 10

*Camreta v. Greene*,
  563 U.S. 692 (2011) ...................................................................... 36

*Carlson v. Green*,
  446 U.S. 14 (1980) ....................................................................... 15

*Carpenter's Produce v. Arnold,*
  189 F.3d 686 (8th Cir. 1999) ................................................................. 21

*Chandler v. Stover,*
  211 F. Supp. 3d 289 (D.D.C. 2016) ................................................... 9, 11

\* *Chappell v. Wallace,*
  462 U.S. 296 (1983) .................................................................... passim

*Cioca v. Rumsfeld,*
  720 F.3d 505 (4th Cir. 2013) ...................................................... passim

*Ciralsky v. CIA,*
  689 F. Supp. 2d 141 (D.D.C. 2010) ..................................................... 12

*Colon v. United States,*
  -- F. Supp. 3d --, No. 17-775, 2018 WL 1352962 (D. Md. Mar. 13, 2018) ............ 29

*Cooper v. True,*
  No. 16cv2900, 2017 WL 6375609 (D. Minn. Nov. 2, 2017), *report and recommendation
  adopted,* 2017 WL 6372651 (D. Minn. Dec. 12, 2017) ............................... 24

*Corr. Servs. Corp. v. Malesko,*
  534 U.S. 61 (2001) ..................................................................... passim

*Couden v. Duffey,*
  826 F. Supp. 2d 711 (D. Del. 2011) ...................................................... 6

*County of Sacramento v. Lewis,*
  523 U.S. 833 (1998) ................................................................. 43, 44

*Crowder v. Jones,*
  No. 14CV202, 2017 WL 5889717 (S.D. Ind. Nov. 29, 2017) ............................ 24

*Cutter v. Wilkinson,*
  544 U.S. 709 (2005) ..................................................................... 32

*Davis v. Billington,*
  681 F.3d 377 (D.C. Cir. 2012) ........................................................ 2, 16

*Davis v. Passman,*
  442 U.S. 228 (1979) ..................................................................... 15

*De La Paz v. Coy,*
  786 F.3d 367 (5th Cir. 2015) ............................................................ 20

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018)..................................................................................... 37, 42

*Doe v. Hagenback,*
    870 F.3d 36 (2d Cir. 2017)....................................................................... 26, 28, 34

*Doe v. Meron,*
    No. 17-812, 2018 WL 3619538 (D. Md. July 30, 2018) ...................................... 23

*Doe v. Rumsfeld,*
    683 F.3d 390 (D.C. Cir. 2012) ...................................................................... 16, 31

*Dugan v. Rank,*
    372 U.S. 609 (1963) ............................................................................................ 12

*Dukore v. District of Columbia,*
    799 F.3d 1137 (D.C. Cir. 2015) .................................................................... 38, 43

*Elkins v. District of Columbia,*
    690 F.3d 554 (D.C. Cir. 2012) ..................................................................... 43, 44

*Feit v. Ward,*
    886 F.2d 848 (7th Cir. 1989) ............................................................................. 13

*First Chicago Int'l v. United Exch. Co.,*
    836 F.2d 1375 (D.C. Cir. 1988) ........................................................................... 7

*Frank v. Relin,*
    1 F.3d 1317 (2d Cir. 1993)................................................................................. 13

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ........................................................................................... 38

*GasPlus, LLC v. United States Dep't of Interior,*
    593 F. Supp. 2d 80 (D.D.C. 2009) ....................................................................... 6

*Gonzalez v. Holder,*
    763 F. Supp. 2d 145 (D.D.C. 2011) .................................................................... 11

*Greer v. Spock,*
    424 U.S. 828 (1976)........................................................................................... 39

*GTE New Media Servs., Inc. v. BellSouth Corp.,*
    199 F.3d 1343 (D.C. Cir. 2000) ........................................................................... 9

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ........................................................................................... 37

*Hatfill v. Gonzales,*
  519 F. Supp. 2d 13 (D.D.C. 2007) ................................................................. 6, 13

*Heap v. Carter,*
  112 F. Supp. 3d 402 (E.D. Va. 2015) ................................................................ 28

*Heien v. North Carolina,*
  135 S. Ct. 530 (2014) ........................................................................................ 41

*Hernandez v. Mesa,*
  137 S. Ct. 2003 (2017) ...................................................................................... 36

*Higazy v. Templeton,*
  505 F.3d 161 (2d Cir. 2007) ............................................................................... 6

*Hoskins v. Napolitano,*
  842 F. Supp. 2d 8 (D.D.C. 2012) ........................................................................ 7

*Huckaby v. Bradley,*
  No. 16cv4327, 2018 WL 2002790 (D.N.J. Apr. 30, 2018) ............................. 23, 34

*Hufford v. McEnaney,*
  249 F.3d 1142 (9th Cir. 2001) .......................................................................... 44

*Hunter v. Bryant,*
  502 U.S. 224 (1991) .......................................................................................... 37

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................................ 9

*Jangjoo v. Sieg,*
  319 F. Supp. 3d 207 (D.D.C. 2018) ................................................................... 21

*Joyner v. Reno,*
  466 F. Supp. 2d 31 (D.D.C. 2006) ..................................................................... 11

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ...................................................................................... 12, 13

*Kim v. United States,*
  632 F.3d 713 (D.C. Cir. 2011) ............................................................................. 6

*Kirby v. City of Elizabeth*,
    388 F.3d 440 (4th Cir. 2004) ............................................................................ 13

*Kiser v. Kamdar*,
    831 F.3d 784 (6th Cir. 2016) ............................................................................ 44

\* *Klay v. Panetta*,
    758 F.3d 369 (D.C. Cir. 2014) .......................................................... 15, 29, 30, 34

*Kreines v. United States,*
    33 F.3d 1105 (9th Cir. 1994) ............................................................................ 6

*Lebron v. Rumsfeld*,
    670 F.3d 540 (4th Cir. 2012) ................................................................... passim

*Leyland v. Edwards*,
    797 F. Supp. 2d 7 (D.D.C. 2011) ..................................................................... 12

*Libby v. Marshall*,
    833 F.2d 402 (1st Cir. 1987) ............................................................................ 13

*Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*,
    881 F.3d 912 (D.C. Cir. 2018) .......................................................... 17, 20, 24, 30

*Malley v. Briggs*,
    475 U.S. 335 (1986) ....................................................................................... 37

*Meshal v. Higgenbotham*,
    804 F.3d 417 (D.C. Cir. 2015) .......................................................... 15, 25, 31, 34

*Miller v. USDA*,
    143 F.3d 1413 (11th Cir. 1998) ........................................................................ 21

*Minneci v. Pollard*,
    565 U.S. 118 (2012) ....................................................................................... 15

*Moore v. Motz*,
    437 F. Supp. 2d 88 (D.D.C. 2006) ................................................................. 7, 8

*Morton v. Bolyard*,
    810 F. Supp. 2d 112 (D.D.C. 2011) .................................................................. 10

*Mullen v. Bureau of Prisons*,
    843 F. Supp. 2d 112 (D.D.C. 2012) .................................................................. 11

*Oberwetter v. Hilliard*,
   639 F.3d 545 (D.C. Cir. 2011) ................................................................................ 39

*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ............................................................................................... 43

*Parker v. Levy*,
   417 U.S. 733 (1974) ............................................................................................... 39

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ............................................................................................... 36

*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) ............................................................................................... 38

*Reichle v. Howards*,
   566 U.S. 658 (2012) ............................................................................................... 18

*Reynolds v. U.S. Dep't of Justice*,
   10 F. Supp. 3d 134 (D.D.C. 2014) ........................................................................... 7

*Solida v. McKelvey*,
   820 F.3d 1090 (9th Cir. 2016) .................................................................................. 6

*Stafford v. Briggs*,
   444 U.S. 527 (1980) ............................................................................................... 10

*Storms v. Shinseki*,
   319 F. Supp. 3d 348 (D.D.C. 2018) ........................................................................ 35

*Storms v. United States*,
   No. 13-CV-811, 2015 WL 1196592 (E.D.N.Y. Mar. 16, 2015) ............................. 21

*Trudeau v. Fed. Trade Comm'n*,
   456 F.3d 178 (D.C. Cir. 2006) ................................................................................. 7

*Turkmen v. Hasty*,
   789 F.3d 218 (2d Cir. 2015) ................................................................................... 23

*United States v. Albertini*,
   472 U.S. 675 (1985) ............................................................................................... 39

*United States v. Proctor*,
   489 F.3d 1348 (D.C. Cir. 2007) .............................................................................. 41

vii

*   *United States v. Stanley,*
        483 U.S. 669 (1987)..................................................................................... passim

    *Vance v. Rumsfeld,*
        701 F.3d 193 (7th Cir. 2012) ............................................................. 22, 23, 31

    *Vanderklok v. United States,*
        868 F.3d 189 (3d Cir. 2017)........................................................................ 17

    *Vega v. United States,*
        881 F.3d 1146 (9th Cir. 2018) ............................................................... 20, 22

*   *Walden v. Fiore,*
        571 U.S. 277 (2014)............................................................................... 8, 9, 10

    *Western Radio Servs. Co. v. U.S. Forest Serv.,*
        578 F.3d 1116 (9th Cir. 2009) ............................................................... 21, 22

    *Wilkie v. Robbins,*
        551 U.S. 537 (2007)................................................................................. passim

    *Wolfe v. Strankman,*
        392 F.3d 358 (9th Cir. 2004) ....................................................................... 13

    *Wood v. Moss,*
        134 S. Ct. 2056 (2014)................................................................................. 38

    *World-Wide Volkswagen Corp. v. Woodson,*
        444 U.S. 286 (1980)...................................................................................... 9

    *XP Vehicles, Inc. v. Dep't of Energy,*
        118 F. Supp. 3d 38 (D.D.C. 2015) .............................................................. 21

*   *Ziglar v. Abbasi,*
        137 S. Ct. 1843 (2017)............................................................................. passim

## **Statutes**

10 U.S.C. § 938................................................................................................. 31

10 U.S.C. § 2733......................................................................................... 22, 31

28 U.S.C. §§ 1391(b), (e)........................................................................ 1, 10, 11

42 U.S.C. § 1983.............................................................................................. 14

42 U.S.C. § 2000bb .......................................................................................... 1, 23

42 U.S.C. § 2000cc ............................................................................................... 32

D.C. Code §§ 13-422, 13-423 ........................................................................... 8, 9

## **Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 8

Fed. R. Civ. P. 12(b)(2) .................................................................................. 1, 2, 7

Fed. R. Civ. P. 12(b)(3) ......................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 7

Fed. R. Civ. P. 25(d) ............................................................................................ 13

## INTRODUCTION

Invoking *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), plaintiffs Oscar Rodriguez, Jr. and Charles Roberson seek to recover money damages from the personal assets of five members of the United States Air Force, after Rodriguez was removed from Roberson's Air Force retirement ceremony held at Travis Air Force Base in California. Plaintiffs assert that Defendants Michael Sovitsky, Joe Bruno, Antonio Cordes, Al Hall and Dennis Thorpe, as sued in their individual capacities ("individual defendants"), violated plaintiffs' First, Fourth, and Fifth Amendment rights. They also include a claim for equitable relief against all defendants under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA").[1]

This court can and should dispose of plaintiffs' claims against the individual defendants on two "analytically antecedent grounds," *Cameron v. Thornburgh*, 983 F.2d 253, 254 (D.C. Cir. 1993). First, this court lacks personal jurisdiction over the individual defendants because nothing in the Complaint shows, or even intimates, that any individual defendant resides in, or has sufficient contacts with, the District of Columbia. Second, venue for plaintiffs' claims against the individual defendants, all of which stem from acts or omissions alleged to have taken place in California, is improper in this district. Consequently, plaintiffs' claims against the individual defendants may not proceed in this court.

