# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OSCAR RODRIGUEZ, JR. and CHARLES ROBERSON**, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 18-744 |
| **UNITED STATES DEPARTMENT OF THE AIR FORCE**, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

H. Christopher Bartolomucci
  (D.C. Bar No. 453423)
Lauren N. Beebe
  (D.C. Bar No. 1047288)
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
cbartolomucci@kirkland.com
lauren.beebe@kirkland.com

Michael D. Berry
  (*admitted pro hac vice*)
Kenneth A. Klukowski
  (D.C. Bar No. 1046093)
First Liberty Institute
2001 West Plano Parkway, Suite 1600
Plano, TX 75075
(972) 941-4444
mberry@firstliberty.org
kklukowski@firstliberty.org

*Counsel for Plaintiffs Oscar Rodriguez, Jr. and Charles Roberson*

November 19, 2018

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STANDARD OF REVIEW ...................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.     The Court Should Deny The Air Force's Motion To Dismiss ........................................... 2

    A.     Roberson Has Standing to Obtain Declaratory Relief ............................................ 3

    B.     Plaintiffs State Plausible Claims Against the Air Force Under the Administrative Procedure Act (Counts One, Two, Three, and Four)..................... 4

    C.     Plaintiffs State a Plausible Claim Against the Air Force Under the Religious Freedom and Restoration Act (Count Five)........................................... 6

    D.     The Court Should Retain Jurisdiction Over Plaintiffs' Properly Venued Claims Against the USAF and the Individual Defendants in Their Official Capacities ................................................................................................ 9

II.     The Court Should Deny The Individual Defendants' Motion To Dismiss....................... 10

    A.     This Court Has Pendent Personal Jurisdiction Over All Individual Defendants and Venue for All Claims Is Proper in the District of Columbia............................................................................................................. 13

    B.     Plaintiffs State Plausible Individual-Capacity Claims Against the Individual Defendants Under the Free Speech and Free Exercise Clauses of the First Amendment (Counts Six and Seven) ................................... 16

    C.     Rodriguez States Plausible Individual-Capacity Claims Against the Individual Defendants under the Fourth Amendment (Count Eight)................... 23

    D.     Rodriguez States Plausible Individual-Capacity Claims Against the Individual Defendants under the Due Process Clause of the Fifth Amendment (Count Nine)........................................................................................ 26

REQUEST FOR ORAL HEARING ......................................................................................... 27

CONCLUSION ....................................................................................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Century Prods. Co.*,
943 F. Supp. 137 (D.N.H. 1996) ............................................. 14

*Atherton v. D.C. Office of Mayor*,
567 F.3d 672 (D.C. Cir. 2009) ............................................. 27

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarollos Aerohotelco, C.A.*,
168 F. Supp. 3d 1 (D.D.C. 2016) ............................................. 13, 14

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) ............................................. 3

*Beattie v. United States*,
756 F.2d 91 (D.C. Cir. 1984) ............................................. 15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................. 1

*Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ............................................. 18, 19

*Bolling v. Sharpe*,
347 U.S. 497 (1954) ............................................. 26

*Bradley v. Vox Media, Inc.*,
320 F. Supp. 3d 178 (D.D.C. 2018) ............................................. 1

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ............................................. 12

*Cal. Cattleman's Ass'n v. U.S. Fish & Wildlife Serv.*,
315 F. Supp. 3d 282 (D.D.C. 2018) ............................................. 2

*Chappell v. Wallace*,
462 U.S. 296 (1983) ............................................. 23

*City of Ontario, Cal. v. Quon*,
560 U.S. 746 (2010) ............................................. 25

*Cohen v. U.S. Dep't of the Air Force*,
707 F. Supp. 12 (D.D.C. 1989) ............................................. 9

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................. 2

*Corrigan v. District of Columbia*,
    841 F.3d 1022 (D.C. Cir. 2016)..................................................................... 12

*Daugherty v. Sheer*,
    248 F. Supp. 3d 272 (D.D.C. 2017) ............................................................. 27

*Davis v. Passman*,
     442 U.S. 228 (1979)..................................................................................... 26

*De La Paz v. Coy*,
    786 F.3d 367 (5th Cir. 2015) ....................................................................... 18

*Dellums v. Powell*,
    566 F.2d 167 (D.C. Cir. 1977).............................................................. 16, 17

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996)..................................................................... 10

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
    983 F. Supp. 2d 22 (D.D.C. 2013) ............................................................... 13

*Hartley v. Wilfert*,
    918 F. Supp. 2d 45 (D.D.C. 2013) ............................................................... 16

*Henderson v. Kennedy*,
    253 F.3d 12 (D.C. Cir. 2001)......................................................................... 8

*Holt v. Hobbs*,
    135 S. Ct. 853 (2015)................................................................................. 8, 9

*Hope v. Pelzer*,
    536 U.S. 730 (2002)..................................................................................... 12

*Hunter v. Bryant*,
    502 U.S. 224 (1991)..................................................................................... 21

*Mahoney v. Doe*,
    642 F.3d 1112 (D.C. Cir. 2011)..................................................................... 8

*Mahoney v. U.S. Marshals Serv.*,
     454 F. Supp. 2d 21 (D.D.C. 2006) ............................................................... 8

*Maryland v. King*,
    569 U.S. 435 (2013)..................................................................................... 25

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..................................................................................... 27

*Minn. Voters All. v. Mansky*,
    138 S. Ct. 1876 (2018) ............................................................................ 22

*Moore v. District of Columbia*,
    79 F. Supp. 3d 121 (D.D.C. 2015) ......................................................... 25

*Nat'l Cmty. Reinvestment Coalition v. Accredited Home Lenders Holding Co.*,
    573 F. Supp. 2d 70 (D.D.C. 2008) ........................................................... 1

*Oberwetter v. Hilliard*,
    639 F.3d 545 (D.C. Cir. 2011) ............................................................... 22

*Oetiker v. Jurid Werke GmbH*,
    556 F.2d 1 (D.C. Cir. 1997) ................................................................... 13

*Patterson v. United States*,
    999 F. Supp. 2d 300 (D.D.C. 2013) ................................................. 16, 17

*Pleasant Grove City, Utah v. Summum*,
    555 U.S. 460  (2009) .......................................................................... 21, 22

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,
    772 F.3d 229 (D.C. Cir. 2014) ................................................................. 7

*Reichle v. Howards*,
    566 U.S. 658 (2012) ............................................................................... 17

*Rudder v. Williams*,
    666 F.3d 790 (D.C. Cir. 2012) ............................................................... 10

*Sause v. Bauer*,
    138 S. Ct. 2561 (2018) ................................................................ 12, 21, 25

*Singh v. Carter*,
    168 F. Supp. 3d 216 (D.D.C. 2016) ......................................................... 7

*Sisso v. Islamic Republic of Iran*,
    448 F. Supp. 2d 76 (D.D.C. 2006) ......................................................... 13

*Storms v. Shinseki*,
    319 F. Supp. 3d 348 (D.D.C. 2018) ....................................................... 17

*Swedish Am. Hosp. v. Sebelius*,
    691 F. Supp. 2d 80 (D.D.C. 2010) ........................................................... 2

*United States ex rel. Shea v. Cellco P'ship*,
    863 F.3d 923 (D.C. Cir. 2017) ............................................................... 10

*United States v. Botefuhr,*
   309 F.3d 1263 (10th Cir. 2002) ................................................................ 13

*United States v. Jones,*
   584 F.3d 1083 (D.C. Cir. 2009) ................................................................ 25

