# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR RODRIGUEZ *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF THE AIR FORCE *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00744 (TNM) |

## MEMORANDUM OPINION

Charles Roberson invited Oscar Rodriguez to perform a then-controversial flag-folding speech at his Air Force retirement ceremony. Because of its religious content, Rodriguez sometimes referred to his flag-folding speech as "the God speech." During the ceremony, when Rodriguez began to speak, a group of airmen—apparently acting at the behest of the commanding officer—grabbed and physically ejected him from the room.

The Air Force later changed its policy on such speeches but refused to apologize for the incident. So Roberson and Rodriguez (the "Retirees") sued the Department of the Air Force and five of its service members (collectively "the Air Force") for declaratory relief, injunctive relief, and damages. The Air Force moved to dismiss the Complaint. The Court finds that the Retirees lack standing for the prospective relief they seek, and the Court lacks personal jurisdiction over the individual defendants. It, therefore, will grant the Air Force's Motions to Dismiss.

### I. BACKGROUND

Rodriguez served in the U.S. Air Force from 1980 to 2013, retiring as a Senior Master Sergeant. Compl. ¶ 4, ECF No. 1. In 2001, he began participating in Air Force flag-folding

ceremonies as a member of the Travis Air Force Base Honor Guard. *Id.* ¶ 20. He "was inspired and began to develop his own flag-folding speech to capture his personal sentiments toward the flag." *Id.* ¶ 22.[1] For example, he said, "[l]et us pray that God will reflect with admiration the willingness of one nation in her attempt to rid the world of tyranny, oppression, and misery." *Id.* At the time, the Air Force provided no set script for these ceremonies. *Id.* ¶ 21.

But in 2005, the Air Force promulgated Air Force Instruction 34-1201, which provided a specific flag-folding script. *Id.* ¶ 15. It required that "when a flag folding ceremony is desired and conducted by Air Force personnel at any location, on or off an installation, this script is the only one that may be used." *Id.* Nonetheless, Roberson continued performing his own flag-folding speech at various events, including retirement ceremonies at the request of individual Air Force retirees. *Id.* ¶ 24. After he retired, he continued to perform this speech upon request. *Id.* ¶ 33.

After hearing Rodriguez's speech, Master Sergeant Roberson invited Rodriguez to perform at his own upcoming retirement ceremony. *Id.* ¶ 36. Roberson's retirement coordinator told him that Rodriguez might be barred from attending his retirement ceremony and told Roberson to contact Senior Master Sergeant Joe Bruno. *Id.* ¶ 38. Bruno, in turn, advised Roberson that then-Lieutenant Colonel Michael Sovitsky, commander of the 749th Aircraft Maintenance Squadron, "had banned" Rodriguez from the ceremony. *Id.* ¶ 40. Rodriguez had heard in the past that Sovitsky "did not appreciate" his unique flag-folding speech and its religious overtones. *Id.* ¶ 31.

---

[1] Because the Court must accept all factual allegations in the Complaint as true when ruling on a motion to dismiss, the facts here come from the Complaint. *See Jerome Stevens Pharm., Inc. v. F.D.A.*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

But Roberson told Rodriguez to proceed as planned. *Id.* ¶ 46–47. Family members, friends, and co-workers gathered for his retirement ceremony. *Id.* ¶ 52. After a slideshow celebrating Roberson's career, patriotic music played, and Rodriguez stepped onto the stage to begin his speech. *Id.* ¶ 54. While he was speaking, an Air Force service member approached Rodriguez and told him to sit down. *Id.* ¶ 55. He refused. *Id.* Then, a group of uniformed airmen grabbed him, while he was still speaking, and forcibly removed him from the stage. *Id.* Eventually, additional service members physically removed Rodriguez from the building. *Id.*

In response to this incident, the Air Force reversed its policy about flag-folding speeches at retirement ceremonies. *Id.* at 18–19. It explained, by official statement, that "Air Force personnel may use a flag folding ceremony script that is religious for retirement ceremonies." *Id.* at 18.