Even were the court to assert personal jurisdiction over the individuals and this district was the proper forum for adjudicating the individual-capacity claims, dismissal is warranted for three additional reasons. As an initial matter, the Supreme Court has never authorized a *Bivens*

_____

[1] This Memorandum is submitted solely on behalf of defendants in their individual capacities. The Air Force and official-capacity defendants will separately respond to the claims asserted against them. *See* ECF No. 19.

claim in the context presented here. In its *Abbasi* decision, the Court reconfirmed that expanding *Bivens* to any new context or new category of defendants is a disfavored judicial activity. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). Plaintiffs seek to extend the Supreme Court's *Bivens* holding into a wholly new context, despite the existence of several alternative comprehensive schemes and in the face of a number of special factors that counsel strongly against the court creating a new, freestanding remedy in damages. Even were this court to craft an implied damages remedy in this context, the individual defendants nonetheless are entitled to qualified immunity because plaintiffs have not adequately alleged that any of them violated a clearly established constitutional right. Finally, to the extent plaintiffs seek equitable relief from the individual defendants personally, such a request should be denied because equitable relief cannot be obtained from the defendants in their individual capacities. Accordingly, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), all claims against the individual defendants should be dismissed.

## BACKGROUND[2]

Plaintiff Charles Roberson retired from the United States Air Force as a Master Sergeant. Plaintiff Oscar Rodriguez, Jr. retired as a Senior Master Sergeant. Both spent the majority of their military careers at Travis Air Force Base ("Travis AFB"), located in Fairfield, California. ECF No. 1 ¶¶ 4-5. They served, respectively, with the 749th and 349th Aircraft Maintenance Squadrons there. At all times relevant to the Complaint, Defendant Colonel Michael Sovitsky either served as the Commander of the 349th or 749th Aircraft Maintenance Squadrons. *Id.* ¶ 7. Defendants Chief Master Sergeants Antonio Cordes and Dennis Thorpe, Senior Master Sergeant

---

[2] The facts in this section are taken from the Complaint and are assumed to be true for the purposes of this motion only. *See Davis v. Billington,* 681 F.3d 377, 379 (D.C. Cir. 2012).

Joe Bruno, and Technical Sergeant Al Hall were all stationed at Travis AFB. *Id*. ¶¶ 8-11.

Rodriguez joined the Travis AFB Honor Guard in 2001, and began participating in Air Force flag-folding ceremonies. *Id*. ¶ 20. Sometime that year, Rodriguez developed his own speech to accompany the flag-folding ceremony. In 2005, the Air Force promulgated Air Force Instruction ("AFI") 34-1201. In particular, 34-1201 provides:

> This paragraph discusses folding the flag of the United States at ceremonies other than military funerals. According to Title 4 United States Code, there is no specific meaning assigned to the folds of the flag. Although there are flag folding ceremony options offered by various national interest groups, these are not official Air Force ceremonies. The Air Force developed a script that provides a historical perspective on the flag. There are no ceremonies in the Air Force requiring a script to be read when the flag is folded. However, when a flag folding ceremony is desired and conducted by Air Force personnel at any location, on or off an installation, this script is the only one that may be used. This includes printing in programs and/or any handouts. See Attachment 4 for this script and a diagram depicting the proper method for folding the flag of the United States.

*Id*. ¶ 15 (quoting AFI 34-1201, ¶ 2.15). Attached to the AFI is the referenced flag-folding script. *Id*. ¶ 16 (reproducing script). After AFI 34-1201 was promulgated, Rodriguez no longer performed his own flag-folding speech as a member of the Honor Guard. *Id*. ¶ 26. Rodriguez claims that he did not think it was inconsistent with Air Force policy to continue to perform his own flag-folding speech upon the request of a retiree, as long as it was not in his capacity as a member of the Honor Guard. *Id*. ¶ 27.

Rodriguez retired from the Air Force in 2013, but reportedly continued to perform his flag-folding speech, including at the retirement of Master Sergeant Rutherford in March 2016. *Id*. ¶¶ 33, 35. Roberson attended Rutherford's retirement ceremony and enjoyed Rodriguez's flag-folding speech. He thereafter contacted Rodriguez to request that Rodriguez perform his flag-folding speech at Roberson's upcoming retirement from the Air Force. *Id*. ¶¶ 35-37.

Technical Sergeant Trevor Newsom served as Roberson's retirement coordinator. *Id.* ¶ 38. On March 8, 2016, Newsom advised Roberson that Rodriguez might not be permitted to attend Roberson's retirement ceremony. Newsom indicated that he did not know the details and suggested that Roberson contact Senior Master Sergeant Bruno. *Id.* On March 15, 2016, Bruno advised Roberson that Rodriguez could not be a part of the flag-folding ceremony at Roberson's retirement. *Id.* ¶ 40. Later, on March 28, 2016, Chief Master Sergeant Dale Smelser told Roberson that Rodriguez could attend Roberson's retirement as a guest, but that he thought Rodriguez had been banned from performing the flag folding ceremony. *Id.* ¶ 42. Roberson sent Rodriguez a text message in which he said that Sovitsky was trying to forbid Rodriguez from performing at the ceremony and advised him that Roberson's superiors did not want Rodriguez to perform at Roberson's retirement. *Id.* ¶ 43. Roberson nonetheless told Rodriguez that he still wanted Rodriguez to perform. *Id.*

The day before Roberson's retirement ceremony, Roberson met with Bruno and another Senior Master Sergeant, Keith Bennett, who told Roberson that he could invite Rodriguez to the retirement, but Rodriguez would not be doing the flag-folding ceremony. *Id.* ¶ 44. Similarly, on the morning of the retirement ceremony, Colonel Sovitsky, the squadron commander, approached Roberson and said that he wanted to make sure that Rodriguez knew that Rodriguez was not allowed to perform the flag-folding speech. Roberson said that Rodriguez was aware of what Sovitsky had said. *Id.* ¶ 45. That same day, Roberson told Rodriguez that, despite Sovitsky's "wishes," Roberson wanted Rodriguez to attend his retirement ceremony and that, if Rodriguez heard his music, he should perform his flag-folding speech. *Id.* ¶ 46.

On April 3, 2016, Roberson held his retirement ceremony at Travis AFB. Rodriguez entered Travis AFB after displaying identification. *Id.* ¶ 49. Rodriguez's name appeared on

Roberson's guest seating chart. *Id*. During the retirement ceremony, two Airmen from Roberson's unit began to unfurl the flag. *Id*. ¶ 53. Rodriguez then stood up, positioned himself next to the Airmen holding the flag, and turned to face the audience. *Id*. ¶ 54. Technical Sergeant Hall approached Rodriguez and asked him to sit down. Rodriguez did not sit down and did not respond to Hall. *Id*. ¶ 55. Senior Master Sergeant Bruno and Chief Master Sergeant Cordes approached Rodriguez. Colonel Sovitsky also stood up, but an airman gestured for him to sit, which he did. *Id*. As Rodriguez began to speak, Hall, Bruno, and Cordes forcibly removed Rodriguez away from the stage and up towards the back of the auditorium. As the three uniformed airmen were moving Rodriguez up the ramp, Chief Master Sergeant Thorpe joined the group to assist. *Id*. Sovitsky did nothing to stop Rodriguez's removal from the auditorium. *Id*. ¶ 57. Outside the auditorium, a Travis AFB police officer ordered Rodriguez to leave the base immediately, which Rodriguez did. *Id*. ¶ 60.

On May 20, 2016, Roberson filed a complaint with the Inspector General of the Air Force, alleging that the airmen unjustly removed Rodriguez from Roberson's retirement ceremony, assaulted Rodriguez, and violated the First Amendment. *Id*. ¶ 66. The Air Force IG produced a Report of Inquiry dated July 2016, which addressed Roberson's claims of First Amendment violations. *Id*. ¶¶ 69-70. Travis AFB issued an incident report addressing the other claims of misconduct. *Id*. ¶¶ 70-71.

Plaintiffs filed this civil suit on April 2, 2018. ECF No. 1. They assert claims under the Administrative Procedure Act ("APA") against the Air Force, alleging violations of their First, Fourth, and Fifth Amendment rights. (Counts One through Four). Plaintiffs also include a claim under RFRA against "all defendants" (Count Five). In Counts Six through Nine, plaintiffs assert

*Bivens* claims against Sovitsky, Bruno, Cordes, Thorpe and Hall.[3] Specifically, in Count Six, plaintiffs claim that all five individual defendants violated the Free Speech Clause of the First Amendment by attempting to ban Rodriguez from speaking at the ceremony and removing him from the auditorium when he began to speak. In Count Seven, plaintiffs allege the same conduct by the individual defendants violated the Free Exercise Clause of the First Amendment. In Count Eight, Rodriguez claims that all five individual defendants violated his Fourth Amendment rights when they forcibly removed him from the ceremony. Finally, in Count Nine, Rodriguez claims that all five individual defendants deprived him of life, liberty or property without due process of law. Plaintiffs seek money damages as well as declaratory and injunctive relief[4] and attorneys' fees.[5]

---

[3] Although plaintiffs do not specify anywhere in the Complaint or caption that they sue defendants in their individual capacities, *see* ECF No. 1 ¶¶ 7-11, plaintiffs assert claims under "*Bivens*" in Counts Six through Nine. Courts have no jurisdiction over *Bivens* claims asserted against federal employees in their official capacities, *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011), because a *Bivens* remedy only provides "an award for money damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007); *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (collecting cases). Because plaintiffs expressly invoke *Bivens* in Counts Six through Nine and seek damages in those counts, we construe them as being asserted against defendants in their individual capacities.