*United States v. Stanley,*
   483 U.S. 669 (1987) ................................................................................ 23

*Vance v. Rumsfeld,*
   701 F.3d 193 (7th Cir. 2012) ................................................................... 19

*Vasquez v. Whole Foods Mkt., Inc.,*
   302 F. Supp. 3d 36 (D.D.C. 2018) ........................................................... 13

*Vetcher v. Sessions,*
   316 F. Supp. 3d 70 (D.D.C. 2018) ........................................................... 19

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ............................................................... 17, 18, 26

**Statutes**

5 U.S.C. §500 *et seq.* .............................................................................. 2

5 U.S.C. §551 .......................................................................................... 4

10 U.S.C. §2733 ...................................................................................... 19

42 U.S.C. §2000bb *et seq.* ..................................................................... 2, 3

42 U.S.C. §2000cc *et seq.* ...................................................................... 8, 9

**Rule and Regulation**

32 C.F.R. §536 ........................................................................................ 19

Federal Rule of Civil Procedure 12 ........................................................... 1

**Other Authorities**

4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure*
   (3d ed. 2002) ........................................................................................ 13

Charles Alan Wright, *The Law of Federal Courts* (4th ed. 1983) ..................... 15

Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction,*
   62 Ohio St. L. J. 1619 (2001) ................................................................ 14

# INTRODUCTION

Plaintiffs, retired Air Force Senior Master Sergeant Oscar Rodriguez, Jr. and retired Air Force Master Sergeant Charles Roberson, filed the underlying complaint for declaratory relief, permanent injunctive relief, and damages against Defendants the United States Department of the Air Force ("the Air Force" or "USAF") and Colonel Michael Sovitsky, Senior Master Sergeant Joe Bruno, Chief Master Sergeant Antonio Cordes, Technical Sergeant Al Hall, and Chief Master Sergeant Dennis Thorpe (collectively, "the individual Defendants") based on the Defendants' violation of Plaintiffs' statutory and constitutional rights.  Plaintiffs respectfully request that the Court deny the Defendants' motions to dismiss in full and permit the case to proceed so that Plaintiffs may prove their claims and vindicate their rights.

# STANDARD OF REVIEW

The Defendants' motions to dismiss rely primarily on Federal Rule of Civil Procedure 12(b)(6).  In evaluating a 12(b)(6) motion to dismiss for failure to state a claim, "the Court should construe the complaint 'liberally in the plaintiff's favor,' 'accepting as true all of the factual allegations' alleged in the complaint."  *Nat'l Cmty. Reinvestment Coalition v. Accredited Home Lenders Holding Co.*, 573 F. Supp. 2d 70, 73 (D.D.C. 2008) (citations omitted).  Plaintiffs are "entitled to 'the benefit of all inferences that can be derived from the facts alleged,'" and a complaint that "adequately states a claim, … may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)).  Instead, a complaint need only "give a defendant fair notice of what the … claim is and the grounds upon which it rests."  *Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178, 181-82 (D.D.C. 2018) (quoting *Twombly*, 550 U.S. at 555) (alteration in original).  This "simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80 (D.D.C. 2010) (quoting *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)).

As to motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a plaintiff "bears the burden of establishing subject-matter jurisdiction," but the Court must still "accept all of the factual allegations in [the] complaint as true" and "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *See Cal. Cattleman's Ass'n v. U.S. Fish & Wildlife Serv.*, 315 F. Supp. 3d 282, 285 (D.D.C. 2018) (citations omitted) (alterations in original).

# ARGUMENT

## I.     The Court Should Deny The Air Force's Motion To Dismiss.

Plaintiffs' complaint asserts claims against the USAF and the individual Defendants in their official capacities for numerous violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §500 *et seq.*, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb *et seq.* For the reasons set forth below, and in light of the allegations set forth in the complaint and reasonable inferences drawn therefrom, the Court should deny the Air Force's motion to dismiss and permit Plaintiffs' claims to proceed.[1]

---

[1] To the extent that the Air Force attempts to use a heavily redacted USAF Inspector General's Report of Inquiry dated July 2016 as evidence against Plaintiffs' claims on the merits (attached to the Air Force's motion to dismiss as "Exhibit 1"), *see, e.g.*, USAF Mot. to Dismiss at 5-6, Plaintiffs respectfully request that the Court decline to consider the Report at this stage in the proceedings. If the Court wishes to consider the Report, Plaintiffs urge the Court to instruct the Air Force to produce a complete and unredacted version that may be considered in full and that the Court give Plaintiffs an opportunity to review and respond to the full document.  Insofar as USAF may cite confidentiality concerns with production of an unredacted version, such concerns may be obviated by a protective order.

**A.       Roberson Has Standing to Obtain Declaratory Relief.**

The Air Force does not dispute that Roberson suffered an actual "injury in fact."  *See* Mot. to Dismiss at 9.  Instead, the Air Force contends only that Roberson's "past harms are insufficient," and that he is unlikely to be harmed again because "[t]he harm alleged by Roberson occurred at a single incident during a one-time event: his retirement from the Air Force."  *Id.* at 9-10.  While it is true that Roberson is not going to retire from the Air Force again and does not intend to "have another … retirement ceremony" at which Defendants could once again violate his constitutional rights and humiliate him in front of his friends and family, *id.* at 10, USAF is wrong to suggest that he thus lacks standing to pursue declaratory relief.

Roberson is likely to attend future events—including future retirement ceremonies in honor of his friends and fellow servicemen—at which Rodriguez intends to perform his distinctive flag-folding speech.  *See* Compl. ¶¶34-36 (alleging that Roberson has attended numerous retirement ceremonies and saw Rodriguez perform his flag-folding speech).  The First Amendment plainly protects not only the right to engage in protected speech (*e.g.*, Rodriguez's right to perform his flag-folding speech in his individual capacity) but also the corresponding right to receive or listen to protected speech (*e.g.*, Roberson's right to receive or listen to Rodriguez's flag-folding speech).  *See, e.g.*, *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) ("'[T]he right to receive information and ideas' … is an inherent corollary of the rights to free speech and press that are explicitly guaranteed by the Constitution.").  Likewise, the First Amendment's Free Exercise Clause protects a broadly construed right to free religious exercise, which RFRA makes clear that federal governmental entities may not substantially burden unless application of that burden is the least restrictive means of furthering a compelling governmental interest.  *See* 42 U.S.C. §2000bb-1(a), (b).  Roberson's First Amendment rights thus continue to be threatened in the same way as Rodriguez's rights continue to be threatened.  Because the Air

Force does not challenge Rodriguez's standing to pursue declaratory and injunctive relief, its arguments challenging Roberson's standing to pursue declaratory relief must fail.

### B.   Plaintiffs State Plausible Claims Against the Air Force Under the Administrative Procedure Act (Counts One, Two, Three, and Four).