Still, the Air Force refused to issue a written admission of wrongdoing or an apology for incident. *See* Compl. So the Retirees sued the Air Force and five Air Force service members: Sovitsky, Bruno, and three others allegedly involved in the incident, both in their individual and official capacities. *See id.* at 4–5.

Against the Air Force, the Retirees brought claims under the Administrative Procedure Act ("APA"), alleging violations of the First, Fourth, and Fifth Amendments. *Id.* at 21–24. They also brought a Religious Freedom Restoration Act ("RFRA") claim against both the Air Force and the individual Air Force servicemen. *Id.* at 24–26. And they brought First, Fourth, and Fifth Amendment claims against the individual servicemen. *Id.* at 26–36.

The Air Force has now moved to dismiss the Retirees' Complaint under Federal Rule of Civil Procedure 12. *See* Defs.' Mot., ECF No. 20; Air Force Mot., ECF No. 21. The Retirees

have opposed. Pls.' Mem., ECF No. 23. The Court also held a motions hearing. *See* April 3, 2019 Minute Entry.[2]

## II. LEGAL STANDARDS

A motion under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Article III of the U.S. Constitution limits this Court's jurisdiction to "actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies," and the "concept of standing is part of this limitation." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976) (citation omitted). To show standing, the plaintiffs bear the burden of alleging an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper*, 568 U.S. at 409 (citation omitted).

The Court will "draw all reasonable inferences from [the Retirees'] allegations in [their] favor," but it will not "accept inferences that are unsupported by the facts," "assume the truth of legal conclusions," or credit "threadbare recitals of the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation omitted).

---

[2] After the motions hearing, the parties engaged in unsuccessful settlement negotiations. *See* Status Report by Dep't of the Air Force, ECF No. 35; Status Report by Charles Roberson, Oscar Rodriguez, Jr., ECF No. 37.

## III. ANALYSIS

A. The Retirees Have Not Met Their Burden to Establish Standing for Prospective Equitable Relief.

As the Retirees admit, the Air Force has amended its flag-folding policy and made clear that "Air Force personnel may use a flag folding ceremony script that is religious for retirement ceremonies." Compl. ¶¶ 18–19. In fact, the Retirees allege that the Air Force "clarified" its policy "in response to the incident involving" the Retirees. *Id.* ¶ 18.

So the Air Force argues that Rodriguez lacks standing to seek prospective equitable relief because he has not alleged a future harm. Defs.' Supp. Mem. at 2; ECF No. 28.[3] The Retirees counter that prospective relief is necessary for Rodriguez to perform "without fear or arbitrary (and potentially violent) repercussion." Pls.' Supp. Mem. at 4; ECF No. 26.

In *Haase*, the D.C. Circuit distilled the threshold standing test for the type of prospective equitable relief that the Retirees seek: plaintiffs must allege (a) the existence of a policy; and that (b) they are likely to be subjected to that policy again. 835 F.2d at 911.

At times, the Retirees' briefing seems to suggest that they are challenging the old Air Force Instruction 34-1201. For instance, they claim that the Instruction was an "unconstitutional prior restraint, enabled unconstitutional content- and viewpoint-based discrimination, and established an unconstitutional preference for the absence of any religious faith." Pls.' Mem. at 6.

But the Retirees clarified at the motions hearing that they are *not* challenging the Air Force's official policy, past or present. Transcript of Motions Hearing ("Tr."), ECF No. 31, at 8

---

[3] The Court invited the parties to file supplemental briefing about Rodriguez's standing for a declaratory judgment. *See* Jan. 11, 2019 Minute Order.

5

("We are not challenging the policy."). Instead, the Retirees complain that Rodriguez was indefinitely banned from giving his flag-folding speech at Travis Air Force Base. *Id.* at 27. The Retirees have suggested that this ban was because of Sovitsky's "misguided anti-religious view or some view that a religious flag-folding speech was not appropriate and not permitted even by a civilian at a personal retirement ceremony." *Id.* at 11. So their quarrel is with an alleged unofficial policy that targets Rodriguez alone.