[4] Given that plaintiffs specify that they sue the five defendants in their official capacities, *see* ECF No. 1 ¶¶ 3, 7-11, we assume that plaintiffs' requests for injunctive and declaratory relief in their Prayer For Relief ¶ 1 and their RFRA claim in Count Five are against the defendants in their official capacities only. To the extent that plaintiffs seek equitable relief from the defendants in their individual capacities, however, such a request must be dismissed. As discussed in more detail below, "there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007).

[5] To the extent that Prayer for Relief ¶ 4 is directed towards the defendants in their individual capacities, it also must be dismissed because courts have made clear that attorneys' fees are not recoverable in *Bivens* suits. *Kreines v. United States,* 33 F.3d 1105, 1109 (9th Cir. 1994); *see also Couden v. Duffey*, 826 F. Supp. 2d 711, 717 n.23 (D. Del. 2011) (collecting cases); *GasPlus, LLC v. United States Dep't of Interior*, 593 F. Supp. 2d 80, 84, 88-89 (D.D.C. 2009) (same).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action for lack of personal jurisdiction. It is plaintiffs' burden to make a prima facie showing that the court has personal jurisdiction over each defendant. *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). Plaintiffs must allege "specific facts on which personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006). Similarly, when an objection to the propriety of venue is raised under Federal Rule of Civil Procedure 12(b)(3), it is plaintiffs' burden to establish that they have chosen a proper venue. *Hoskins v. Napolitano*, 842 F. Supp. 2d 8, 10 (D.D.C. 2012). Plaintiffs must establish that venue is proper with respect to each cause of action. *Id*. at 11-12; *Reynolds v. U.S. Dep't of Justice*, 10 F. Supp. 3d 134, 140 (D.D.C. 2014).

Dismissal is required under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must assume the truth of well-pleaded factual allegations in ruling on a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Accordingly, a court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted). As *Iqbal* teaches, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability," it has failed to state a claim. *Iqbal*, 556 U.S. at 678

7

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Thus, if the facts presented by the plaintiff do not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief,'" and dismissal should be granted. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

### ARGUMENT

All claims against the individual defendants should be dismissed because this court lacks personal jurisdiction and venue does not lie in the District of Columbia for the claims asserted against them. Furthermore, all *Bivens* claims should be dismissed because special factors counsel against creating an implied damages remedy in this novel context. Even if it were appropriate for the court to fashion a nonstatutory damages remedy here, all of the damages claims should be dismissed because each of the individual defendants is entitled to qualified immunity. Finally, to the extent plaintiffs seek equitable relief from the defendants personally, such relief can only be provided by them in their official capacities, and thus any such request should be denied.

### I.     This Court Lacks Personal Jurisdiction Over the Individual Defendants.

When a federal official is sued in his individual capacity, the normal rules for establishing personal jurisdiction apply. *See generally Walden v. Fiore*, 571 U.S. 277 (2014). Because in their *Bivens* claims plaintiffs seek relief against defendants in their individual capacities, plaintiffs bear the burden of showing that the court has personal jurisdiction over each one of them. *See Moore*, 437 F. Supp. 2d at 92. Personal jurisdiction is proper only when a defendant is domiciled in or maintains a principal place of business in the District of Columbia. D.C. Code § 13-422. Plaintiffs include no factual allegations that would demonstrate that either criterion is satisfied for any of the individual defendants. Under such circumstances, plaintiffs must show that jurisdiction may be exercised under the District of Columbia's long-arm statute

and that the exercise of personal jurisdiction satisfies due process. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *Chandler v. Stover*, 211 F. Supp. 3d 289, 296-97 (D.D.C. 2016) (applying two-part inquiry to determine whether court may exercise personal jurisdiction over non-resident *Bivens* defendants).

Under D.C.'s long-arm statute, this court may exercise personal jurisdiction over a non-resident defendant with regard to a claim arising from the defendant (1) transacting business in D.C.; (2) contracting to supply services in D.C.; (3) causing tortious injury in D.C. by an act or omission in D.C.; or (4) causing tortious injury in D.C. by an act or omission outside D.C., if defendant regularly does business in D.C. *See* D.C. Code § 13-423(a)(1)-(4).[6] Plaintiffs do not allege that they were injured in D.C. and none of the individuals are alleged to have transacted business or to have contracted to supply services in D.C.

The individual defendants' lack of any connection to the District of Columbia also means that this court's exercise of jurisdiction over them fails to satisfy due process. The due process analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Defendant's connection with the state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Defendant's suit-related conduct "must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (determining court lacked personal jurisdiction over DEA agent in *Bivens* suit where his relevant conduct occurred entirely in Georgia, not Nevada where the suit was filed). Stated differently, "[a] forum State's exercise of jurisdiction over an out-of-

---

[6] Other subsections do not apply to this case. *See* D.C. Code § 13-423(a)(5)-(7).

state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id*. at 286. Plaintiffs have failed to allege *any* contacts with D.C. on the part of the five individuals and they certainly do not show that their claims arise from or relate to any forum related activities. Being a member of the Air Force does not create the requisite connection to D.C. *See, e.g.*, *Morton v. Bolyard*, 810 F. Supp. 2d 112, 117 (D.D.C. 2011) (concluding that court lacked personal jurisdiction over BOP defendants because "[f]ederal government employment does not render these defendants subject to suit in their individual capacities in a District of Columbia court."); *Baez v. Connelly*, 734 F. Supp. 2d 54, 57 (D.D.C. 2010) (collecting cases holding that defendant's employment with the federal government is not a sufficient contact to support personal jurisdiction over defendant sued in his individual capacity); *Ballard v. Holinka*, 601 F. Supp. 2d 110, 118 (D.D.C. 2009) (finding no personal jurisdiction over Warden for Bureau of Prisons facility in Minnesota sued in her individual capacity because she had no contacts with the District of Columbia other than she was employed by BOP, which was headquartered in D.C.). Because plaintiffs have failed to meet their burden of establishing that this court has personal jurisdiction over any of the individual defendants, they should be dismissed from this suit pursuant to Rule 12(b)(2).

## II.    This District is Not a Proper Venue for Plaintiffs' Individual-Capacity Claims.

Plaintiffs cannot meet their burden of establishing that venue is appropriate as to each claim asserted against the individual defendants. The only venue provision on which plaintiffs rely in their Complaint, 28 U.S.C. § 1391(e), ECF No. 1 ¶ 3, establishes venue for cases against federal employees sued in their official capacities. *See Stafford v. Briggs*, 444 U.S. 527, 542-44 (1980). In *Bivens* suits—individual capacity suits against federal officials for damages—28 U.S.C. § 1391(b) applies. *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) ("§

1391(e) applies only to suits against government officers in their official capacities, not to *Bivens* actions"); *Gonzalez v. Holder*, 763 F. Supp. 2d 145, 152 (D.D.C. 2011) ("Venue in a *Bivens* case is governed by 28 U.S.C. § 1391(b)"); *Joyner v. Reno*, 466 F. Supp. 2d 31, 41 (D.D.C. 2006) ("While § 1391(e) applies to suits against government officials acting in their official capacities, … the proper venue provision for this and other cases in which federal officials are sued in their individual capacities based on federal question jurisdiction is 28 U.S.C. § 1391(b)").

Section 1391(b) provides no basis for invoking this forum to adjudicate the claims asserted against the individual defendants. That provision provides that venue exists only in (1) a district where any defendant resides, if all defendants reside in the same state, (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) if there is no district in which an action may otherwise be brought as provided in this section, a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). Plaintiffs include no allegations that any of the individuals reside in the District of Columbia. Nor does the Complaint allege that any event occurred in D.C. Indeed, the Complaint makes clear that D.C. has no relevance whatsoever to the events giving rise to the claims. Instead, the Complaint reports that, at all times relevant to the suit, defendants were stationed at Travis AFB in Fairfield, California, ECF No. 1 ¶¶ 7-11, and all events giving rise to their claims took place at Travis AFB. It therefore cannot credibly be argued that a "substantial part" of the events giving rise to the claims against the individual defendants occurred in D.C. *See Chandler*, 211 F. Supp. 3d at 298 (dismissing case for improper venue because individual *Bivens* defendants did not reside in D.C. and none of the alleged acts or omissions giving rise to the suit took place in D.C.); *Mullen v. Bureau of Prisons*, 843 F. Supp. 2d 112, 117 (D.D.C. 2012) (same). Finally, this case does not fall under subsection (b)(3)

because there is another district in which this action may otherwise be brought, the Eastern District of California, the district in which Travis AFB is situated. *See Ciralsky v. CIA*, 689 F. Supp. 2d 141, 162 (D.D.C. 2010) (internal quotation marks omitted) ("Section 1391(b)(3) is only applicable if there is no district in which venue is proper under one of the venue statute's first two provisions."). Because plaintiffs cannot meet their burden of establishing that venue is proper for the claims asserted against the individual defendants, dismissal is warranted under Rule 12(b)(3).

## III.    Plaintiffs Cannot Obtain Equitable Relief From Defendants in Their Individual Capacities.

In their first Prayer for Relief and in Count Five (RFRA), plaintiffs seek equitable relief from "all defendants." In describing the defendants that they sue in the Complaint, plaintiffs state that each defendant "acted in his official capacity and therefore acted under color of law as an officer of the United States Air Force." ECF No. 1 ¶¶ 7-11. As pleaded, plaintiffs' requests for equitable relief appear to be directed to the five named Air Force officers in their official capacities only.

To the extent plaintiffs seek to obtain equitable relief from the five individual defendants personally, they cannot because equitable relief "is not available against a defendant sued in his individual capacity." *Leyland v. Edwards*, 797 F. Supp. 2d 7, 12 (D.D.C. 2011); *cf. Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (observing that the distinction between individual and official capacity suits "apparently continues to confuse lawyers and confound lower courts" and defining the practical and doctrinal differences between personal and official capacity actions). That is because the government is the real party in interest in a suit for equitable relief where the suit is based on an employee's performance of his or her official duties. *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotation marks and citations omitted) ("The general rule is that a suit is

against the sovereign . . . if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."). The government's interest in such a suit is apparent because "[i]njunctive relief is sought that would require [the employees] to exercise their official powers in certain ways." *Libby v. Marshall*, 833 F.2d 402, 405 (1st Cir. 1987). In contrast, an employee's personal interest in litigation is essentially limited to whether or not he or she is required to pay damages with his or her own personal assets.[7]

Courts therefore consistently focus the inquiry on whether the government's own interests are at stake. *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 24 (D.D.C. 2007) (citation and quotation marks omitted) ("Regardless of the manner by which a plaintiff designates the action, a suit should be regarded as an official-capacity suit ... when ... the effect of the judgment would be to restrain the Government from acting, or to compel it to act."). Indeed, it is only by acting as a government official that any of the individual defendants could comply with a decree from the court ordering them to perform their government duties in one way or another. *See id.* at 26 (reporting that courts have held that "[t]here is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity"); *see also Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) (concluding that injunctive relief can only be awarded against a government employee in his or her official capacity); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) ("[T]he declaratory and injunctive relief Wolfe seeks is only available in an official capacity suit."); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) (same); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("[T]he equitable relief Feit

---

[7] This is illustrated in practice when an official-capacity defendant from whom injunctive relief is requested leaves office and his or her successor, whose actions the requested relief would restrain, is substituted under Fed. R. Civ. P. 25(d). In contrast, a claim for damages from an individual-capacity defendant survives even if he or she leaves office. *See Graham*, 473 U.S. at 166 n.11.

requests—a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals."). As a result, any equitable relief that plaintiffs seek can only be obtained from the defendants in their official capacities, not from them personally.