The Air Force's motion to dismiss contends that, "[w]ith respect to the APA claims, Plaintiffs fail to meet the fundamental requirement that they identify an 'agency action' that is the subject of their claims." USAF Mot. to Dismiss at 1-2. The Air Force acknowledges, as it must, that the APA broadly defines "agency action" to include the whole or a part of any "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," 5 U.S.C. §551(13)—*i.e.*, an "expansive" list "meant to cover comprehensively every manner in which an agency may exercise its power." *See* USAF Mot. to Dismiss. at 11 (citations omitted). An agency "sanction," for example, includes any "prohibition, requirement, limitation, or other condition affecting the freedom of a person," a "seizure," or any "other compulsory or restrictive action." 5 U.S.C. §551(10). Nonetheless, the Air Force contends that Plaintiffs' APA claims should be dismissed for failure to state a claim under Rule 12(b)(6) because "[t]heir APA causes of action simply refer to unspecified 'official and unofficial policies surrounding Roberson's retirement ceremony,'" USAF Mot. to Dismiss at 11 (quoting Compl. ¶¶76, 79, 82, 85), without explaining in detail "what those policies are, where they are documented, what specifically they require, or precisely what about them is contrary to Plaintiffs' constitutional rights." *Id.* This attempts to demand more of Plaintiffs than required under the liberal contours of notice pleading.

Plaintiffs' complaint refers to "USAF official and unofficial policies surrounding Roberson's retirement ceremony and as perpetrated through USAF officials *as set forth herein*" (*i.e.*, in the complaint). *See* Compl. ¶¶76, 79, 82, 85 (emphasis added). Given the entirety of Plaintiffs' complaint, it is disingenuous for USAF to contend that "Plaintiffs' complaint leaves the

Air Force in the dark as to what 'agency action' is being challenged." USAF Mot. to Dismiss at 11. While Plaintiffs lack the precise knowledge as to the specific USAF official or unofficial policies that may have triggered Defendants' misconduct (precisely because of the early stage of these proceedings and lack of discovery that may reveal additional details), Plaintiffs' complaint surely provides adequate notice that Plaintiffs challenge USAF agency action relating to the specific events surrounding Roberson's retirements ceremony. For example, the Air Force must know that Plaintiffs challenge Air Force agency action in purporting to ban Rodriguez from the building auditorium or from performing his distinctive flag-folding speech at Roberson's retirement ceremony, *see, e.g.*, Compl. ¶¶40-43, 89, 100, 102, 104, 114, 117, 137, forcibly preventing Rodriguez from performing his flag-folding speech at the ceremony, *see, e.g.*, Compl. ¶¶2, 51, 55-57, and instructing the squadron to destroy all evidence concerning the incident at Roberson's retirement ceremony, *see* Compl. ¶63. To the extent that the Air Force indicates in its motion to dismiss that USAF attempted to ban Rodriguez from participating in any flag-folding ceremonies "in any capacity," *see* USAF Mot. to Dismiss at 1; *id.* at 13 (referring to "the Air Force's instruction that Rodriguez not perform flag-folding ceremonies"), such agency action would also fall under the clearly identified scope of Plaintiffs' APA claims.

Plaintiffs disagree with the suggestion that "there is clearly nothing about the prior version of AFI 34-1201, *Protocol*, that violated Plaintiffs' constitutional rights." *Id.* at 12. To the contrary, and as set forth in the complaint, to the extent that the 2005 version of Air Force Instruction 34-1201's flag-folding protocol applied to restrict Plaintiffs' speech and free religious exercise in connection with the private, voluntary flag folding at Roberson's retirement ceremony, the protocol operated as an unconstitutional prior restraint, enabled unconstitutional content- and

viewpoint-based discrimination, and established an unconstitutional preference for the absence of any religious faith,  *See, e.g.*, Compl. ¶¶103-09, 114-22.

> **C.**   **Plaintiffs State a Plausible Claim Against the Air Force Under the Religious Freedom and Restoration Act (Count Five).**

As to Plaintiffs' RFRA claim, the Air Force acknowledges that the statute broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  USAF Mot. to Dismiss at 13 (citing 42 U.S.C. §§2000bb-2(4), 2000cc-5(7)).  Despite this broad definition, the Air Force's motion to dismiss contends that "Plaintiffs do not allege facts showing that the prohibition against Rodriguez participating in flag-folding ceremonies involving Air Force personnel, and particularly the flag-folding ceremony at Roberson's retirement, substantially burdens their ability to practice their respective religions." *Id.* at 2; *see also id.* at 13-15.  To the contrary, Plaintiffs' complaint illustrates that both Plaintiffs ascribe a deep, sincere religious connection to the American flag in general and the flag-folding ceremony in particular.  *See, e.g.*, Compl. ¶¶22, 34, 37, 43, 91, 118.  Rodriguez's distinctive flag-folding narrative provides, in part:

> This is what we live for.  This is what we will fight for, and if necessary to touch the hand of God in her defense, the charge that we accept as Soldiers, Sailors, Airmen, and Marines is a noble one for there is no heart stronger than that of a volunteer.  Let us pray that God will reflect with admiration the willingness of one nation in her attempt to rid the world of tyranny, oppression, and misery.  It is this one nation under God that we call, with honor, the United States of America.
>
> God Bless our flag.
>
> God bless our troops.
>
> God bless America.

Compl. ¶22.

This reflects a common religious connection that many military service members, including Plaintiffs, feel with the American flag and, in particular, the flag-folding ceremony.  A

similar religious connection is reflected in, for example, the 13-fold recitation commonly attributed to an anonymous chaplain at the United States Air Force Academy in Colorado Springs, which is replete with religious references.  *See* Compl. ¶14.  It is also consistent with the United States Department of Veterans Affairs' ("VA") 2007 clarification regarding VA policy for flag-folding recitations at a veteran's gravesite, which (1) confirmed that volunteer Honor Guards may read the 13-fold flag recitation or any comparable script, and (2) guarantees that volunteer Honor Guards will accept requests for recitations that reflect any or no religious traditions on an equal basis.  *See* Compl. ¶17.  The well-established religious connection likewise aligns with the Air Force's own belated acknowledgment that (1) Air Force personnel may use a religious flag-folding ceremony script for retirement ceremonies, (2) the script preference for a flag-folding ceremony is at the discretion of the individual being honored and represents the member's views, and (3) the Air Force places the highest value on the rights of its personnel in matters of religion and facilitates the free exercise of religion by its members.  *See* Compl. ¶18.  The obvious and deep religious meaning of the American flag and flag-folding ceremony as set forth in the complaint further comports with Master Sergeant Jon Saunders' initial warning to Rodriguez that the religious overtones and references to "God" in his distinctive flag-folding speech may get him in trouble, *see* Compl. ¶23, and USAF officials' suspicion that "religion" may "come[] out as the root cause of the situation that took place at the flag folding ceremony" during Roberson's retirement ceremony, *see* Compl. ¶64.

"Generally, '[a] substantial burden exists when government action puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs."'"  *Singh v. Carter*, 168 F. Supp. 3d 216, 228 (D.D.C. 2016) (quoting *Priests for Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229, 246 (D.C. Cir. 2014)) (alteration in original).  Under this standard, Plaintiffs'

complaint clearly alleges a substantial burden on their free religious exercise because it plainly alleges that the USAF and individual Defendants attempted to modify their behavior and, when their attempts failed, physically intervened to *forcibly* modify their behavior.  *See, e.g.*, Compl. ¶89 ("Through their separate and collective actions surrounding Roberson's retirement ceremony, including purporting to 'ban' Rodriguez from exercising his religion at the ceremony and then forcibly removing Rodriguez … when he began to speak during the ceremony, USAF and the individual Defendants violated Plaintiffs' rights under [RFRA]."); *see also* Compl. ¶¶90-96.