The Complaint's allegations about any such ongoing ban are sparse. *See, e.g.*, Compl. ¶ 40 ("Bruno . . . indicated that Rodriguez would be unable to attend Roberson's retirement ceremony because Sovitsky had banned Rodriguez from the building . . . ."). And the Retirees allege no facts to support a claim that such a ban exists.

Consider *Haase* by way of contrast. There, the plaintiff alleged that the Government had "a policy of subjecting travelers returning from Nicaragua to intrusive border searches for intelligence-gathering purposes." 835 F.2d at 905. And the plaintiff

> supported this allegation with the following material: (1) an affidavit of his attorney that recounted the experiences of other travelers who claimed they had been subjected to intrusive border searches upon returning from Nicaragua; (2) a number of newspaper articles that described similar searches; and (3) an affidavit in which he explained his plans to return to Nicaragua, and the chilling effect that his fear of future border searches would have on his journalistic activities.

*Id.* Even so, the Circuit called the plaintiff's "allegations and supporting submissions pleading a policy of intelligence-gathering border searches . . . exceedingly weak." *Id.* at 908. The Circuit later criticized the plaintiff for relying on hearsay and not providing enough details about allegedly similar incidents. *See id.*

*Haase* teaches that "more than a nebulous assertion of the existence of a 'policy' is required to establish standing." *Id.* at 911. Here, the Retirees allege no facts to show that a "ban" exists. For instance, the Retirees do not allege that anyone in the Air Force has prevented

6

Rodriguez from speaking since the incident.  In fact, the opposite: the Retirees admit that Rodriguez has since performed his flag-folding speech at Travis Air Force Base "without incident."  Tr. at 10.

What's more, the Retirees do not plausibly allege that Rodriguez is "likely to be subjected to the policy again."  *See Haase*, 835 F.2d at 911.  In fact, all evidence points in the other direction.  The Air Force has changed its policy to allow religious speeches like Rodriguez's.  *See* Compl. ¶¶ 18–19.  Rodriguez implies that this change in policy is unimportant because the old Air Force policy never applied to him since he was performing at a private event.  Pls.' Supp. Mem. at 8.; *but see* Compl. ¶ 15 (Policy stated "when a flag folding ceremony is desired and conducted by Air Force personnel *at any location*, on or off an installation, this script is the only one that may be used.") (emphasis added).  Even so, Sovitsky or other Air Force service members may have tried to stop Rodriguez from speaking based on an—however misguided—attempt to enforce the old policy.  That policy is now defunct.  Compl. ¶¶ 18–19.

And even if Sovitsky's alleged anti-religious animus was the true catalyst for this incident, he is no longer stationed at Travis Air Force Base, nor does he continue to supervise either Retiree.  Tr. at 27.  The Complaint makes no allegation, plausible or otherwise, that he can continue to enforce the alleged ban from afar.

More still, by amending its official policy, the Air Force has communicated to Sovitsky and other Air Force service members that these types of religious speeches are acceptable.  In sum, "past injuries alone are insufficient to establish standing."  *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (cleaned up).  Here, that's all the Retirees have alleged.

As the Retirees admit, Roberson's case for prospective equitable relief standing is even weaker than Rodriguez's.  *See* Tr. at 14.  Roberson will not retire again, and he is not planning to

host a future ceremony of any kind. Pls.' Mem. at 3. In their opposition brief, Roberson claims that he is "*likely* to attend future events" where Rodriguez "*intends* to perform his distinctive flag-folding speech." *Id.* (emphasis added). As the Air Force points out, this allegation is in a brief, not a pleading. *See* Fed. R. Civ. P. 8(a)(1) (requiring "a pleading that states a claim for relief" to include "a short and plain statement of the grounds upon which the court's jurisdiction depends"); *see also Pub. Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 719 n.35 (D.C. Cir. 1977). In any event, the Supreme Court has made clear that "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (cleaned up). Roberson has not established that he has standing to seek prospective declaratory or injunctive relief.