### IV.   This Court Should Decline to Recognize a *Bivens* Remedy for Plaintiffs' Claims.

Even if the court asserts personal jurisdiction over the individual defendants and venue in this district is deemed proper, all individual capacity damages claims (Counts Six through Nine) should be dismissed for failure to state a claim. Relying upon *Bivens*, 403 U.S. 388, plaintiffs seek damages directly under the Constitution from the individual defendants for alleged violations of the First, Fourth, and Fifth Amendments. This court should decline plaintiffs' invitation to create an implied damages remedy because a host of factors counsel against doing so in this context.

### A.   Extending *Bivens* to New Contexts is Disfavored.

Unlike 42 U.S.C. § 1983, which statutorily entitles an injured person to money damages for violations of constitutional rights by officials acting under color of state law, a *Bivens* action is a limited, judicially created damages remedy against federal officials for certain constitutional violations. *See Bivens*, 403 U.S. at 397. In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), directly under the Fourth Amendment when federal agents allegedly entered and searched plaintiff's apartment and arrested him without a warrant. *Bivens*, 403 U.S. at 389, 397. The Court took the unprecedented step of creating an implied cause of action for damages only after finding that there were "no special factors counseling hesitation [in

creating such a remedy] in the absence of affirmative action by Congress." *Id*. at 396.

Since then, the Supreme Court has extended *Bivens* only twice, and only after specifically determining that there were no such special factors. *See Davis v. Passman*, 442 U.S. 228 (1979) (implying a damages remedy under the equal protection component of the Fifth Amendment for congressional aide alleging sex discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (implying a damages remedy under the Eighth Amendment for a prisoner against federal prison officials for failure to provide life-saving medical treatment, resulting in his death). "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855.

In the almost four decades since the last of those cases, *Carlson*, was decided, the Supreme Court "ha[s] consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68; *Minneci v. Pollard*, 565 U.S. 118, 124-25 (2012) (collecting cases); *Klay v. Panetta*, 758 F.3d 369, 372 (D.C. Cir. 2014) ("Only twice has the Supreme Court approved of the application of *Bivens's* reasoning to new classes of cases, and never in the past thirty years."). The Supreme Court has repeatedly emphasized that a judicially created damages remedy for constitutional violations like that inferred in *Bivens* "is not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *Malesko*, 534 U.S. at 75 (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition."); *Meshal v. Higgenbotham,* 804 F.3d 417, 421 (D.C. Cir. 2015) (internal quotation marks omitted) (observing that "over time, the Court gradually retreated from *Bivens,* rejecting any automatic entitlement to the remedy…"). Indeed, the Supreme Court "in most instances . . . [has] found a *Bivens* remedy unjustified," *Wilkie*, 551

U.S. at 550. The D.C. Circuit accordingly has warned, "[t]he implication of a *Bivens* action … is not something to be undertaken lightly." *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012).

In 2017, the Supreme Court reiterated the trend of its post-*Bivens* jurisprudence, strongly cautioning against implying a *Bivens* remedy in new contexts or extending it to new categories of defendants. *Abbasi*, 137 S. Ct. at 1857. The Court acknowledged that when *Bivens*, *Davis*, and *Carlson* were decided, "the Court followed a different approach to recognizing implied causes of action than it follows now." *Id*. at 1855. Over time, "the arguments for recognizing implied causes of action for damages began to lose their force." *Id*. Since that time, the Court explained, there has been a "notable change in the Court's approach to recognizing implied causes of action." *Id*. at 1857. With respect to providing a damages remedy directly under the Constitution in particular, *Abbasi* confirmed that expanding the *Bivens* remedy is a "'disfavored' judicial activity." *Id*. (quoting *Iqbal*, 556 U.S. at 675).

Although *Abbasi* stopped short of overruling *Bivens* and its two subsequent progeny, it observed that "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id*. at 1856. The *Abbasi* Court warned, "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Id.* As the Supreme Court's "precedents now instruct," Congress is in a "better position" than the Judiciary "to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (citation and quotation marks omitted); *Davis v. Billington*, 681 F.3d 377, 381 (D.C. Cir. 2012) (explaining that the Supreme Court has made clear that in most instances "Congress, not the

judicial branch, is in the best position to prescribe the scope of relief available for the violation of a constitutional right").

Pursuant to the Supreme Court's instruction in *Abbasi*, a court evaluating a *Bivens* claim today first must determine if the claim arises in a new context as compared to *Bivens*, *Davis*, and *Carlson*. *Abbasi*, 137 S. Ct. at 1859-60. If a case presents "a new *Bivens* context," then "a special factors analysis [is] required" before a court may allow a proposed "damages suit to proceed." *Id*. at 1860. This is "a rigorous inquiry," *Vanderklok v. United States*, 868 F.3d 189, 200 (3d Cir. 2017), and "a *Bivens* remedy will not be available" if there are special factors counselling hesitation in the absence of affirmative action by Congress. *Abbasi*, 137 S. Ct. at 1857. As explained below, this case unquestionably presents a new context, and multiple processes and factors counsel authoritatively against the court creating the damages remedy that plaintiffs seek.

**B. Plaintiffs Seek to Extend *Bivens* Liability Into a New Context.**

The "first question a court must ask" before potentially imposing substantive legal liability on a federal officer is "whether the claim arises in a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1864; *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 915 (D.C. Cir. 2018) (reversing district court for failing to "decide[] the availability of a *Bivens* remedy as a threshold question gating whether the *Bivens* Defendants must defend against this suit in their personal capacities"). While the Supreme Court has always urged courts to tread carefully in extending an implied damages remedy to a new context, in *Abbasi*, the Court defined, for the first time, what constitutes a "new *Bivens* context." *Abbasi*, 137 S. Ct. at 1859. It declared that the "proper test" for determining if a proposed implied right of action involves a new context is whether the case "is different in a meaningful way from previous *Bivens* cases *decided by this Court*." *Id*. (emphasis added). The Court then gave several non-exclusive examples of how a

given case "might differ in a meaningful way" including: the constitutional right at issue; the statutory or other legal mandate under which the official was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider. *Id*. at 1860. The Court noted that its examples were illustrative, not exhaustive. *Id*. In the end, such "meaningful" differences, the *Abbasi* Court noted, may be "small, at least in practical terms," but "even a modest extension is still an extension." *Id.* at 1864-65.

The context in which plaintiffs ask this court to create a damages remedy is undoubtedly new. Plaintiffs' claims bear no resemblance to the Fourth, Fifth, and Eighth Amendment claims of *Bivens*, *Carlson*, or *Davis*. First, plaintiffs ask this court to craft a damages remedy for violations of constitutional rights for which the Supreme Court has never approved of an implied damages remedy, *i.e.*, the First Amendment and the procedural and substantive due process components of the Fifth Amendment. *Id.* at 1857. The Supreme Court has never recognized an implied damages remedy for *any* First Amendment violation. *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (noting that "[w]e have never held that *Bivens* extends to First Amendment claims"); *Iqbal*, 556 U.S. at 675 (explaining that the Court has "declined to extend *Bivens* to a claim sounding in the First Amendment."); *Wilkie*, 551 U.S. at 550 (explaining that the Court had "held against applying the *Bivens* model to claims of First Amendment violations by federal employers") (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). Nor has it ever approved of a *Bivens* procedural or substantive due process claim. *E.g., Abbasi*, 137 S. Ct. at 1876 (Breyer, J., dissenting) (reporting that the Supreme Court has held that a *Bivens* remedy is *not* available "in the context of suits seeking to vindicate procedural, rather than substantive, constitutional

18

protections" because such cases are "'*fundamentally different* from anything recognized in *Bivens* or subsequent cases'" (quoting *Malesko*, 534 U.S. at 70)).

Second, while Rodriguez asserts an unreasonable seizure claim under the Fourth Amendment (the right at issue in *Bivens*), plaintiffs ask this court to create a remedy in a far different setting (*i.e.*, in the military context, for conduct on a military base) against a new category of defendants (military personnel). On top of that, plaintiffs ask the court to create this remedy in a setting that risks interference by the Judiciary into the functioning of another branch of government. Indeed, the Supreme Court has never authorized a *Bivens* action against military defendants or for claims involving the military and, instead, has expressly rejected such claims on two separate occasions. *United States v. Stanley*, 483 U.S. 669 (1987); *Chappell v. Wallace*, 462 U.S. 296 (1983).

Finally, as explained below, plaintiffs had (and have) available to them potential alternate means of protecting their rights that were not considered in any of the three previous Supreme Court *Bivens* cases. All of the differences between this case, on the one hand, and *Bivens*, *Davis*, and *Carlson*, on the other hand, confirm that the context of this case is unmistakably new.

## C. Plaintiffs' Claims Directly Implicate Numerous Special Factors That Counsel Against Authorizing a *Bivens* Remedy in This Context.

Because the context is new, this court may not devise a damages remedy without first considering (1) whether an "alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" and (2) even in the absence of alternative existing processes, whether other "special factors" counsel hesitation before authorizing a new kind of federal litigation. *Wilkie*, 551 U.S. at 550. This case is fraught with the very concerns that have prompted the Supreme Court (as well as the D.C. Circuit) to refuse to recognize a damages remedy. Both the existence

of alternative processes and other factors strongly counsel against allowing plaintiffs' *Bivens* claims to proceed. That is especially true here in the military context, a context in which the Supreme Court has never seen fit to imply a damages remedy.

**1.  *Alternative, Existing Processes Preclude Plaintiffs' Claims.***

"[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Abbasi*, 137 S. Ct. at 1865. Alternative structures "can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). And, alternative processes need not offer monetary relief. *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015) ("The absence of monetary damages in the alternative remedial scheme is not ipso facto a basis for a *Bivens* claim."). Instead, "[s]o long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69. *Abbasi* re-emphasized that "if there is an alternative remedial structure present in a certain case, that *alone* may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi,* 137 S. Ct. at 1858 (emphasis added); *Liff*, 881 F.3d at 918. That is because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi,* 137 S. Ct. at 1863.