To the extent that the line of cases invoked by the Air Force suggests a more demanding standard, *see* USAF Mot. to Dismiss at 14-15 (citing *Henderson v. Kennedy*, 253 F.3d 12 (D.C. Cir. 2001); *Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011); *Mahoney v. U.S. Marshals Serv.*, 454 F. Supp. 2d 21 (D.D.C. 2006)), they are inconsistent with subsequent Supreme Court precedent clarifying that the substantial burden inquiry under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc *et seq.*, and RFRA "asks whether the government has substantially burdened religious exercise" and "*not* whether the … claimant is able to engage in other forms of religious exercise."  *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (emphasis added).  Indeed, the Supreme Court therein suggested that "the availability of alternative means of practicing religion is a relevant consideration" in cases involving First Amendment rights, but not in cases arising under RFRA or RLUIPA, which "provide[] greater protection" than the First Amendment alone.  *See id.*  And while the Air Force makes much of the fact that "Plaintiffs[] do not allege that there is any aspect of their religious exercise (whatever that may be) that *requires* them to perform it during flag-folding ceremonies," USAF Mot. to Dismiss at 15 (emphasis added), that again misses the mark and seeks to impose an extra-textual heightened standard: *Holt v. Hobbs* confirms that RFRA and RLUIPA "appl[y] to an exercise of religion

*regardless of whether it is 'compelled.'"*   135 S. Ct. at 862 (citing 42 U.S.C. §2000cc-5(7)(A))

(emphasis added).   It is thus enough that Plaintiffs wished to exercise their religion during

Roberson's private, voluntary retirement ceremony, including by virtue of Rodriguez's

performance of his distinctive flag-folding speech with religious overtones, multiple references to

"God," and invocation of prayer.

> **D.   The Court Should Retain Jurisdiction Over Plaintiffs' Properly Venued Claims Against the USAF and the Individual Defendants in Their Official Capacities.**

The Air Force appears to concede that the District of Columbia is the proper venue to

adjudicate Plaintiffs' claims against the Air Force and the individual Defendants in their official

capacities.   USAF Mot. to Dismiss at 15 ("Plaintiffs' claims against the Air Force (or official

capacity defendants) appear to be properly venued in this district under 28 U.S.C. § 1391(e)").   For

good reason: "the District of Columbia is a proper venue for suits against military defendants based

in the Pentagon."   *Cohen v. U.S. Dep't of the Air Force*, 707 F. Supp. 12, 13 (D.D.C. 1989) (citing

*Mundy v. Weinberger*, 554 F. Supp. 811 (D.D.C. 1982)).   The Air Force also properly recognizes

that "[i]t would disserve the interests of efficiently allocating judicial and party resources to litigate

the two sets of similar claims independently in two separate fora."   *See* USAF Mot. to Dismiss at

16; *see also id.* at 2 ("this Court should not unnecessarily expend resources by bifurcating the

case").   Despite recognizing both that many of Plaintiffs' claims are "properly venued" in the

District of Columbia, and despite recognizing the goals of judicial and party efficiency, the Air

Force seems to suggest that the Court should transfer the entire case to some other judicial district.

*See id.* at 15-16.   As explained below, however, the better course of action is for the Court to

recognize that venue is proper in the District of Columbia over all of Plaintiffs claims, which—as

USAF readily concedes—all "arise from the same operative facts," *id.* at 16.   *See infra* Part II.A.

* * *

While the Air Force perfunctorily suggests that the Court should dismiss all claims *with* prejudice, *see, e.g.*, USAF Mot. to Dismiss at 10, 16, "[d]ismissal with prejudice is the exception, not the rule." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  Under the "exacting standard" for dismissal with prejudice, *see id.*, "[a] court should dismiss with prejudice only if it determines the plaintiff 'could not possibly cure the deficiency' by alleging new or additional facts.'" *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).  The Air Force does not claim (and cannot reasonably contend) that it would be futile to allow Plaintiffs to amend or re-file, or that they could not possibly cure any deficiencies in their complaint by alleging new or additional facts. To the extent that the Court decides to grant any portion of the Air Force's motion to dismiss, Plaintiffs thus request that the Court dismiss any such claim(s) without prejudice.

## II.    The Court Should Deny The Individual Defendants' Motion To Dismiss.

The individual Defendants' motion to dismiss contends that Plaintiffs have no legal recourse against the individual Defendants because, "at bottom, what [Plaintiffs] challenge is the Air Force's 2005 flag-folding protocol."  Individual Defs.' Mot. to Dismiss at 33.  This characterization wholly ignores the fact that Plaintiffs' individual-capacity claims against the individual Defendants are based primarily on the undisputed fact (and clear video evidence) that the individual Defendants *seized and forcibly removed* Rodriguez—a civilian, Air Force veteran, and invited guest—from Roberson's retirement ceremony in order to prevent Rodriguez from delivering his flag-folding speech at Roberson's request.  *See* Compl. ¶¶48-60.  In so doing, and through their separate and collective actions, the individual Defendants thus: (1) deprived Plaintiffs of their rights to engage in and receive protected speech, in violation of the Free Speech Clause of the First Amendment (Count Six); (2) deprived Plaintiffs of their rights to free religious exercise, in violation of the Free Exercise Clause of the First Amendment (Count Seven); (3) deprived

Rodriguez of his right to be secure in his person and to be free from unreasonable seizures, in violation of the Fourth Amendment (Count Eight); and (4) deprived Rodriguez of his right to be free from deprivations of life, liberty, or property without due process of law, in violation of the Due Process Clause of the Fifth Amendment (Count Nine).  Whether the individual Defendants may have perpetrated these constitutional violations based on a misguided attempt to comply with the 2005 version of Air Force Instruction 34-1201's flag-folding protocol (which the Air Force has repeatedly emphasized is not its current policy, *see, e.g.*, USAF Mot. to Dismiss at 11-12), those arguments are more properly addressed as an affirmative defense and do not warrant dismissing Plaintiffs' claims at this stage.

The individual Defendants further urge the Court to dismiss all individual-capacity claims based on their repeated mischaracterizations of Roberson's retirement ceremony as a "military ceremony" and the individual Defendants' behavior as occurring "in the military context."  *See, e.g.*, Individual Defs.' Mot. to Dismiss at 27-30, 33-35, 38.  To the contrary, and as explained in Plaintiffs' complaint, "[r]etirement ceremonies are not mandatory Air Force events"—instead, a retirement ceremony is "held only if the retiree decides that he or she would like to have one," and is typically "a private function that is personalized to the retiree."  Compl. ¶12; *see also* Compl. ¶18 ("Since retirement ceremonies are personal in nature, the script preference for a flag folding ceremony is at the discretion of the individual being honored and represents the member's views, not those of the Air Force."); Compl. ¶61 (referring to "a private retirement ceremony"); Compl. ¶¶91, 105, 118-19, 139 (referring to a "private, voluntary flag-folding ceremony").  To be sure, the events surrounding Roberson's retirement ceremony are certainly intertwined with official Air Force policy and actions, which is why Plaintiffs also brought suit against the Air Force and the individual Defendants in their official capacities.  *See* Compl. ¶¶73-96 (Counts One, Two, Three,

11

Four, and Five).  But Plaintiffs' individual-capacity claims against the individual Defendants arise out of those individual Defendants' unconstitutional behavior at Roberson's retirement ceremony—*i.e.*, a private, voluntary function that was personalized to Roberson, not restricted to military personnel, and not a "military ceremony."