At the motion-to-dismiss stage, "[t]he burden imposed on plaintiffs to establish standing is not onerous." *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012) (cleaned up). To be clear, "absolute certainty" about future injuries is not required. *See id.* at 85. Even so, it is the Retirees' burden to establish jurisdiction, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and they have not done so.[4]

The Retirees lack standing for prospective declaratory or injunctive relief. Because Counts One through Five seek exclusively declaratory and injunctive relief, these counts will be dismissed. Counts Six through Ten also seek damages, so the Court turns next to them.

---

[4] Because the Court lacks jurisdiction over these claims, the Court will not consider the Air Force's other arguments for dismissal. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 95 (1998).

8

B. The Court Lacks Personal Jurisdiction over the Individual Defendants.

In the remaining claims, the Retirees seek damages against the individual defendants, all Air Force servicemen. *See generally* Compl. at 26–36. The remaining counts seek damages under RFRA, the First Amendment, and the Fourth Amendment. *See id.* at 26–33. Rodriguez also seeks damages under the Fifth Amendment. *See id.* at 33–36.

The individual defendants argue that the Court lacks personal jurisdiction over them. Defs.' Mem. at 20. To establish personal jurisdiction over a non-resident, "a court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The Due Process Clause requires a plaintiff to show "minimum contacts" between the defendant and the forum establishing that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). According to the defendants, the Retirees have not alleged that they have had any contact with the District of Columbia, and the Retirees have not shown that their claims arise from or relate to any activities in the District. *Id.* at 10.

Indeed, the Retirees do not argue that the individual defendants are residents of the District, nor do they claim that they can meet the typical two-part evaluation under the District's long-arm statute and the constitutional requirements of due process. *See* Pls.' Mem. at 13–14. Rather, they assert that the Court has pendent personal jurisdiction over their individual-capacity

claims against the defendants because these claims arise out of the same nucleus of operative fact as their other claims. *Id.* at 13.

To be sure, this Circuit has adopted the "pendent personal jurisdiction doctrine," which permits a court to exercise personal jurisdiction over a defendant "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 31 (D.D.C. 2013). But because the Court will dismiss Counts One through Five, there are no other claims with which the remaining counts could share a common nucleus of operative fact. In other words, there is no "anchor claim." So this doctrine does not apply.

And even if it did, a "district court may have discretion to dismiss the pendent claims where 'considerations of judicial economy, convenience and fairness to litigants' so dictate." *Oetiker v. Jurid Werke GmbH*, 556 F.2d 1, 4–5 (D.C. Cir. 1977) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The incident in question took place at Travis Air Force Base in California. Compl. ¶ 49. There is no allegation that any of the individual defendants reside in the District of Columbia or anywhere nearby. In fact, the Complaint alleges that, at the relevant time, all the individual defendants were stationed at Travis Air Force Base. *See id.* ¶¶ 7–11. The Court finds that these considerations weigh heavily against exercising pendent personal jurisdiction. So the Court would not do so even if it could.

For these reasons, the Court will dismiss Counts Six through Ten.

### IV.  CONCLUSION

In the words of the Air Force's counsel, "this incident was regrettable." Tr. at 37. The First Amendment protects our right to speak freely even when that view may be unpopular.

10

While the members of our armed forces may face necessary limitations on their First Amendment rights in some contexts, this was not one of them, and the Air Force does not argue otherwise. Even so, the Retirees have not shown that the Court has jurisdiction to grant the relief that they seek. The Court will therefore grant the Air Force's Motions to Dismiss. A separate Order will issue.

Dated: July 8, 2019                              TREVOR N. McFADDEN, U.S.D.J.