Plaintiffs' claims implicate at least three alternative existing processes that courts have already determined require the judiciary to refrain from creating a freestanding damages remedy: the APA; the Military Claims Act ("MCA"); and RFRA. "Taken together," *Chappell*, 462 U.S. at 304, the availability of these processes weighs against expanding *Bivens* to plaintiffs' claims.

**APA.** Chief among the "alternative methods of relief" is an injunctive claim under the APA. In *Abbasi,* the Supreme Court explained that the potential for injunctive relief weighs heavily against permitting a judicially-created damages remedy. *Abbasi*, 137 S. Ct. at 1862. In

this case, plaintiffs seek relief under the APA for the very same conduct giving rise to their *Bivens* claims. *Compare* Counts One through Four *with* Six through Nine. Plainly, the existence of the APA, which allows for such relief, militates against fashioning an additional remedy in damages. *E.g., Jangjoo v. Sieg*, 319 F. Supp. 3d 207, 217-18 (D.D.C. 2018).

Even prior to *Abbasi*, courts of appeal recognized the APA as an alternative existing process precluding them from recognizing a separate damages remedy. *E.g., Western Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009) (concluding that the "design of the APA raises the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and provides 'a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages'" (quoting *Wilkie*, 551 U.S. at 550)); *see also Wilkie*, 551 U.S. at 552 (noting that plaintiff had an adequate remedy for his unfavorable agency action claims because judicial review under the APA was available); *Carpenter's Produce v. Arnold*, 189 F.3d 686, 688 (8th Cir. 1999) (APA is one factor weighing against permitting a *Bivens* claim); *Miller v. USDA*, 143 F.3d 1413, 1416 (11th Cir. 1998) (APA precludes *Bivens* action); *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 70 (D.D.C. 2015) ("[W]hen taken together, the APA and the substantive statutory and regulatory provisions that govern the ATVM Loan Program are plainly sufficient to constitute the sort of comprehensive remedial scheme that courts have found weighs against permitting a *Bivens* action to proceed."); *Storms v. United States*, No. 13-CV-811, 2015 WL 1196592, at *14 (E.D.N.Y. Mar. 16, 2015) ("The Court agrees with the courts that have considered this issue and finds that there is no *Bivens* remedy for a claim that is within the ambit of the APA, as the APA constitutes an alternative, existing process for relief."). In *Western Radio*, the Ninth Circuit observed that the APA "expressly declares itself to be a comprehensive remedial scheme," and described the APA as broader in scope than the Social Security System,

which the Supreme Court previously had found to preclude a *Bivens* remedy. 578 F.3d. at 1122-23. The Ninth Circuit reasoned that because the APA's procedures are available when no other adequate alternative remedy exists, it "further indicates Congress's intent that courts should not devise additional, judicially crafted default remedies." *Id*. at 1123. As a result, the Ninth Circuit concluded that the "APA leaves no room for *Bivens* claims" based on agency action or challenging individual officers' alleged illegitimate desire to retaliate against plaintiff for exercising its First Amendment rights. *Id.* at 1123, 1125. Just as in *Western Radio*, in this very suit, plaintiffs have taken advantage of this scheme to pursue injunctive relief for each of their purported constitutional claims.[8] This court should not augment the APA by crafting an implied damages remedy.

**MCA**. Another avenue for relief for Rodriguez is the Military Claims Act ("MCA"), 10 U.S.C. § 2733. This statute "provides that the Judge Advocate General of each service may award up to $100,000 from the Treasury to any person injured by the military." *Vance v. Rumsfeld*, 701 F.3d 193, 201 (7th Cir. 2012) (en banc). In *Vance*, the *en banc* Seventh Circuit held that the possibility of relief under the MCA was a significant reason for refusing to authorize a *Bivens* remedy against U.S. military personnel who allegedly mistreated (or enacted policies that allegedly led to the mistreatment of) two American citizens detained by military officials. *See id*. at 195-96. As the court of appeals explained:

---

[8] The viability of those claims will rise or fall on their own basis. Nevertheless, it is the potential availability of the avenue, and not the ultimate success of those claims, that forecloses the implication of a *Bivens* remedy. *See Malesko*, 534 U.S. at 73-74 (refusing to imply a remedy in part because plaintiff could seek injunctive relief, not because he successfully did so); *Vega*, 881 F.3d at 1155 ("That Vega's state law claims ultimately failed to satisfy the requirements of Washington law, or federal pleading standards, does not mean that he did not have access to alternative or meaningful remedies"); *cf. Wilkie*, 551 U.S. at 552 (observing that plaintiff "took advantage of some opportunities, and let others pass; although he had mixed success, he had the means to be heard.").

> [T]hat Congress has provided for compensation tells us that it has considered how best to address the fact that the military can injure persons by improper conduct. We take two things from the Military Claims Act and the Foreign Claims Act: first, Congress has decided that compensation should come from the Treasury rather than from the pockets of federal employees; second, plaintiffs do not need a common-law damages remedy in order to achieve some recompense for wrongs done them. Unlike Webster Bivens, they are not without recourse.

*Id.* at 201.

As in *Vance*, Rodriguez's[9] allegations—that members of the U.S. military injured him "by improper conduct"—fall within the general ambit of the MCA. *See id.*; *see also Huckaby v. Bradley*, No. 16cv4327, 2018 WL 2002790, at *7 (D.N.J. Apr. 30, 2018), *appeal docketed,* No. 18-2204 (3d Cir. June 1, 2018) (refusing to imply a remedy under the Fifth Amendment against military personnel for deliberate indifference because the MCA and FTCA together serve as alternative remedies); *Doe v. Meron*, No. 17-812, 2018 WL 3619538, at *13 (D. Md. July 30, 2018), *appeal docketed*, No. 18-2024 (4th Cir. Sept. 5, 2018) (concluding that the MCA afforded plaintiffs a "comprehensive and adequate avenue for relief" precluding Fourth and Fifth Amendment *Bivens* claims). The availability of the MCA justifies refraining from implying a remedy in damages directly under the Constitution.

**RFRA**. Finally, plaintiffs have the potential to avail themselves (and did) of a cause of action in federal court through RFRA for their Free Exercise claim. With RFRA, Congress created a cause of action for burdens on free exercise and permitted "appropriate relief" against the government. 42 U.S.C. § 2000bb-1(c). Even standing alone, and particularly post-*Abbasi*, RFRA's protections counsel strongly against implication of the First Amendment Free Exercise *Bivens* remedy requested here. *See Turkmen v. Hasty*, 789 F.3d 218, 268 n.3 (2d Cir. 2015),

---

[9] Roberson cannot recover damages for his alleged injuries, which arise out of activity incident to his military service. 10 U.S.C. § 2733(b)(3); *see also United States v. Stanley*, 483 U.S. 669 (1987).

*judgment rev'd on other grounds in part, vacated in part sub nom. Abbasi*, 137 S. Ct. 1843 (Raggi, C.J., concurring in part and dissenting in part) (concurring in dismissal of Free Exercise claim because not only has the Supreme Court declined to extend a *Bivens* remedy to First Amendment claims in any context, but Congress has also provided alternative relief under RFRA); *Crowder v. Jones*, No. 14CV202, 2017 WL 5889717, at *2 (S.D. Ind. Nov. 29, 2017) ("Whether or not he is able to obtain relief through the administrative remedy process or through his RFRA claim, these alternate avenues of relief are available for the claim based on the denial of a kosher diet."); *Cooper v. True*, No. 16cv2900, 2017 WL 6375609, at *3 (D. Minn. Nov. 2, 2017), *report and recommendation adopted*, 2017 WL 6372651 (D. Minn. Dec. 12, 2017) (dismissing claims on immunity grounds but noting that "RFRA may be just such an alternative, existing process for protecting an injured party's interest where free exercise rights are involved"). This court should not supplement RFRA by crafting a freestanding remedy in damages for plaintiffs' Free Exercise claim.

To decline to imply the disfavored *Bivens* remedy, this court need not "parse the specific applicability of th[e] web of … remedies" to a plaintiff's circumstances. *Liff*, 881 F.3d at 921. The existence of some "form of equitable relief" "usually precludes" courts "from authorizing a *Bivens* action." *Abbasi*, 137 S. Ct. at 1865. That is because in *Bivens*, the Court implied a remedy, in part, because the plaintiff in that case had no other avenue to seek relief; for Bivens, it was "damages or nothing." *Bivens*, 403 U.S. at 410 (Harlan, J. concurring). In contrast, here, because plaintiffs have had "the means to be heard," this court should "stay its *Bivens* hand." *Wilkie*, 551 U.S. at 552, 554. Given the existence of the alternative processes detailed above, this court should decline plaintiffs' invitation to fashion a standalone damages remedy for them here.

### 2. *Other Special Factors Counsel Against Devising A Bivens Remedy.*

The aforementioned alternative processes foreclose the implied damages remedy that plaintiffs seek. But, even if no alternative processes were available to plaintiffs, the Supreme Court advises that "before authorizing a new kind of federal litigation," courts should assess whether there are "any special factors counselling hesitation." *Wilkie*, 551 U.S. at 550 (internal quotation marks omitted); *Meshal v. Higgenbotham*, 804 F.3d 417, 425 (D.C. Cir. 2015) ("[E]ven if the choice is between *Bivens* or nothing, if special factors counsel hesitation, the answer may be nothing").

A wide range of factors may make it inappropriate to imply a *Bivens* remedy in a particular context. *Abbasi*, 137 S. Ct. at 1860-63 (cataloguing several special factors implicated by that case). *Abbasi* counsels courts to "concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58. Consequently, "if there are sound reasons to think Congress *might doubt* the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.* at 1858 (emphasis added).

Plaintiffs' claims implicate no less than four separate special factors that should cause this court to hesitate before implying a damages remedy in this new context. Although each "special factor," standing alone, counsels hesitation, in the aggregate they leave no room to doubt that any decision to create the damages remedy that plaintiffs seek lies with Congress, and not the courts. *See id.* at 1860-63; *Meshal*, 804 F.3d at 425 ("We do not here decide whether either factor alone would preclude a *Bivens* remedy, but both factors together do so.").

a. Plaintiffs' Claims Raise Fundamental Separation-of-Powers Concerns.

Most prominently, the separation-of-powers concerns inherent in this case counsel against inferring a damages remedy for plaintiffs here. As the Supreme Court has observed, when a party seeks to assert an implied a cause of action, "separation-of-powers principles are or should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857; *Lebron v. Rumsfeld*, 670 F.3d 540, 548 (4th Cir. 2012) (recognizing that "[p]reserving the constitutionally prescribed balance of powers is . . . [a] special factor counseling hesitation" in implying a *Bivens* remedy). While the creation of an implied remedy always raises separation-of-powers concerns, when the Constitution textually commits exclusive authority to Congress or the Executive to regulate its own affairs in a given sphere, courts have found that to be a factor weighing especially heavily against authorizing a damages remedy.