As to qualified immunity, the individual Defendants appear to argue that "the dearth of specific case law addressing the situation that [the individual Defendants] confronted" is a substantial part of the inquiry.  *See* Individual Defs.' Mot. to Dismiss at 40; *see also, e.g.*, *id.* at 42 ("Indeed, given the novel circumstances confronting the airmen, it would not be clear to every reasonable airman that the conduct would amount to a constitutional violation."); *id.* at 44 ("Nor is the undersigned aware of decisional authority that would establish that the conduct they are alleged to have undertaken clearly violated a substantive due process right.").  This is wrong.  Despite the individual Defendants' suggestion that a constitutional right is clearly established for purposes of determining qualified immunity only if there is "specific case law addressing the situation," *id.* at 40, well-established Supreme Court precedent makes clear that "[a]lthough earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also id.* ("The same is true of cases with 'materially similar' facts.").  In other words, "officers can still be on notice that their conduct violates established law even in novel factual circumstances."  *Id.*; *see also, e.g.*,  *Sause v. Bauer*, 138 S. Ct. 2561, 2562-63 (2018) (per curiam); *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) ("Of course, in an obvious case, … standards can 'clearly establish' the answer, even without a body of relevant case law.") (citations omitted); *Corrigan v. District of Columbia*, 841 F.3d 1022, 1037 (D.C. Cir. 2016).

Given these parameters, in light of the allegations set forth in the complaint and reasonable inferences drawn therefrom, and for the reasons set forth below, the Court should deny the individual Defendants' motion to dismiss and permit Plaintiffs' claims to proceed.

A. **This Court Has Pendent Personal Jurisdiction Over All Individual Defendants and Venue for All Claims Is Proper in the District of Columbia.**

"The D.C. Circuit has adopted the doctrine of 'pendent personal jurisdiction,' whereby a court may assert personal jurisdiction over a defendant 'with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.'" *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 31 (D.D.C. 2013) (quoting *Oetiker v. Jurid Werke GmbH*, 556 F.2d 1, 5 (D.C. Cir. 1997)) (citing *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 90-91 (D.D.C. 2006)); *see also, e.g.*, *Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, n. 2 (D.D.C. 2018)). This doctrine exists to "serve[] the interests of 'judicial economy, convenience and fairness to litigants' so that the facts need only be litigated once." *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 12 n. 6 (D.D.C. 2016) (quoting *Oetiker*, 556 F.2d at 4). As explained by the Tenth Circuit:

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operate fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.

*United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citing 4A Charles Alan Wright & Arthur A. Miller, *Federal Practice & Procedure* §1069.7 (3d ed. 2002); Linda Sandstrom Simard,

13

*Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L. J. 1619, 1622-27 (2001); *Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 145 (D.N.H. 1996)).

Plaintiffs' individual-capacity claims against the individual Defendants plainly arise out of the same nucleus of operative fact as Plaintiffs' other claims (including its official-capacity claims against the individual Defendants); indeed, all claims arise out of the same series of events surrounding Roberson's retirement ceremony. *See* Compl. ¶¶12-72; *see also* USAF Mot. to Dismiss at 15-16 ("The claims against the Air Force arise from the same operative facts as the claims against the individual defendants."). The exercise of pendent personal jurisdiction over Plaintiffs' individual-capacity claims against the individual Defendants also "serves the interests of 'judicial economy, convenience and fairness to litigants.'" *Bazarian Int'l Fin. Assocs.*, 168 F. Supp. 3d at 12 n.6. If the individual-capacity claims were dismissed for lack of personal jurisdiction over the individual Defendants, Plaintiffs would be forced to either (1) abandon their individual-capacity claims entirely, or (2) initiate another lawsuit in a different forum and litigate many of the same factual and legal issues (involving many of the same witnesses) in parallel proceedings. That inefficient result is untenable, *see* USAF Mot. to Dismiss at 2 ("this Court should not unnecessarily expend resources by bifurcating the case"); *id.* at 16 ("It would disserve the interests of efficiently allocating judicial and party resources to litigate the two sets of similar claims independently in two separate fora."), and is precisely why the doctrine of pendent personal jurisdiction exists.

For similar reasons, the District of Columbia is also the proper venue for all claims. As explained by the D.C. Circuit in *Beattie v. United States*, cases that involve multiple grounds for relief for "an essentially single wrong" may "accurately be described as a single cause of action with separate grounds for relief"—especially when the "grounds are identical as to parties and very

similar as to proof," and "[t]here will be great commonality as to witnesses and evidence"—such that venue "is satisfied for the entire case by virtue of" a single claim.  *See* 756 F.2d 91, 101 (D.C. Cir. 1984), *abrogated in part on other grounds by Smith v. United States*, 507 U.S. 197 (1993). *Beattie* further explained that this "concept of 'cause of action' has been replaced as the touchstone for analysis by the doctrine of pendent jurisdiction," which has "spilled over into the rules of venue."  *Id.*  "The doctrine of 'pendent venue' is now well established," such that "many pendent jurisdiction cases also apply the principles of pendent jurisdiction by analogy when one or more claims arising out of a common nucleus of operative facts do not satisfy the requirements of the applicable venue statute."  *Id.* (citing Charles Alan Wright, *The Law of Federal Courts* §10 at 32 (4th ed. 1983)).

Many of the same policy considerations that support the exercise of pendent jurisdiction support the exercise of pendent venue—*e.g.*, "judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants."  *Id.* at 103.  "Other considerations unique to the context of venue" are also relevant, because "the purpose of venue rules is generally considered to be 'primarily a matter of convenience of litigants and witnesses," and "[i]t is also oriented to the convenience of the court system."  *See id.* (citations omitted).  The individual Defendants appear to suggest that Plaintiffs should litigate two separate lawsuits—*i.e.*, one in the District of Columbia against the individual Defendants in their official capacities and against the Air Force, and one across the country in California against the individual Defendants in their individual capacities. *See* Individual Defs.' Mot. to Dismiss at 11-12.  But the individual Defendants cannot seriously contend that it would more "convenient" for all of the litigants and witnesses involved to be forced participate in *two different* lawsuits across the country than to participate in one consolidated suit in the District of Columbia.  The logic of the D.C. Circuit in *Beattie* applies with equal force here:

"Given that all parties to this lawsuit will be properly before the district court on [some claims], it does not seem too inconvenient to include the [individual-capacity] claims in the same lawsuit." *See* 756 F.2d at 104.  At bottom, "[w]hether viewed as a single cause of action with [multiple] grounds for relief …, or as an appropriate case to apply the principle of 'pendent venue,'" *id.*, venue for all claims is proper in the District of Columbia.  *See also supra* Part I.D.

> **B.    Plaintiffs State Plausible Individual-Capacity Claims Against the Individual Defendants Under the Free Speech and Free Exercise Clauses of the First Amendment (Counts Six and Seven).**

The individual Defendants urge the Court to dismiss Counts Six and Seven largely because, in their view, Plaintiffs seek to extend *Bivens* liability into a "new context," which is "disfavored." *See* Individual Defs.' Mot. to Dismiss at 14-18.  Yet, while "*Bivens* itself involved a Fourth Amendment violation, … to date, the *Bivens* doctrine has been extended to recognize an implied cause of action for the violation of several constitutional amendments, including the Fifth, Eighth, Ninth, Fourteenth, and—contrary to Defendants' staunch assertion—the First."  *Patterson v. United States*, 999 F. Supp. 2d 300, 308-309 (D.D.C. 2013) (citation omitted); *see id.* at 308 ("while it is true that the Supreme Court has not explicitly authorized a First Amendment *Bivens* action, the D.C. Circuit has") (citing *Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977)).