With regard to claims involving the military or against military personnel in particular, courts have refused on separation-of-powers grounds to intrude into that sphere with a judicially-crafted remedy under *Bivens.* Courts have done so primarily because the Constitution textually commits military affairs to the Legislative and Executive Branches. *Chappell*, 462 U.S. at 300-1; *Stanley*, 483 U.S. at 682; *Doe v. Hagenback*, 870 F.3d 36, 43 (2d Cir. 2017) ("The Supreme Court's separation-of-powers concern with implied causes of action under the Constitution, present in all cases in which plaintiffs have sought to extend *Bivens's* reach, is particularly acute in the military context."); *Cioca v. Rumsfeld*, 720 F.3d 505, 518 (4th Cir. 2013) (noting that refusing to imply a remedy in the military context reflects "the judicial deference to Congress and the Executive Branch in matters of military oversight required by the Constitution and our fidelity to the Supreme Court's consistent refusal to create new implied causes of action in this context.").

26

In *Chappell v. Wallace*, 462 U.S. 296, 301-05 (1983), the Supreme Court catalogued the weighty concerns raised by the prospect of implying a damages remedy in the military context. There, service members asserted *Bivens* claims against their superior officers, alleging racial discrimination in violation of the equal protection component of the Fifth Amendment. *Id*. at 297. Although the Court had allowed a discrimination *Bivens* claim in *Davis v. Passman* to proceed, the Court observed that "centuries of experience" had influenced a "hierarchical structure of discipline and obedience to command" in the military, which the Court characterized as "wholly different from civilian patterns." *Id*. at 300. The Court recognized that the Constitution explicitly commits military affairs to the Legislative and Executive Branches. *Id*. at 301-02. The Court explained that the Constitution contemplated that Congress has plenary control over "rights, duties, and responsibilities in the framework of the military establishment including regulations, procedures and remedies related to military discipline." *Id*. at 301. *Chappell* therefore advised courts to avoid interference with the "necessarily unique structure of the military establishment." *Id*. Instead, it instructed courts to defer to the Framers who were "well aware of the difference between [military] and civilian life" and had granted authority to Congress to make "Rules for the Government and Regulation of the land and naval forces." *Id*. at 300-01 (citing U.S. CONST. art. I, § 8, cls. 12-14). Observing that Congress had chosen not to provide a damages remedy for claims by military personnel against superior officers for constitutional violations, it thus concluded that it would be inappropriate to "provide a judicial response by way of such a remedy…" *Id*. at 304. It held that military personnel could not maintain a damages suit against superior officers for constitutional violations. *Id*. at 305.

Four years after *Chappell*, the Supreme Court again refused to infer a *Bivens* remedy against government officials in the military context. *Stanley*, 483 U.S. at 683-84. In *Stanley*, a

former master sergeant in the Army sued civilian and military personnel who had secretly administered LSD to him. *Id*. at 671-72, 679. The Court reiterated that "here we are confronted with an explicit constitutional authorization for Congress '[t]o make Rules for the Government and Regulation of the land and naval Forces.'" *See id.* at 681-82 (quoting U.S. CONST. art. I, § 8, cls. 12-14). The Court went on to observe that in part what is "distinctive" and counsels hesitation in implying a remedy is the "specificity" of that grant of power in the Constitution. *Id.* ("[T]he insistence … with which the Constitution confers authority over the Army, Navy and militia upon the political branches … counsels hesitation in our creation of damages remedies in this field."). The *Stanley* court therefore concluded that, even where no officer-subordinate relationship exists, "no *Bivens* remedy is available for injuries that arise out of or are in the course of activity incident to [military] service." *Id.* at 683 (internal quotation marks omitted).

Paying heed to *Chappell* and *Stanley's* clear pronouncements, courts routinely have refused to authorize *Bivens* claims in the military context, recognizing the grave separation-of-powers concerns implying such a remedy would implicate. *E.g., Doe*, 870 F.3d at 44, 49 (explaining that Supreme Court precedent "leads ineluctably to the conclusion that Doe cannot maintain her *Bivens* claim" noting that the explicit constitutional authorization for Congress to make rules for the military "counsels hesitation as to the wisdom of money damages litigation, where Congress has not authorized it."); *Cioca*, 720 F.3d at 509 (citation and quotation marks omitted) (explaining that "abstention from sanctioning a *Bivens* claim in the military context is, at its essence, a function of the separation of powers under the Constitution which delegates authority over military affairs to Congress and to the President as Commander in Chief. It contemplates no comparable role for the judiciary."); *Heap v. Carter*, 112 F. Supp. 3d 402, 428-29 (E.D. Va. 2015) (concluding that special factors precluded a *Bivens* remedy for a chaplain

alleging that officials violated his First Amendment rights, noting that "[a]s a consequence of the Constitution's specific delineation of the powers allotted among the branches of government in military affairs," courts should hesitate in implying a remedy).

*Stanley* and its progeny dictate dismissal of all of Roberson's *Bivens* claims because he has filed suit against his commander and fellow airmen for injuries stemming from activity incident to his military service. *See, e.g., Cioca*, 720 F.3d at 512 ("The law is now settled that *Bivens* suits are never permitted for constitutional violations arising from military service…" (quoting Erwin Chemerinsky, FEDERAL JURISDICTION 621-222 (5th ed. 2007)); *Colon v. United States*, -- F. Supp. 3d --, No. 17-775, 2018 WL 1352962, at *7 (D. Md. Mar. 13, 2018) (holding that "the doctrine of intra-military immunity serves as an absolute bar to a plaintiff's *Bivens* action against fellow military personnel").

The numerous factors outlined in *Chappell*, *Stanley,* and the cases decided in their wake, also counsel against authorizing the *Bivens* claims of either of the plaintiffs here. Both plaintiffs challenge the decisionmaking of a commanding officer about on-base conduct during a military ceremony. Adjudication of plaintiffs' damages claims would require civilian court inquiry into military decisionmaking and disciplinary decisions, military protocols during military ceremonies, and appropriate on-base conduct. Similar factors caused the D.C. Circuit to decline to authorize a *Bivens* action in *Klay*. 758 F.3d at 375 (cataloguing problems with permitting such an action to lie including that plaintiff's theory of the case would "require military leaders to defend their professional management choices"). Plaintiffs' suit, in other words, "proposes to do precisely what the Supreme Court has instructed [courts] not do: require members of the Armed Services … to testify in court as to each other's decisions and actions … in order to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions." *Lebron*, 670

F.3d at 553 (internal quotations and citations omitted); *see also Cioca*, 720 F.3d at 516

("[R]esolution of Plaintiffs' claims would force us to pass judgment on the merits of the

Defendants' military decisions, which Supreme Court precedent has concluded is not within the

realm of our judicial branch function. Congress, not the courts, is in the proper constitutional

position to conduct such an inquiry and provide a statutory remedy should it determine that

action is warranted."). Because these concerns pervade all of the claims asserted here, this court

should refrain from crafting a damages remedy for plaintiffs.

> b.  Creating a Damages Remedy Would Be Inconsistent With Congress' Activity
>     in the Field.

Intertwined with the separation-of-powers concerns that plaintiffs' claims implicate is a

separate, but related, factor: the Supreme Court has counseled against implying a damages

remedy when doing so would be inconsistent with Congress' authority in the field. *Abbasi,* 137

S. Ct. at 1861. As the D.C. Circuit recently explained, even if particular statutes do not provide

plaintiff a remedy, Congress's legislative activity in the field and its decision not to afford a

damages remedy for constitutional violations, should convince courts to refrain from crafting a

damages remedy directly under the Constitution. *Liff*, 881 F.3d at 920 (explaining that the

"presence of significant legislated remedies in this arena counsels against the recognition of a

judicially created *Bivens* remedy").

Courts have concluded that congressional activity in military affairs counsels

authoritatively against a court fashioning a standalone remedy in damages in the military context.

*See Chappell*, 462 U.S. at 304 (concluding that Congress' authority in the field of military

matters weighed against permitting a damages remedy); *Klay*, 758 F.3d at 375 (explaining that

"both the military context of plaintiffs' claims and Congress's extensive legislation on this

specific issue are special factors that counsel decisively against authorizing a *Bivens* remedy.");

*Meshal*, 804 F.3d at 427 (observing that "the special needs of the military requires courts to leave the creation of damage remedies against military officers to Congress."); *Doe v. Rumsfeld*, 683 F.3d 390, 397 (D.C. Cir. 2012) (determining that special factors precluded suit by a contractor who was subjected to military detention because "[i]t would be inappropriate for this Court to presume to supplant Congress's judgment in a field so decidedly entrusted to its purview).

The depth and breadth of Congress's activity in the field is illustrated by a wide-range of statutes. By way of example only, Congress has promulgated channels and mechanisms for airmen like Roberson to file complaints against their superiors under 10 U.S.C. § 938. *Chappell*, 462 U.S. at 302 (highlighting 10 U.S.C. § 938 and explaining that Congress has "enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure. The resulting system provides for the review and remedy of complaints and grievances such as those presented by respondents"). Additionally, Congress has established an elaborate system of veterans' benefits covering service-related injuries and official military conduct. Furthermore, civilians like Rodriguez may file personal injury claims for injuries caused by members of the military under 10 U.S.C. § 2733 (the MCA). *E.g.*, *Vance*, 701 F.3d at 201 (explaining that existence of Military Claims Act and Foreign Claims Act show that "Congress has provided for compensation" and "tells us that it has considered how best to address the fact that the military can injure persons by improper conduct"). Relatedly, through the Uniform Code of Military Justice, Congress has established an entirely separate system of military justice for members who are found to have committed a wide range of misconduct, such as the purported "assault" claimed by Rodriguez. The Supreme Court has determined that Congressional activity in this field requires courts to refrain from creating a freestanding remedy in damages directly under the

Constitution, where Congress has not authorized one. *Chappell*, 462 U.S. at 304 (noting that "Congress, the constitutionally authorized source of authority over the military system of justice, has not provided a damages remedy for claims by military personnel that constitutional rights have been violated by superior officers. Any action to provide a judicial response by way of such a remedy would be plainly inconsistent with Congress' authority in this field.").

That Congress chose to provide certain relief to only certain persons asserting claims against military personnel counsels against usurping such legislative decisions by way of a judicially-implied remedy. *Lebron*, 670 F.3d at 556 (holding that the court "cannot regard the legislative failure to provide [the plaintiff] with the monetary damages he seeks from each defendant as an invitation to design some preferred remedial regime of [its] own"). Congress's attention to the regulation of the armed forces, its promulgation of various statutes delineating remedies, and its creation of an entirely separate system of justice to regulate and discipline military personnel all militate heavily against a court-created damages remedy in this context.[10]

c.   A *Bivens* Claim is Not an Appropriate Vehicle to Challenge Policy.