In extending *Bivens* to First Amendment retaliatory arrest claims in *Dellums*, the D.C. Circuit "focused on the harm that would result from the loss of an ability to express oneself."  *See id.* at 309 (citing *Hartley v. Wilfert*, 918 F. Supp. 2d 45, 50 (D.D.C. 2013)).  And "the D.C. Circuit is not alone among the courts of appeals in recognizing a *Bivens* claim premised on a First Amendment violation"—"[t]o the contrary, … other circuits have embraced its rationale" and "highlighted the nonsensical result of allowing a cause of action against state officials for First Amendment violations under § 1983 but not against federal actors under *Bivens*."  *Id.* (collecting cases).  While the individual Defendants are correct that Justice Kennedy's recent plurality opinion

in *Ziglar v. Abbasi* suggests that "expanding the *Bivens* remedy is a 'disfavored' judicial activity," Individual Defs.' Mot. to Dismiss at 16 (citing *Abbasi*, 137 S. Ct. 1843, 1857 (2017)), the impact of *Abbasi* on otherwise well-settled D.C. Circuit precedent is not obvious. The *Patterson* defendants, for example, "question[ed] the continued viability of *Dellums* in light of the Supreme Court's [then-]recent decision in *Reichle* [*v. Howards*, 566 U.S. 658 (2012)]," where the Supreme Court recognized that the Court has "never held that *Bivens* extends to First Amendment claims." *See Patterson*, 999 F. Supp. 2d at 310 (citations omitted). As Judge Jackson explained, however, the language from *Reichle* was "pure *dicta*, and in any event, d[id] not dispose of Patterson's First Amendment claim," in light of existing D.C. Circuit precedent. *See id.*

So too here. Despite Justice Kennedy's plurality opinion in *Abbasi*, the D.C. Circuit has not to date walked back its existing *Bivens* jurisprudence. Contrary to the individual Defendants assertion that Plaintiffs "ask this court to create a damages remedy [that] is undoubtedly new," Individual Defs.' Mot. to Dismiss at 18, existing D.C. Circuit precedent unambiguously recognizes *Bivens* claims arising under the First Amendment. *Dellums*, 566 F.2d at 196. This Court should thus reject the individual Defendants' arguments, which urge this Court to dismiss Plaintiffs' First Amendment claims primarily because allowing them to proceed would purportedly "extend" *Bivens* to the "wholly new context" of the First Amendment. *See* Individual Defs.' Mot. to Dismiss at 2; *see also id.* at 14-18.

Insofar as "the 'new context' inquiry does not end even if courts have extended *Bivens* to the relevant constitutional right," *Storms v. Shinseki*, 319 F. Supp. 3d 348 (D.D.C. 2018), *appeal filed* No. 18-5294 (D.C. Cir. Oct. 10, 2018) (citing *Abbasi*, 137 S. Ct. at 1859-60), and to the extent that Counts Six and Seven may present a meaningfully "new context" under which the Court must consider whether any "special factors" counsel against implying a damages action based on the

individual Defendants' violations of Plaintiffs' constitutional rights, *see Abbasi*, 137 S. Ct. at 1857-58, the alternative processes and special factors identified by the individual Defendants do not outweigh the benefits of allowing Plaintiffs' damages action to proceed.

First, the individual Defendants suggest that Plaintiffs' claims implicate at least three alternative, existing processes (*i.e.*, the APA; the Military Claims Act ("MCA"), 10 U.S.C. §2733 *et seq.*; and RFRA).  *See* Individual Defs.' Mot to Dismiss at 20-24.  As the individual Defendants concede, however, neither the APA nor RFRA offers an opportunity for Plaintiffs to recover monetary damages.  And while the individual Defendants cite a Fifth Circuit opinion for the proposition that "alternative processes need not offer monetary relief" to preclude a *Bivens* remedy, they fail to invoke *any* case from this Court, the D.C. Circuit, or the Supreme Court that supports that contention.  *See id.* (citing *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015)).  This Court is plainly not bound by Fifth Circuit precedent and, to the extent that the Court may nonetheless be inclined to agree with the Fifth Circuit that "[t]he absence of monetary damages in the alternative remedial scheme is not ipso facto a basis for a *Bivens* claim," *De La Paz*, 786 F.3d at 377, Plaintiffs respectfully suggest that while the absence of monetary damages may not be an "ipso facto" or *per se* basis for a *Bivens* claim, it certainly suggests that existing alternative processes do not provide a fully adequate alternative remedial structure.  Indeed, *Bivens* itself explained that "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty," 403 U.S. 388, 395-96 (collecting cases and other sources), and without *Bivens* remedies here Plaintiffs both lack any remedy against the individual Defendants in their individual capacities and any opportunity to recover an award of money damages for the consequences of their violations.  Here, as in *Bivens*, Plaintiffs have no other avenue to seek relief against the individual Defendants in their individual capacities; it is "damages or nothing."  403

U.S. at 410 (Harlan, J., concurring); *see also, e.g.*, *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 78 (D.D.C. 2018) (monetary and equitable relief are not interchangeable or adequate alternative remedies).

The MCA does not change this calculus. Many of Plaintiffs' allegations do not "fall within the general ambit of the MCA," Individual Defs.' Mot. to Dismiss at 23, which precludes awards for claims "[a]ris[ing] out of assault [or] battery." *See* 32 C.F.R. §536.45(h). Insofar as the individual Defendants argue that the MCA wholly precludes Roberson from recovering under the MCA, *see* Individual Defs.' Mot. to Dismiss at 23 & n.9 (citing 10 U.S.C. §2733(b)(3)), and to the extent that any such "incident to service" restriction applies, *see also* 32 C.F.R. §536.43, that restriction only further indicates that the MCA is not an adequate alternative remedy for Plaintiffs' *Bivens* claims. While the individual Defendants do not make this argument (perhaps because it underscores that the MCA is not an adequate alternative remedy), it is also likely that Rodriguez has no recourse under the MCA against the individual Defendants, because the MCA only covers claims "[c]aused by military personnel or civilian employees … *acting within the scope of their employment*." *See* 32 C.F.R. §536.74(a)(1) (emphasis added); *see also id.* §536.75. The claims presented here are clearly different than the military detainees' claims in *Vance v. Rumsfeld* seeking to hold Secretary of Defense Donald Rumsfeld personally liable in damages for abusive interrogation and mistreatment, to which "the Constitution's application … outside the United States is not settled," "appear[ed] to violate the Detainee Treatment Act," "and may violate one or more treaties." *See* 701 F.3d 193, 195, 198 (7th Cir. 2012) (en banc). And even in that context, the *en banc* Seventh Circuit "assume[d] that the cap on awards, and the existence of discretion about when to award compensation (and how much to provide), means that these statutes"—*i.e.*, statutes including the MCA—"are not full substitutes for a *Bivens* remedy." *See id.* at 201.

Second, the "special factors" identified by the individual Defendants, which primarily focus on the purported "military context" of Roberson's private, voluntary retirement ceremony, do not counsel against implying a damages action.  As explained, the individual Defendants' repeated mischaracterizations of Roberson's retirement ceremony as a "military ceremony" and the individual Defendants' behavior as occurring "in the military context" are inconsistent with the allegations in the complaint.  *See supra* pp.11-12 (citing Compl. ¶¶12, 18, 61, 91, 105, 118-19, 139).  Military personnel's individual misconduct at a private, voluntary, and quintessentially *personal* retirement ceremony does not trigger the identified separation-of-powers concerns, does not conflict with Congress' authority in the field of military affairs more generally, and does not raise insurmountable "administrability" concerns.  *See* Individual Defs. Mot to Dismiss at 26-32, 34-35.