Yet another reason this court should refrain from fashioning a damages remedy for plaintiffs is because, fundamentally, this case involves a challenge to Air Force policy. The Supreme Court has declared, however, that "a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74). Consequently,

---

[10] Congress has similarly been active in the religious arena by crafting (and amending), in response to Supreme Court jurisprudence, legislation addressing protection of the free exercise of religion, in particular, through RFRA and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). In describing RLUIPA, the Supreme Court reported that the statute is the "latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). Whatever remedies Congress did (or did not) create, it is Congress's "long-running" attention to the matter that counsels against augmenting its decisions by creating a non-statutory remedy under the Constitution.

courts regularly look behind asserted *Bivens* claims to determine whether the claims are simply a thinly-veiled attempt to challenge policy.

When one looks behind plaintiffs' First and Fifth Amendment *Bivens* claims, it is clear that, at bottom, what they challenge is the Air Force's 2005 flag-folding protocol. *See* ECF No. 1 ¶¶ 105-109 (Count Six) (First Amendment *Bivens* Claim) (proffering plaintiffs' view of the constitutional infirmities in Air Force Instruction 34-1201); *id.* ¶¶ 118-122 (Count Seven) (First Amendment *Bivens* Claim) (same); *id.* ¶¶ 139-141 (Count Nine) (Fifth Amendment *Bivens* Claim) (same). There is no justification for implying a remedy against defendants personally when plaintiffs' real grievance is with the protocol. *See Lebron*, 670 F.3d at 552 ("One may agree or not agree with those policies … But the forum for such debates is not the [*Bivens*] action pressed in the case at bar. The fact that [plaintiff] disagrees with policies allegedly formulated or actions allegedly taken does not entitle him to demand the blunt deterrent of money damages under *Bivens* to promote a different outcome."). Such debates about the propriety of the Air Force's protocols governing flag-folding at military ceremonies, and any litigation surrounding it, simply have no place in an individual-capacity lawsuit.

"[B]ecause *Bivens* has never been approved as a … vehicle for challenging government policies," *Arar v. Ashcroft*, 585 F.3d 559, 579 (2d Cir. 2009) (en banc), courts should not permit plaintiffs to resort to individual-capacity damages claims to leverage policy change. As the Supreme Court has explained, if a plaintiff seeks to challenge policy, the proper means for doing so is to seek injunctive relief. *Abbasi*, 137 S. Ct. at 1862; *Malesko,* 534 U.S. at 74 (explaining that "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."). Plaintiffs already are pursuing injunctive relief in this case. This

court should not countenance plaintiffs' attempt to utilize *Bivens* claims for a policy challenge here.

        d.  <u>Practical Concerns Weigh Against Implying a *Bivens* Remedy in This Context</u>.

Finally, adjudication of this case is rife with practical concerns, which is yet another factor warranting hesitation in implying a damages remedy. *See Abbasi*, 137 S. Ct. at 1856 (listing concerns). Even before *Abbasi*, courts refrained from creating a *Bivens* remedy when a case presented claims replete with "administrability concerns." *See Meshal*, 804 F.3d at 427 (detailing practical factors counseling hesitation); *Lebron*, 670 F.3d at 552-53 (cataloging a series of administrability problems that caused the court hesitation in implying a remedy and recognizing that this special factor "overlaps to some extent with the dangers of intrusion into the constitutional responsibilities of others").

Such concerns are especially present in the military context. *E.g., Klay*, 758 F.3d at 375 (describing the types of military matters that plaintiffs' suit would improperly require a civilian court to adjudicate); *Doe*, 870 F.3d at 46 (observing that adjudicating the *Bivens* claims would require a civilian court to inquire about basic choices concerning military discipline, supervision and control); *Cioca*, 720 F. 3d at 514 (noting that Supreme Court precedents "mandate that courts not permit a *Bivens* action that challenges military decisionmaking"); *Huckaby*, 2018 WL 2002790, at *9 (refusing to authorize a *Bivens* remedy, explaining that the fact that the incident took place on a military base and defendants are military personnel "is not lost of this Court, and the significance of that cannot be overlooked"). Here, as described above, in order to evaluate plaintiffs' claims, the court would have to wade into questions about the underlying rationale for rules for on-base conduct, military protocols for ceremonies, Travis AFB's command structure and authority, discipline of airmen, rules governing members of the retired reserve community,

34

and command decision-making. These issues simply cannot be divorced from adjudication of plaintiffs' claims. Essentially, plaintiffs ask this court to re-weigh the equities and command Air Force personnel to exercise discretion in a highly particularized way – all in the context of a *personal* damages suit. These concerns further weigh against authorizing a damages remedy in this context.

In the end, Congress has been entrusted with the "substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Abbasi*, 137 S. Ct. at 1856. Congress "can tailor any remedy to the problem perceived" and is "in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public's behalf." *Wilkie*, 551 U.S. at 562 (citation and internal quotation marks omitted). The Supreme Court instructs that when a case involves "a host of considerations that must be weighed and appraised, [devising a remedy] should be committed to those who write the laws, rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857 (internal quotation marks and citation omitted); *Storms v. Shinseki*, 319 F. Supp. 3d 348, 355 (D.D.C. 2018) ("Ultimately, in the complex, fraught arena of free speech, Congress is better suited than the Judiciary to determine whether a damages action should arise."). Multiple factors provide ample justification for concluding that the decision to impose a damages remedy in the military context rests with Congress and the Executive, not the courts. And, when special factors demonstrate that the court should refrain from crafting a *Bivens* remedy, the individual-capacity constitutional claims should be dismissed outright. *Abbasi*, 137 S. Ct. at 1863. Accordingly, all of plaintiffs' *Bivens* claims should be dismissed.

V.      **Qualified Immunity Bars Plaintiffs' Individual-Capacity Claims.**

Given the threshold barriers to suit and the many special factors implicated here, this court may and should abstain from resolving the constitutional claims based on mere allegations, and instead dismiss the individual-capacity claims on jurisdictional or special factors grounds. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011) (internal quotation marks omitted) (describing Court's longstanding principle of judicial restraint which requires "that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *cf. Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (remanding for assessment of whether special factors preclude inferring a remedy and noting that it "would be imprudent" for the Court to resolve a Fourth Amendment claim when "doing so may be unnecessary to resolve" the case in light of special factors). The principle of constitutional avoidance similarly suggests that even if this court chooses to address the constitutional claims, it "can enter judgment without ever ruling" on plaintiffs' claim "that a particular right exists" or whether the facts alleged show a violation of a constitutional right—as long as prior case law has not "clearly settled" the right. *Camreta*, 563 U.S. at 705-06; *accord Pearson v. Callahan*, 555 U.S. 223, 232, 237-241 (2009) (describing instances in which it is preferable simply to assess whether the right was clearly established rather than determine whether the facts "make out a violation of a constitutional right," especially when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right"). As described below, because plaintiffs have not alleged that any of the individual defendants violated a right so clearly established that no reasonable airman could have believed his actions were proper under the circumstances, plaintiffs cannot overcome the individuals' entitlement to qualified immunity. Consequently, all of the *Bivens* claims should be dismissed.

**A.  The Framework for the Qualified Immunity Defense.**

The doctrine of qualified immunity ensures that only conduct that unquestionably violates the Constitution will subject officials to personal liability. *Harlow v. Fitzgerald,* 457 U.S. 800, 814-19 (1982). Qualified immunity shields public officials from the necessity of defending against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known. *See id.* at 818. Thus, the doctrine provides "ample room for mistaken judgments." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (citation omitted). Indeed, this "demanding standard" protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity shields federal officials from money damages unless a plaintiff "pleads facts showing:" (1) that the official violated a constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A court has wide direction to decide which of the two prongs of the analysis to address first. *Id.*; *Bame v. Dillard*, 637 F.3d 380, 384 (D.C. Cir. 2011). In order to overcome the first prong of qualified immunity, a plaintiff must allege specific acts by which a defendant personally violated a plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676. In order to survive a motion to dismiss in a *Bivens* case, therefore, a plaintiff "must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Id.* (emphasis added).

To overcome the second prong of qualified immunity, a plaintiff must show that the right allegedly violated by a particular defendant was clearly established at the time of the conduct. "The contours of a right [must be] sufficiently clear that every reasonable official would have

understood that what he [was] doing violate[d] that right." *al-Kidd*, 563 U.S. at 741 (internal

quotation marks omitted). In other words, qualified immunity applies unless existing precedent

shows that the unlawfulness of a defendant's conduct is "beyond debate." *Id.* To determine

clearly established law, a court looks to cases from the Supreme Court, the D.C. Circuit, and

courts "exhibiting a consensus view" if there is one. *Bame*, 637 F.3d at 384 (citation and

quotation marks omitted). It is plaintiffs' burden "to show that the particular right in question—

narrowly described to fit the factual pattern confronting the officers—" was clearly established.

*Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (citation omitted).

### B. Plaintiffs Fail to Allege a Violation of Any Clearly Established First Amendment Right (Counts Six and Seven).

Plaintiffs fail to plead facts showing that any of the individual defendants violated their

clearly established First Amendment rights. The Free Speech Clause "restricts government

regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah

v. Summum*, 555 U.S. 460, 467 (2009). A government entity is "entitled to say what it wishes."

*Id*. (internal quotation marks omitted). Here, the speech at issue was uttered on a military base,

during a military ceremony, accompanying uniformed airmen as they folded the United States

flag. Even if the speech is not considered the government's own, "the fundamental right to speak

secured by the First Amendment does not leave people at liberty to publicize their views

whenever and however and wherever they please." *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014)

(internal quotation marks omitted). As for Roberson's claims, it is well established that the

government has greater latitude to regulate speech when it does so as an employer, *see Garcetti

v. Ceballos*, 547 U.S. 410, 418-19 (2006), particularly in the context of the military, *Brown v.

Glines*, 444 U.S. 348, 354-55 (1980). As the Supreme Court observed, the military's "law is that

of obedience" and therefore "[s]peech that is protected in the civil population may nonetheless

undermine the effectiveness of response to command." *Parker v. Levy*, 417 U.S. 733, 744, 759 (1974) (internal quotation marks and citations omitted). As for both plaintiffs' claims, the government's interest in regulating speech on its bases is especially compelling in the context of the military—where the need for discipline and obedience is greater than in civilian life. *Brown,* 444 U.S. at 354-55; *Parker*, 417 U.S. at 758*.* Thus, military installations have generally not been regarded or designated as a place open to public speech activities. *See United States v. Albertini,* 472 U.S. 675, 686 (1985) ("Military bases generally are not public fora...."); *Greer v. Spock,* 424 U.S. 828, 838 (1976) ("The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is ... historically and constitutionally false."). To the contrary, the Supreme Court observed that it is "the business of a military installation … to train soldiers, not to provide a public forum," *Greer*, 424 U.S. at 838. In a nonpublic forum, the government may reserve the forum for its intended purposes, communicative or otherwise, "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Oberwetter v. Hilliard*, 639 F.3d 545, 551 (D.C. Cir. 2011) (citation and internal quotation marks omitted).