Likewise, and as already explained, the individual Defendants' also mischaracterize Plaintiffs' claims as "a challenge to Air Force policy," when the complaint makes clear that Plaintiffs' individual-capacity claims against the individual Defendants  arise from the individual Defendants' attempt to "ban" Rodriguez from speaking (thus restricting Plaintiffs' First Amendment rights under the Free Speech and Free Exercise Clauses) and subsequent physical *seizure and forcible removal* of Rodriguez, a civilian and invited guest, from Roberson's retirement ceremony in order to prevent Rodriguez from delivering his flag-folding speech at Roberson's request (thus violating Rodriguez's Fourth and Fifth Amendment rights).  *See supra* pp.10-11. This is not a challenge to Air Force policy; it is a challenge to the individual Defendants' clear misconduct.  To the extent that the individual Defendants seek to justify their constitutional violations based on a misguided attempt to comply with Air Force policies, including the 2005 version of Air Force Instruction 34-1201's flag-folding protocol, those arguments are more

properly addressed as an affirmative defense and do not warrant dismissing Plaintiffs' claims for failure to state a claim under Rule 12(b)(6).  Indeed, contrary to the individual Defendants' suggestions, Plaintiffs are not attempting to "leverage policy change," Individual Defs.' Mot. to Dismiss at 33, but are rather attempting to vindicate their constitutional rights and obtain monetary damages to compensate them for past harms.  This is supported by the fact that Plaintiffs also seek declaratory and injunctive relief, rather than attempting to leverage such relief in the guise of monetary damages.

Finally, qualified immunity does not bar Plaintiffs' claims under the Free Speech and Free Exercise Clauses of the First Amendment.  While it is true that qualified immunity "provides 'ample room for mistaken judgments,'" Individual Defs.' Mot. to Dismiss at 37 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)), the individual Defendants' actions surrounding Roberson's retirement ceremony—including purporting to "ban" Rodriguez from speaking and exercising his religion at the ceremony and then forcibly removing Rodriguez  (a civilian guest-invitee properly in attendance in his personal capacity, who was known to hold certain religious beliefs and to incorporate those beliefs into his typical flag-folding narrative) when he began to speak during the ceremony—exceeded the bounds of permissible behavior without any legitimate justification.  *Cf. Sause*, 138 S. Ct. at 2562-63.  The individual Defendants attempt to justify their obvious intrusion on Plaintiffs' First Amendment rights by suggesting that, while the Free Speech Clause "restricts government regulation of *private* speech," Individual Defs.' Mot. to Dismiss at 38 (quoting *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009)) (emphasis added), the "speech at issue"—*i.e.*, Rodriguez's flag-folding speech—was somehow *government* speech. *See id.*  While the speech at issue may have been "uttered on a military base," *id.*, it was at a private, voluntary, personal retirement ceremony by a civilian and invited guest performing in his

individual capacity at the request of the retiree.  This context does not implicate the military's general need for "regulating speech on its bases" in order to ensure "discipline and obedience" and "to train soldiers."  *Id.* at 39 (citations omitted).  And while the individual Defendants are correct that military bases are typically nonpublic fora, *see id.* at 39, Plaintiffs submit that Roberson's personal retirement ceremony took place in a limited or designated public forum intentionally designated as open for the occasion for the purpose of celebrating and honoring Roberson during his retirement ceremony—which was, again, a private, voluntary, and personal event at which the Air Force permitted many of Roberson's friends and family to speak freely and to present a slideshow presentation.  *See* Compl. ¶17.

It is well settled that "[t]he same standards" applicable to traditional public fora "apply in designated public forums—spaces that have 'not traditionally been regarded as a public forum' but which the government has 'intentionally opened up for that purpose,'" such that "restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited."  *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018) (citing *Summum*, 555 U.S. at 469-70).  And, as the individual Defendants admit, even in a nonpublic forum the government may not "suppress expression merely because public officials oppose the speaker's view."  Individual Defs.' Mot. to Dismiss at 39 (quoting *Oberwetter v. Hilliard*, 639 F.3d 545, 551 (D.C. Cir. 2011)).  Contrary to the individual Defendants' suggestion, *id.* at 39, Plaintiffs' complaint pleads sufficient allegations that, if taken as true, suggest that the anticipated religious content of Rodriguez's distinctive flag-folding speech and his specific viewpoint was the basis for the individual Defendants' actions. *See, e.g.*, Compl. ¶¶23, 31, 34-37, 64.  Plaintiffs thus state plausible claims that deserve to proceed so that Plaintiffs may investigate and further substantiate those claims.

### C.   Rodriguez States Plausible Individual-Capacity Claims Against the Individual Defendants under the Fourth Amendment (Count Eight).

The individual Defendants concede that "Rodriguez asserts an unreasonable seizure claim under the Fourth Amendment"—*i.e.*, "the right at issue in *Bivens*."   Individual Defs.' Mot. to Dismiss at 19.   Nonetheless, the individual Defendants maintain that this would require extending *Bivens* into yet another "new context" because it arises in "a far different setting (*i.e.*, in the military context, for conduct on a military base) against a new category of defendants (military personnel)." *Id.*   While the precise contours of *Abbasi*'s meaningfully-new-context inquiry have not yet been defined, the individual Defendants' insist on a level of granularity that stretches too far.

The individual Defendants contend that "the Supreme Court has never authorized a *Bivens* action against military defendants or for claims involving the military and, instead has expressly rejected such claims on two separate occasions," in *United States v. Stanley*, 483 U.S. 669 (1987), and *Chappell v. Wallace*, 462 U.S. 296 (1983).   Individual Defs.' Mot. to Dismiss at 19.   In addition to (yet again) mischaracterizing Roberson's private, voluntary, and personal retirement ceremony as a "military ceremony," the individual Defendants' overstate the relevance of these cases.   In *Stanley*, Master Sergeant James B. Stanley volunteered to participate in chemical warfare laboratory testing "to test the effectiveness of protective clothing and equipment as defenses against chemical warfare," and suffered severe personal injuries after receiving substantial doses of lysergic acid diethylamide ("LSD") as part of that testing program.   *See* 483 U.S. at 671.   In *Chappell*, five enlisted men serving in the United States Navy on board a combat Naval vessel brought sued against their superior officers for discrimination on the basis of race because the officers purportedly "failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed penalties of unusual severity."   *See* 462 U.S. at 297.   Both cases, unlike this case, clearly involve claims arising out of an active-duty military context for

quintessential military behavior and actions.   Here, however, Rodriguez asserts a Fourth Amendment *Bivens* claim against military personnel in their individual capacity for misconduct occurring at a private, voluntary, and personal retirement ceremony at which Rodriguez was a civilian and invited guest attempting to perform his distinctive flag-folding speech at the request of the retiree.