Plaintiffs seek to hold the five individual defendants liable for violating their First Amendment rights under the Free Speech and Free Exercise Clauses. But there are no factual allegations in the Complaint to suggest that any religious content or specific viewpoint of Rodriguez's flag-folding speech was the basis for any of the individual defendants' actions. First, the only mention in the entire Complaint of a specific comment about the content of Rodriguez's speech is attributed to Master Sergeant Jon Saunders, who is not one of the defendants in this matter. ECF No. 1 ¶ 23. Otherwise, in a conclusory manner, plaintiffs contend only that

Rodriguez "learned" that certain officials, including Colonel Sovitsky "disapproved of the speech's religious overtones." *Id.* ¶ 31. No statements or actions are attributed to Sovitsky nor do plaintiffs even identify how Rodriguez came to that understanding. Bare assertions of discriminatory animus or motive are not enough to state a plausible claim in a *Bivens* matter. *Iqbal*, 556 U.S. at 676-77, 683. As for the other four individuals, plaintiffs plead no facts whatsoever that would show or even support a reasonable inference that they acted in any way based on Rodriguez's religion or viewpoint. The allegations in the Complaint simply indicate that Bruno relayed the order to Roberson. Hall is not mentioned anywhere in the Complaint other than in the moment immediately after Rodriguez stood to face the audience. Similarly, Thorpe and Cordes are first mentioned in the Complaint only after Rodriguez is non-responsive to Hall's entreaties. Plaintiffs' attribution of some sort of action by the individuals based on religion or the viewpoint of Rodriguez's speech, collectively and without individual distinction, is unquestionably inadequate in this personal capacity suit.

Given courts' recognition of the unique setting of the military, the military's written protocol governing flag-folding at its retirement ceremonies, AFI 34-1201, and the dearth of specific case law addressing the situation that these airmen confronted, a reasonable airman would not think it was clearly unconstitutional to regulate speech that accompanies uniformed Air Force personnel folding the United States flag at an Air Force retirement ceremony held at Travis AFB or to forbid Rodriguez from giving his own flag folding speech under those circumstances at Roberson's retirement ceremony.

### C. Rodriguez Fails to Allege a Violation of Any Clearly Established Fourth Amendment Right (Count Eight).

Rodriguez fails to plead facts showing that, by removing him from the Travis AFB auditorium, any of the individual defendants violated a clearly established Fourth Amendment

right. The "ultimate touchstone of the Fourth Amendment is reasonableness," *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (citation and internal quotation marks omitted), and whether a seizure is reasonable under the Fourth Amendment "depends upon the facts and circumstances of each case." *United States v. Proctor,* 489 F.3d 1348, 1352 (D.C. Cir. 2007) (citation and quotation marks omitted). The allegations in the Complaint confirm that Roberson was informed that Rodriguez could not be a part of the flag-folding at his retirement ceremony. ECF No. 1 ¶¶ 40, 42, 44, 45. Sovitsky, the squadron commander, specifically approached Roberson prior to the ceremony to make sure Rodriguez knew that he "was not allowed to perform the flag-folding speech at Roberson's retirement ceremony." *Id.* ¶ 45. Roberson confirmed that Rodriguez was aware. During Roberson's retirement ceremony, Rodriguez stood up and positioned himself next to the two airmen holding the flag and faced the audience. *Id.* ¶ 54. Nowhere in the Complaint is it alleged or can a reasonable inference be drawn that Rodriguez was ever approved to participate in Roberson's retirement ceremony, other than to attend as a guest. And, no facts have been pleaded that any of the individual defendants would have had information that Rodriguez would be participating in the retirement ceremony, until he stood up and faced the audience. When he did so, Hall asked Rodriguez to sit down. Rodriguez said nothing and refused to do so. Cordes and Bruno then joined Hall in removing Rodriguez from the auditorium. *Id.* ¶ 55.[11] Rodriguez's actions and inactions, at a minimum, were

---

[11] In order to survive a motion to dismiss in a *Bivens* case, a plaintiff "must plead that *each* Government-official defendant, through the official's own individual actions, has violated the Constitution" because a government official is only personally liable for "his or her own misconduct." *Iqbal,* 556 U.S. at 677. Plaintiffs have failed to allege Sovitsky's personal involvement in a seizure. The Complaint makes clear that Sovitsky stood up from his chair, but then sat back down. Plaintiffs do not allege that Sovitsky said anything to Rodriguez or to any of the other defendants, gestured in any way towards them, or participated in Rodriguez's removal. Rodriguez nonetheless asserts an unlawful seizure claim against him speculating that the other defendants "would not have forcibly removed Rodriguez without Sovitsky's approval." ECF No.

reasonably viewed as a disruption and a violation of the commanding officer's order. Indeed, his refusal to give a verbal response would have caused any reasonable airman to be concerned that a serious disruption was about to occur. Under the totality of the circumstances, a reasonable airman could have believed that it was appropriate to swiftly quell the on-base disruption. Even if the four airmen made a mistaken judgment about Rodriguez's intentions or potential actions, qualified immunity jurisprudence provides ample room for it. *See Wesby*, 138 S. Ct. at 591. Indeed, given the novel circumstances confronting the airmen, it would not be clear to every reasonable airman that the conduct would amount to a constitutional violation.

### D.  Rodriguez Fails to Allege a Violation of Any Clearly Established Fifth Amendment Right (Count Nine).

The individual defendants are entitled to qualified immunity for Rodriguez's Fifth Amendment claim because Rodriguez has failed to allege the violation of a due process right, let alone a clearly established one. Rodriguez asserts a due process claim based on defendants' actions to "ban" him from speaking at the ceremony and his forcible removal, contending that he was a guest "properly in attendance." ECF No. 1 ¶ 137. While Rodriguez repeatedly recites the text of the Due Process Clause, it is unclear whether he purports to assert a procedural or substantive due process claim. To the extent Rodriguez seeks to bring a procedural due process claim, he cannot overcome the qualified immunity bar. To state such a claim, Rodriguez must show an official has deprived him of a liberty or property interest without providing appropriate procedural protections. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). Liberty interests may be found in the Constitution or arise from an interest created by state laws

---

1 ¶ 57. Such a conclusory assertion is not entitled to any presumption of truth. *Iqbal*, 556 U.S. at 678-79. And, "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Abbasi,* 137 S. Ct. at 1860; *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

or policies. *Id.* "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995). In addition to identifying an interest to which a plaintiff has a legitimate claim of entitlement, a complaint must suggest what sort of process is due. *Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) (explaining that the "fundamental flaw" in plaintiff's procedural due process claim was the complaint's failure to so specify). Rodriguez's procedural due process claim, if indeed that is his claim, is deficient because he has not shown that any one of the individual defendants has deprived him of a clearly established property or liberty interest protected by the Fifth Amendment. Nor does Rodriguez articulate what process from the individuals he, simply as a guest attendee, was due. Rodriguez vaguely asserts that all five defendants should have "under[taken] formal procedures concerning the conflict surrounding Rodriguez's unique flag-folding speech." ECF No. 1 ¶ 138. Given that Rodriguez's speech did not comply with AFI 34-1201, it is unclear what formal procedures could have been due under clearly established law. Because Rodriguez bears the burden, *Dukore*, 799 F.3d at 1145, he must offer case law that not only decides the constitutional issue but puts it "beyond debate." *al-Kidd*, 563 U.S. at 741. This he cannot do.

To the extent Rodriguez seeks to assert a claim under substantive due process, this claim essentially rehashes his First and Fourth Amendment claims. Because his substantive due process claim is based on the very same conduct as those claims, this court should analyze this claim under the contours of the First and Fourth Amendments, rather than generalized notions of substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998) (explaining that a substantive due process claim is inappropriate when the claim is covered by

the Fourth Amendment); *Albright v. Oliver*, 510 U.S. 266, 273-75 (1994) (rejecting due process

claim because it is properly considered under the Fourth Amendment, the more specific

constitutional right implicated by plaintiff's allegations); *Abdelfattah v. U.S.D.H.S.*, 787 F.3d

524, 541 (D.C. Cir. 2015) (explaining that plaintiff's claim of an illegal seizure was cognizable

under the Fourth Amendment and therefore "cannot proceed under the doctrine of substantive

due process"); *Elkins*, 690 F.3d at 562 (Fourth Amendment); *Kiser v. Kamdar*, 831 F.3d 784,

791 (6th Cir. 2016) (First Amendment); *Hufford v. McEnaney,* 249 F.3d 1142, 1151 (9th Cir.

2001) (First Amendment). Rodriguez's separate Fifth Amendment claim therefore should be

dismissed. Even if the court were to analyze Count Nine under the rubric of substantive due

process, plaintiffs still have failed to allege that any of the individual defendants violated a

clearly established right. The Complaint is devoid of any factual allegations identifying conduct

by any of the individual defendants that is "so egregious, so outrageous, that it may fairly be said

to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Nor is the undersigned

aware of decisional authority that would establish that the conduct they are alleged to have

undertaken clearly violated a substantive due process right. For all of these reasons, the

individual defendants are entitled to qualified immunity on Count Nine.

***

Because plaintiffs cannot meet their burden of alleging any clearly established

constitutional violation, the individual defendants are all entitled to qualified immunity.

**<u>CONCLUSION</u>**

For the reasons stated above, all individual-capacity claims asserted against Defendants

Michael Sovitsky, Joe Bruno, Antonio Cordes, Al Hall, and Dennis Thorpe should be dismissed

with prejudice pursuant to Federal Rule of Civil Procedure 12.

44

Dated: September 28, 2018                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General
                                            Civil Division

                                            C. SALVATORE D'ALESSIO, JR.
                                            Acting Director, Torts Branch

                                            ANDREA W. MCCARTHY
                                            Senior Trial Counsel, Torts Branch

                                            */s/ Sarah E. Whitman*
                                            SARAH E. WHITMAN
                                            MA Bar 657726, under LCvR 83.2(e)
                                            Trial Attorney, Torts Branch, Civil Division
                                            United States Department of Justice
                                            175 N Street, NE
                                            Washington, DC 20002
                                            Telephone: (202) 616-0089
                                            Fax: (202) 616-4314
                                            Email: Sarah.Whitman@usdoj.gov

                                            *Counsel for Defendants Michael Sovitsky, Joe
                                            Bruno, Antonio Cordes, Al Hall and Dennis Thorpe,
                                            as sued in their individual capacities*