While the individual Defendants claim that they were justified in physically seizing and forcibly removing Rodriguez from Roberson's retirement ceremony because they could have been "concerned that a serious disruption was about to occur" and "could have believed that it was appropriate to swiftly quell the on-base disruption," Individual Defs.' Mot. to Dismiss at 42, that characterization of the individual Defendants' alleged motivations is inconsistent with the context set forth in the complaint and, given the proper context, qualified immunity cannot shield them from liability.   Plaintiffs allege that the individual Defendants were aware of Rodriguez's prior personal performances of his distinctive flag-folding speech, were aware of the narrative's anticipated content, were aware that Roberson had requested that Rodriguez perform that speech at his retirement ceremony, and had reason to be aware that Rodriguez was a properly invited civilian guest because he was on the Guest Seating Chart for the ceremony.  *See, e.g.*, Compl. ¶¶31, 34-45, 49, 51-60.   Given this background and context, and when considering the timing of the sequence of events—*i.e.*, that Rodriguez stood up from where he was seated after two Airmen began to unfurl the flag and Rodriguez's music began to play, stood to the side of the Airmen holding the flag, turned to face the audience, and began to deliver his distinctive flag-folding speech, *see* Compl. ¶¶53-55—it is wholly implausible to suggest that the individual Defendants could have been concerned that Rodriguez was about to facilitate any "serious disruption," Individual Defs.' Mot. to Dismiss at 42, when it should have been (and likely was) abundantly

clear to anyone in the room that Rodriguez was simply going to deliver a standard performance of his typical flag-folding speech.   *See* Compl. ¶48 (citing video evidence available at https://kirkland.wistia.com/medias/1npxe6487q and https://kirkland.wistia.com/medias/i0v8d8lo69).   To the extent, if any, that the individual Defendants suggest that they expected Rodriguez's anticipated performance of his distinctive flag-folding speech to be the type of "serious disruption" warranting "swift[]" physical intervention to prevent, *see id.*, that itself is an unreasonable belief that removes the individual Defendants' behavior from the realm of qualified immunity.   After all, it is abundantly clear that physical seizure of a civilian is inappropriate without a *legitimate* justification.   *See, e.g.*, *Maryland v. King*, 569 U.S. 435, 449 (2013); *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 764 (2010); *Moore v. District of Columbia*, 79 F. Supp. 3d 121, 131 (D.D.C. 2015); *United States v. Jones*, 584 F.3d 1083, 1087 (D.C. Cir. 2009); *cf. Sause*, 138 S. Ct. at 2562-63.

The fact that the individual Defendants acted and forcibly removed Rodriguez from the auditorium before asking Roberson to confirm whether Rodriguez was his invited guest or whether Roberson expected Rodriguez to perform during the flag-folding ceremony, Compl. ¶58, further confirms that the individual Defendants unreasonably seized Rodriguez.   Because no one asked, the individual Defendants must have either (1) not cared whether Rodriguez was actually being disruptive, such that the seizure was at best woefully premature; or (2) already known that he was not, such that the seizure was improperly premeditated and clearly unnecessary.   Either way, their physical, forcible seizure and removal was improper and violated Rodriguez's clearly established, reasonable expectation to be free from unreasonable seizure under the Fourth Amendment.

**D.      Rodriguez States Plausible Individual-Capacity Claims Against the Individual Defendants under the Due Process Clause of the Fifth Amendment (Count Nine).**

The individual Defendants admit that the Supreme Court has recognized *Bivens* claims arising under equal-protection component of the Fifth Amendment's Due Process Clause, Individual Defs.' Mot. to Dismiss at 15 (citing *Davis v. Passman*, 442 U.S. 228 (1979)), but cite Justice Breyer's *Abbasi* dissent in support of the proposition that *Bivens* should not apply to "procedural or substantive due process claim[s]." *Id.* at 18-19 (citing *Abbasi*, 137 S. Ct. at 1876 (Breyer, J., dissenting)).

Qualified immunity does not bar Rodriguez's procedural due process claims under the Due Process Clause of the Fifth Amendment.[2]  Clearly established Fifth Amendment law protects Rodriguez's liberty interest in being free from bodily restraint, and also protects his interest in freely speaking and freely exercising his religion.   Indeed, the Supreme Court has clearly established that, for purposes of the Due Process Clause of the Fifth Amendment, "'liberty' … is not confined to mere freedom from bodily restraint." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Instead, "[l]iberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective." *Id.* at 499-500. Yet Rodriguez received *no* due process before being forcibly denied those interests.  Rodriguez never received any formal request or demand to cease performing his distinctive flag-folding speech at Air Force retirement ceremonies, was never reprimanded for his continued practice, and was never directly informed that he could not perform at Roberson's retirement ceremony.  *See*

---

[2] Rodriguez agrees with the individual Defendants that, insofar as Count Nine may have stated a substantive due process claim under the Fifth Amendment's Due Process Clause, that claim is more appropriately considered in the context of his claims under the First and Fourth Amendments (*i.e.*, Counts Six, Seven, and Eight).  *See* Individual Defs.' Mot. to Dismiss at 43-44.

Compl. ¶¶32, 137-38.  It is thus abundantly clear from Plaintiffs' complaint that Rodriguez alleges

he was "not given 'the opportunity to be heard "at a meaningful time and in a meaningful manner"'

in connection with the deprivation of [his] liberty or property interest."  *Daugherty v. Sheer*, 248

F. Supp. 3d 272, 287 (D.D.C. 2017), *rev'd in part on other grounds* 891 F.3d 386 (D.C. Cir. 2018)

(quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  This plainly satisfies the requirement

that Rodriguez "show an official has deprived him of a liberty or property interest without

providing appropriate procedural protections."  *See* Individual Defs.' Mot to Dismiss at 42 (citing

*Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009)).

 At a minimum, Plaintiffs' complaint readily suggests that the individual Defendants should

have "undertak[en] formal procedures concerning the conflict surrounding Rodriguez's unique

flag-folding speech and his invitation to perform at Roberson's retirement ceremony," including,

for example, issuing a "formal request or demand" that Rodriguez "cease performing his unique

flag-folding speech at Air Force retirement ceremonies," formally "reprimand[ing]" Rodriguez for

his continued practice, or first asking whether Rodriguez was Roberson's invited guest or whether

Roberson expected Rodriguez to perform during the flag-folding ceremony before attacking and

forcibly removing Rodriguez from the auditorium.  *See* Compl. ¶¶32, 58, 138.

* * *

 The individual Defendants are correct that Plaintiffs seek equitable relief from the

individual defendants "in their official capacities only."  Individual Defs.' Mot. to Dismiss at 12.

<h2 style="text-align:center">REQUEST FOR ORAL HEARING</h2>

Pursuant to LCvR 7(f), Plaintiffs hereby request an oral hearing on the motions to dismiss.

# CONCLUSION

For the foregoing reasons, Plaintiffs Oscar Rodriguez, Jr. and Charles Roberson respectfully request that this Court deny both pending motions to dismiss and permit Plaintiffs' claims against the Air Force and the individual Defendants to proceed.

Dated:  November 19, 2018                    Respectfully submitted,


By:   /s/ H. Christopher Bartolomucci
        H. Christopher Bartolomucci
          (D.C. Bar No. 453423)
        Lauren N. Beebe
          (D.C. Bar No. 1047288)
        KIRKLAND & ELLIS LLP
        655 Fifteenth Street, N.W.
        Washington, D.C. 20005
        (202) 879-5000
        cbartolomucci@kirkland.com
        lauren.beebe@kirkland.com

        Michael D. Berry
          (admitted *pro hac vice*)
        Kenneth A. Klukowski
          (D.C. Bar No. 1046093)
        FIRST LIBERTY INSTITUTE
        2001 West Plano Parkway, Suite 1600
        Plano, TX 75075
        (972) 941-4444
        mberry@firstliberty.org
        kklukowski@firstliberty.org

        *Counsel for Plaintiffs Oscar Rodriguez,*
        *Jr. and Charles Roberson*